UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CLEARPLAY, INC., a Utah corporation,

Plaintiff,

vs.                                                    Case No.

NISSIM CORP., a Florida corporation,

Defendant.

---

**COMPLAINT**

Plaintiff CLEARPLAY, INC., a Utah corporation, hereby files this action against

Defendant NISSIM CORP., a Florida corporation, and alleges as follows:

PARTIES, JURISDICTION AND VENUE

1.      Plaintiff CLEARPLAY, INC., ("ClearPlay"), is a Utah corporation, with its

principal place of business at 5284 South Commerce Drive, Salt Lake City, Utah, 84107.

ClearPlay manufactures and produces digital video disc (DVD) players and related content-

filtering software and hardware, and offers its products for sale throughout the United States,

including Florida.

2.      Defendant NISSIM CORP., ("Nissim"), is a Florida corporation with its principal

place of business at 18457 Long Lake Drive, Boca Raton, Florida, 33496.

3.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) as

this is a dispute in which the matter in controversy exceeds the sum or value of $75,000.00,

exclusive of interest and costs, and is between citizens of different states.

4.      This Court has personal jurisdiction over Nissim in that, at all times material

hereto, Nissim operated, conducted, engaged in and/or carried on a business or business venture

in the State of Florida; committed tortious acts within this state and caused injury to persons and/or entities arising out of an act(s) or omission(s) by Nissim within the state.

5.      Venue is proper in the United States District Court for the Southern District of Florida under 28 U.S.C. § 1391(a) in that the Defendant's principal place of business is located within this district and a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this district.

GENERAL ALLEGATIONS

6.      Plaintiff ClearPlay has pioneered cutting edge technologies in the DVD filtering playback field, allowing consumers to filter out objectionable content from DVD movies that are already available in the marketplace on DVD.  ClearPlay manufactures, produces, and offers for sale DVD players and related content-filtering software and hardware which allow consumers to filter offensive material from the playback of DVD movies.  For these reasons, ClearPlay is the industry leader in parental filtering technology for DVD players.

7.      Defendant Nissim is a patent holding company incorporated in Florida.  Nissim does not manufacture or sell any products or services and appears to have only one employee – Max Abecassis, its President and CEO.

8.      Nissim, as of the date of this Complaint, has not manufactured, produced nor offered for sale any DVD players or content-filtering software and hardware which allow consumers to view customized playback of DVD movies.  However, Mr, Abecassis has repeatedly represented that he intends to manufacture, produce, or offer for sale such products.

9.      Matthew Jarman, Cofounder of ClearPlay invented the concepts underlying ClearPlay's filtering technology in 1998. ClearPlay has already received two patents pertaining to the concept of ClearPlay's filtering technology and has several pending patent applications.

Matthew Jarman and ClearPlay have been working on the development and improvement of this innovative parental filtering technology for about nine years.

10.    ClearPlay first came aware of Nissim in early 2000 and contacted Mr. Abecassis to evaluate a potential business relationship. ClearPlay ultimately decided against pursuing any business relationship with Mr. Abecassis because, among other things, of Mr. Abecassis' desire to offer a product to customize the viewing of pornographic material.

11.    On or about December 10, 2001, ClearPlay began marketing a computer program and membership service which allowed consumers to filter their DVD movies by skipping or muting objectionable content.

12.    Inasmuch as ClearPlay was aware of Mr. Abecassis' patent claims, ClearPlay sought and thereafter received in early 2004 a reasoned opinion of non-infringement that stated that ClearPlay's DVD player and filters did not infringe upon patents asserted by Nissim.

13.    In April 2004, Thomson, Inc. ("Thomson") began selling a RCA brand DVD player that incorporated the ClearPlay advanced parental controls at Walmart and other national retailers.

14.    On May 13, 2004, Nissim sued ClearPlay in the Southern District of Florida, alleging claims of patent infringement, misappropriation of trade secrets, and breach of contract, arising out of ClearPlay's activities as set forth above. Nissim also threatened Thomson with patent litigation and pressured them with the threat that Nissim would never allow Thomson to market DVD players within the United States again if Nissim prevailed in its threatened litigation against Thomson. Based on these threats, Thomson decided to discontinue manufacturing the RCA player with ClearPlay parental controls.

15.    After unsuccessfully attempting to postpone the trial for a second time, Nissim entered into settlement negotiations with ClearPlay, and on November 23, 2005, the last day before the trial was to begin, entered into a confidential settlement and licensing agreement which, *inter alia*, granted ClearPlay a license to make and sell a modified version of its ClearPlay filtering technology under Nissim's patents. A copy of such confidential settlement and licensing agreement ("the Agreement") is hereby filed under seal as "Exhibit A" to this Complaint.

16.    In May 2006, a buyer from Target Corporation ("Target"), visited ClearPlay's office and the parties continued their dialog with respect to the purchase by Target of DVD players from ClearPlay, which dialog had commenced some time prior to the Target buyer's visit to ClearPlay's office.

17.    In October of 2006, Target offered ClearPlay the opportunity to place its DVD players in Target's spring 2007 "Planogram." The Target Planogram is the blue print that designates a certain location in each Target store for the placement of the display product and product stock. Since Target only does major changes to its Planogram on an annual basis, this placement in the Planogram would enable ClearPlay's products to remain as permanent items in Target's electronics department from May 2007 to at least April 2008. Relying on this offer and on the expectation of future business with Target, ClearPlay invested more than $1 million into producing point of sale displays for Target stores.

18.    In January of 2007, Target placed its first purchase order with ClearPlay to sell DVD players which are compatible with the ClearPlay software. These ClearPlay DVD players sold to Target would allow consumers, who also sign up for the ClearPlay filtering service, to filter their DVD movies from home. However, without obtaining a ClearPlay filter file that

loads the ClearPlay filtering user interface onto the DVD player and provides filtering information for specific movie titles, such DVD players would simply play DVDs without any filtering. ClearPlay has, in fact, sold some DVD players to Target, and had the reasonable expectation to sell additional DVD players to Target.  Copies of the ClearPlay/Target purchase orders are attached as "Exhibit B" to this Complaint.

19.    After learning of the sale of ClearPlay DVD players to Target, Nissim, in June of 2007 sent a letter to Target alleging that the ClearPlay DVD player sold to Target did not comply with Nissim's requirements regarding the categorizing of objectionable content in movies and was, therefore, not covered by the license extended to ClearPlay in November 2005.  Nissim thus alleged that the ClearPlay DVD player was not licensed under the Agreement and demanded that Target remove the "unlicensed" ClearPlay DVD players from its shelves and that Target discontinue selling the "infringing products".  A copy of this letter is attached as "Exhibit C" to this Complaint.

20.    Also, in June of 2007, Nissim published a "press release" on its website (http://www.nissim.com/news.htm) stating that ClearPlay was violating Nissim's intellectual property rights by offering DVD players for sale without a proper license under Nissim's patents. This press release was viewable throughout the world, including Florida, via the World Wide Web, and a copy is attached as "Exhibit D" to this Complaint.

21.    Nissim also recently removed from its website a copy of the press release issued on November 30, 2005, which was titled "Nissim and ClearPlay Resolve Patent Litigation" and which stated, among other things that "Nissim Corp. has resolved its ongoing patent infringement litigation with ClearPlay, Inc. and the companies have entered into a settlement and license agreement."

22.     Nissim's allegations that the ClearPlay DVD players offered for sale by Target were not covered by a Nissim license were false for at least two significant reasons, each of which stands alone as an argument against this allegation.   First, the Agreement between ClearPlay and Nissim granted ClearPlay a license to sell its filtering technology under Nissim patents. ClearPlay negotiated for this license in good faith from Nissim as part of the settlement of the patent litigation, and ClearPlay has sought in good faith to comply with the requirements of the Agreement.   Second, the DVD players, as sold to and by Target, were not enabled to filter movies.  The consumer only has access to ClearPlay's parental filtering technology after he or she signs up for the ClearPlay filtering service directly with ClearPlay, downloads the software from the ClearPlay website and installs it into the DVD player.  The DVD players as sold to and by Target do not provide an option for filtered playback or even access to the user interface for adjusting filter settings.

23.     Furthermore, at all times material to this action, ClearPlay has complied with all of the material terms and conditions of the Agreement.

24.     A motion to enforce the Agreement was filed by Nissim on June 11, 2007, and is currently pending in the Southern District of Florida.  To date, there has been no determination by any Court that ClearPlay has not complied with the Agreement. In any event, ClearPlay continues to hold a license to sell its filtering technology in the marketplace.

25.     In July of 2007, ClearPlay responded to Target stating that the ClearPlay DVD player was covered by a license from Nissim pursuant to the Agreement.  A copy of ClearPlay's letter is attached as "Exhibit E" to this Complaint.  As a result, Target did not remove the DVD players from its shelves and continued placing purchase orders for additional DVD players with ClearPlay.  (*See* Exhibit B).

26.     In October of 2007, Nissim sent another letter to Target again demanding that Target remove ClearPlay's "unlicensed" and "infringing" DVD players from its shelves. Nissim further stated that unless Target pulled the ClearPlay DVD players from its shelves, Nisism would sue Target for patent infringement. Nissim attached a draft complaint to this letter and claimed that it would file this complaint on November 2, 2007 if Target did not cease selling ClearPlay DVD Players. In addition, Nissim also pressured Target with the threat that Nissim would prohibit other manufacturers from selling their DVD players at Target and that Target's consumer electronics business would be materially compromised. A copy of this letter is attached as "Exhibit F" to this Complaint.

27.     On or about November 1, 2007, ClearPlay responded to Target advising Target that with respect to Nissim's allegations against ClearPlay, ClearPlay had a valid license with Nissim and, in any event, the DVD players as offered for sale in Target were not enabled to perform ClearPlay's parental filtering service. A copy of this letter is attached as "Exhibit G" to this Complaint.

28.     On or about November 2, 2007, Target cancelled several large purchase orders for additional ClearPlay DVD players and agreed not to place any additional orders for purchasing ClearPlay DVD players in Target stores, based on the allegations by Nissim that such players were not licensed. Target stated in their communication to ClearPlay that they were cancelling the existing purchase orders due to "the recent legal situation". Copies of the cancellations of the existing purchase orders are hereby filed as "Exhibit H" to this Complaint.

29.     On or about November 2, 2007, Target also discontinued selling the ClearPlay DVD Players at Target.com. *See* correspondence from Target's counsel to counsel for Nissim attached hereto as Exhibit "I" to this Complaint. When a ClearPlay employee asked a

Target.com employee why Target.com was no longer selling ClearPlay DVD players, the ClearPlay employee was told in an email that sales had been discontinued since "the player does not have the proper licensing agreements in place."

30.    Also on November 2, 2007, Nissim published another "press release" on its website stating that Target had ceased sales of ClearPlay DVD players and stating that the ClearPlay DVD players were "not covered by a Nissim license."   As of the date of this Complaint,    such    press    release    was    still    available    online    at http://www.nissim.com/news.2007.11.02.htm, and a copy is attached as "Exhibit "J" to this Complaint.   Moreover, as stated above Nissim has now removed its previous press release announcing the settlement and license agreement reached between Nissim and ClearPlay in November 2005.

31.    ClearPlay was in the process of negotiating future purchase orders with Target and other clients when Target cancelled the existing purchase orders and Nissim published news of the cancellation on its website.   In fact, on October 28, 2007, Target had physically placed a ClearPlay point-of-sale interactive display and ClearPlay DVD players into its 2008 Planogram at its corporate headquarters, and were including the ClearPlay DVD player in their plans for their 2008 Planogram, which goes from May 2008 through April 2009.

## COUNT I – TORTIOUS INTERFERENCE WITH A CONTRACTUAL RELATIONSHIP

32.    ClearPlay realleges and incorporates herein by reference the allegations contained in paragraphs 1 through 31 above as though fully set forth herein.

33.    ClearPlay and Target were parties in a contractual relationship which constituted an advantageous business relationship wherein ClearPlay had legal rights.   This relationship is evidenced by, but not limited to, the purchase orders by Target for ClearPlay DVD players.

34.     ClearPlay performed its obligations under the contractual relationship until Target terminated the relationship.

35.     Nissim was not a party to the contractual relationship between ClearPlay and Target, and thus had no right, justification, or privilege to interfere with the relationship between the two parties.

36.     Nissim at all times material to this action had knowledge of the relationship between ClearPlay and Target.

37.     Nissim intentionally and unjustifiably interfered with the contractual relationship between ClearPlay and Target by, *inter alia*, falsely stating to Target that the ClearPlay DVD players were not covered by a Nissim license and by stating that it would sue Target if Target did not immediately cease sales of the ClearPlay DVD players.

38.     As a direct result of Nissim's intentional and unjustified interference with the contractual relationship between ClearPlay and Target, the contractual relationship was disrupted, and ClearPlay has suffered and continues to sustain damages.

WHEREFORE, Plaintiff demands judgment against Nissim for damages, in excess of $1,000,000, plus interest, costs, attorneys' fees, punitive damages upon a proper showing,  and any and all other relief as the Court deems appropriate.

## COUNT II – TORTIOUS INTERFERENCE WITH POTENTIAL ADVANTAGEOUS BUSINESS RELATIONSHIPS

39.     ClearPlay realleges and incorporates herein by reference the allegations contained in paragraphs 1 through 31 above as though fully set forth herein.

40.    Economically advantageous business relationships, capable of ascertainment, existed between ClearPlay and numerous clients, including but not limited to Target, in which ClearPlay had existing and/or prospective legal rights.

41.    Nissim was not a party to any of the relationships between ClearPlay and its clients, and thus had no right, justification, or privilege to interfere with these relationships.

42.    Nissim at all times material to this action had knowledge of the relationships between ClearPlay and its clients, including, but not limited to, Target.

43.    Nissim intentionally and unjustifiably interfered with the relationships between ClearPlay and its clients by, *inter alia*, falsely stating to Target that the ClearPlay DVD players were not covered by a Nissim license, stating that it would sue Target if Target did not immediately cease sales of the ClearPlay DVD players, and publishing false press releases on its website stating that ClearPlay was engaged in the sale and distribution of DVD players which are not covered by a Nissim license.

44.    As a direct result of Nissim's intentional and unjustified interference with the relationships between ClearPlay and its clients, including, but not limited to Target, ClearPlay's business relationships were disrupted, and ClearPlay has suffered and continues to sustain damages in the form of lost sales, lost clients, and lost business.

WHEREFORE, Plaintiff demands judgment against Nissim for damages in excess of $1,000,000, plus interest, costs, attorneys' fees, punitive damages upon a proper showing, and any and all other relief as the Court deems appropriate.

**Demand for Jury Trial**

The Plaintiff, ClearPlay, Inc., demands a jury trial for all issues so triable as a matter of

right.

Respectfully submitted this 7th day of December, 2007.

David S. Wood
Florida Bar No. 289515
Christa C. Werder
Florida Bar No. 76627
**BAKER & HOSTETLER** LLP
SunTrust Center, Suite 2300
200 South Orange Avenue
Post Office Box 112
Orlando, Florida  32802-0112
Tel: 407.649.4000
Fax: 407.841.0168
Attorneys for Plaintiff ClearPlay, Inc.

[DirectEDI.com] - Target - Target Stores (Import): Purchase Order (850)                     Page 1 of 1



DIRECT
EDI

Purchase Order

## General Information

| | |
|---|---|
| **Transaction Purpose:** | Original |
| **Purchase Order Type:** | Blanket Order (QTY Firm) |
| **Purchase Order Number:** | 0008-4494760-0581 |
| **Purchase Order Date:** | 01/10/2007 |
| **Contract Number:** | Standard (D) |
| **Ship Not Before Date:** | 03/01/2007 |
| **Ship No Later Date:** | 03/06/2007 |
| **Product Availability Date:** | 04/16/2007 |
| **Sales Requirements:** | No Back Order |

## FOB Related Instructions

| | |
|---|---|
| **Shipment Method Of Payment:** | Defined By Buyer And Seller |
| **FOB Point Type:** | Origin (Shipping Point) |
| **FOB Point:** | CNSZX |
| **Incoterms:** | Free On Board |
| **Location Type:** | Foreign Freight Forwarder Location |
| **Description:** | MAERSK LOGISTICS |

## Reference Identification

| | |
|---|---|
| **Vendor Number:** | 1208445 |
| **Description:** | CLEARPLAY INC / FLC |
| **Order Type Code:** | BA |
| **Description:** | Basic |
| **Department Number:** | 008 |

## Carrier Details

### Transportation

| | |
|---|---|
| **Routing Sequence:** | Origin/Delivery Carrier (Any Mode) |
| **Location ID:** | SEE LETTER OF CRE |

## Terms Of Sale

| | |
|---|---|
| **Type:** | Instant |
| **Basis Date:** | Delivery Date |
| **Net Days Due:** | 60 |
| **Payment Method:** | Private label letter of credit |

## Company Information

### Buying Party

| | |
|---|---|
| **Name:** | TARGET DC 0581 |
| **Location ID:** | 0581 |

### Consolidator

| | |
|---|---|
| **Name:** | MAERSK LOGISTICS |
| **Address:** | 32/F, SHUN HING SQUARE. DI WANG COMMERCIAL CENTRE,5002 SHENNAN DONG |
| **City, State Zip:** | SHENZHEN |
| **Country:** | China |

## Line Items

| # | QTY | UOM | Price | Buyer's Catalog # | Vendor's Style # | UPC |
|---|-----|-----|-------|-------------------|------------------|-----|
| 1 | 7200 | Each | 40.99 | 008060900 | CP-007 USB | 188215000005 |

## Total Information

| | |
|---|---|
| **Total Number Of Line Items:** | 1 |
| **Hash Total:** | 7200 |



Copyright by directedi.com 2001-2007

[DirectEDI.com] - Target - Target Stores (Import): Purchase Order (850)                                   Page 1 of 1



## Purchase Order

## General Information

| | |
|---|---|
| **Transaction Purpose:** | Original |
| **Purchase Order Type:** | Blanket Order (QTY Firm) |
| **Purchase Order Number:** | 0008-3628058-0584 |
| **Purchase Order Date:** | 02/02/2007 |
| **Contract Number:** | Standard (D) |
| **Ship Not Before Date:** | 03/16/2007 |
| **Ship No Later Date:** | 03/21/2007 |
| **Product Availability Date:** | 05/02/2007 |
| **Sales Requirements:** | No Back Order |

## FOB Related Instructions

| | |
|---|---|
| **Shipment Method Of Payment:** | Defined By Buyer And Seller |
| **FOB Point Type:** | Origin (Shipping Point) |
| **FOB Point:** | CNSZX |
| **Incoterms:** | Free On Board |
| **Location Type:** | Foreign Freight Forwarder Location |
| **Description:** | MAERSK LOGISTICS |

## Reference Identification

| | |
|---|---|
| **Vendor Number:** | 1208445 |
| **Description:** | CLEARPLAY INC / FLC |
| **Order Type Code:** | BA |
| **Description:** | Basic |
| **Department Number:** | 008 |

## Carrier Details

### Transportation

| | |
|---|---|
| **Routing Sequence:** | Origin/Delivery Carrier (Any Mode) |
| **Location ID:** | SEE LETTER OF CRE |

## Terms Of Sale

| | |
|---|---|
| **Type:** | Instant |
| **Basis Date:** | Delivery Date |
| **Net Days Due:** | 60 |
| **Payment Method:** | Private label letter of credit |

## Company Information

### Buying Party

| | |
|---|---|
| **Name:** | TARGET DC 0584 |
| **Location ID:** | 0584 |

### Consolidator

| | |
|---|---|
| **Name:** | MAERSK LOGISTICS |
| **Address:** | 32/F, SHUN HING SQUARE. DI WANG COMMERCIAL CENTRE,5002 SHENNAN DONG |
| **City, State Zip:** | SHENZHEN |
| **Country:** | China |

## Line Items

| # | QTY | UOM | Price | Buyer's Catalog # | Vendor's Style # | UPC |
|---|-----|-----|-------|-------------------|------------------|-----|
| 1 | 1476 | Each | 40.99 | 008060900 | CP-007 USB | 188215000005 |

## Total Information

**Total Number Of Line Items:** 1

**Hash Total:** 1476

[DirectEDI.com] - Target - Target Stores (Import): Purchase Order (850)



Purchase Order

## General Information

**Transaction Purpose:** Original
**Purchase Order Type:** Blanket Order (QTY Firm)
**Purchase Order Number:** 0008-2874676-3890
**Purchase Order Date:** 02/02/2007
**Contract Number:** Standard (D)

**Ship Not Before Date:** 03/24/2007
**Ship No Later Date:** 03/29/2007
**Product Availability Date:** 04/28/2007

**Sales Requirements:** No Back Order

## FOB Related Instructions

**Shipment Method Of Payment:** Defined By Buyer And Seller
**FOB Point Type:** Origin (Shipping Point)
**FOB Point:** CNSZX
**Incoterms:** Free On Board
**Location Type:** Foreign Freight Forwarder Location
**Description:** MAERSK LOGISTICS

## Reference Identification

**Vendor Number:** 1208445
**Description:** CLEARPLAY INC / FLC

**Order Type Code:** BA
**Description:** Basic

**Department Number:** 008

## Carrier Details

### Transportation

**Routing Sequence:** Origin/Delivery Carrier (Any Mode)
**Location ID:** SEE LETTER OF CRE

## Terms Of Sale

**Type:** Instant
**Basis Date:** Delivery Date
**Net Days Due:** 60
**Payment Method:** Private label letter of credit

## Company Information

### Buying Party

**Name:** TARGET DC 3890
**Location ID:** 3890

### Consolidator

**Name:** MAERSK LOGISTICS
**Address:** 32/F, SHUN HING SQUARE, DI WANG COMMERCIAL CENTRE,5002 SHENNAN DONG
**City, State Zip:** SHENZHEN
**Country:** China

## Line Items

| # | QTY | UOM | Price | Buyer's Catalog # | Vendor's Style # | UPC |
|---|-----|-----|-------|-------------------|------------------|-----|
| 1 | 707 | Each | 40.99 | 008060900 | CP-007 USB | 188215000005 |

## Total Information

**Total Number Of Line Items:** 1
**Hash Total:** 707

Copyright and related rights 2002-2007(tm)

[DirectEDI.com] - Target - Target Stores (Import): Purchase Order (850)                    Page 1 of 1



# Purchase Order

## General Information

| | |
|---|---|
| **Transaction Purpose:** | Original |
| **Purchase Order Type:** | Blanket Order (QTY Firm) |
| **Purchase Order Number:** | 0008-2844555-0581 |
| **Purchase Order Date:** | 02/02/2007 |
| **Contract Number:** | Standard (D) |
| **Ship Not Before Date:** | 03/24/2007 |
| **Ship No Later Date:** | 03/29/2007 |
| **Product Availability Date:** | 04/28/2007 |
| **Sales Requirements:** | No Back Order |

## FOB Related Instructions

| | |
|---|---|
| **Shipment Method Of Payment:** | Defined By Buyer And Seller |
| **FOB Point Type:** | Origin (Shipping Point) |
| **FOB Point:** | CNSZX |
| **Incoterms:** | Free On Board |
| **Location Type:** | Foreign Freight Forwarder Location |
| **Description:** | MAERSK LOGISTICS |

## Reference Identification

| | |
|---|---|
| **Vendor Number:** | 1208445 |
| **Description:** | CLEARPLAY INC / FLC |
| **Order Type Code:** | BA |
| **Description:** | Basic |
| **Department Number:** | 008 |

## Carrier Details

### Transportation

| | |
|---|---|
| **Routing Sequence:** | Origin/Delivery Carrier (Any Mode) |
| **Location ID:** | SEE LETTER OF CRE |

## Terms Of Sale

| | |
|---|---|
| **Type:** | Instant |
| **Basis Date:** | Delivery Date |
| **Net Days Due:** | 60 |
| **Payment Method:** | Private label letter of credit |

## Company Information

### Buying Party

| | |
|---|---|
| **Name:** | TARGET DC 0581 |
| **Location ID:** | 0581 |

### Consolidator

| | |
|---|---|
| **Name:** | MAERSK LOGISTICS |
| **Address:** | 32/F, SHUN HING SQUARE. DI WANG COMMERCIAL CENTRE,5002 SHENNAN DONG |
| **City, State Zip:** | SHENZHEN |
| **Country:** | China |

## Line Items

| # | QTY | UOM | Price | Buyer's Catalog # | Vendor's Style # | UPC |
|---|-----|-----|-------|-------------------|------------------|-----|
| 1 | 1417 | Each | 40.99 | 008060900 | CP-007 USB | 188215000005 |

## Total Information

**Total Number Of Line Items:** 1

**Hash Total:** 1417

Copyright by directedi.com 2002-2007@.

{DirectEDI.com] - Target - Target Stores (Import): Purchase Order (850)                    Page 1 of 1



DIRECT
EDI                                                                        Purchase Order

## General Information

| | |
|---|---|
| **Transaction Purpose:** | Original |
| **Purchase Order Type:** | Blanket Order (QTY Firm) |
| **Purchase Order Number:** | 0008-6796596-0584 |
| **Purchase Order Date:** | 02/02/2007 |
| **Contract Number:** | Standard (D) |
| **Ship Not Before Date:** | 03/30/2007 |
| **Ship No Later Date:** | 04/04/2007 |
| **Product Availability Date:** | 05/16/2007 |
| **Sales Requirements:** | No Back Order |

## FOB Related Instructions

| | |
|---|---|
| **Shipment Method Of Payment:** | Defined By Buyer And Seller |
| **FOB Point Type:** | Origin (Shipping Point) |
| **FOB Point:** | CNSZX |
| **Incoterms:** | Free On Board |
| **Location Type:** | Foreign Freight Forwarder Location |
| **Description:** | MAERSK LOGISTICS |

## Reference Identification

| | |
|---|---|
| **Vendor Number:** | 1208445 |
| **Description:** | CLEARPLAY INC / FLC |
| **Order Type Code:** | BA |
| **Description:** | Basic |
| **Department Number:** | 008 |

## Carrier Details

### Transportation

| | |
|---|---|
| **Routing Sequence:** | Origin/Delivery Carrier (Any Mode) |
| **Location ID:** | SEE LETTER OF CRE |

## Terms Of Sale

| | |
|---|---|
| **Type:** | Instant |
| **Basis Date:** | Delivery Date |
| **Net Days Due:** | 60 |
| **Payment Method:** | Private label letter of credit |

## Company Information

### Buying Party

| | |
|---|---|
| **Name:** | TARGET DC 0584 |
| **Location ID:** | 0584 |

### Consolidator

| | |
|---|---|
| **Name:** | MAERSK LOGISTICS |
| **Address:** | 32/F, SHUN HING SQUARE. DI WANG COMMERCIAL CENTRE,5002 SHENNAN DONG |
| **City, State Zip:** | SHENZHEN |
| **Country:** | China |

## Line Items

| # | QTY | UOM | Price | Buyer's Catalog # | Vendor's Style # | UPC |
|---|---|---|---|---|---|---|
| 1 | 1476 | Each | 40.99 | 008060900 | CP-007 USB | 188215000005 |

**Total Information**

**Total Number Of Line Items:** 1

**Hash Total:** 1476

Copyright by directedi.com 2002-2007®.

[DirectEDI.com] - Target - Target Stores (Import): Purchase Order (850)                    Page 1 of 1



DIRECT
EDI

Purchase Order

## General Information

**Transaction Purpose:** Original
**Purchase Order Type:** Blanket Order (QTY Firm)
**Purchase Order Number:** 0008-4631294-0581
**Purchase Order Date:** 02/02/2007
**Contract Number:** Standard (D)

**Ship Not Before Date:** 04/07/2007
**Ship No Later Date:** 04/12/2007
**Product Availability Date:** 05/12/2007

**Sales Requirements:** No Back Order

## FOB Related Instructions

**Shipment Method Of Payment:** Defined By Buyer And Seller
**FOB Point Type:** Origin (Shipping Point)
**FOB Point:** CNSZX
**Incoterms:** Free On Board
**Location Type:** Foreign Freight Forwarder Location
**Description:** MAERSK LOGISTICS

## Reference Identification

**Vendor Number:** 1208445
**Description:** CLEARPLAY INC / FLC

**Order Type Code:** BA
**Description:** Basic

**Department Number:** 008

## Carrier Details

### Transportation

**Routing Sequence:** Origin/Delivery Carrier (Any Mode)
**Location ID:** SEE LETTER OF CRE

## Terms Of Sale

**Type:** Instant
**Basis Date:** Delivery Date
**Net Days Due:** 60
**Payment Method:** Private label letter of credit

## Company Information

### Buying Party

**Name:** TARGET DC 0581
**Location ID:** 0581

### Consolidator

**Name:** MAERSK LOGISTICS
**Address:** 32/F, SHUN HING SQUARE.
DI WANG
COMMERCIAL CENTRE,5002
SHENNAN DONG
**City, State Zip:** SHENZHEN
**Country:** China

## Line Items

| # | QTY | UOM | Price | Buyer's Catalog # | Vendor's Style # | UPC |
|---|-----|-----|-------|-------------------|------------------|-----|
| 1 | 1417 | Each | 40.99 | 008060900 | CP-007 USB | 188215000005 |

## Total Information

**Total Number Of Line Items:** 1
**Hash Total:** 1417

Copyright by directedi.com 2000-2007 (r).

[DirectEDI.com] - Target - Target Stores (Import): Purchase Order (850)                    Page 1 of 1



Purchase Order

## General Information

| | |
|---|---|
| **Transaction Purpose:** | Original |
| **Purchase Order Type:** | Blanket Order (QTY Firm) |
| **Purchase Order Number:** | 0008-7771606-3890 |
| **Purchase Order Date:** | 02/02/2007 |
| **Contract Number:** | Standard (D) |
| **Ship Not Before Date:** | 04/07/2007 |
| **Ship No Later Date:** | 04/12/2007 |
| **Product Availability Date:** | 05/12/2007 |
| **Sales Requirements:** | No Back Order |

## FOB Related Instructions

| | |
|---|---|
| **Shipment Method Of Payment:** | Defined By Buyer And Seller |
| **FOB Point Type:** | Origin (Shipping Point) |
| **FOB Point:** | CNSZX |
| **Incoterms:** | Free On Board |
| **Location Type:** | Foreign Freight Forwarder Location |
| **Description:** | MAERSK LOGISTICS |

## Reference Identification

| | |
|---|---|
| **Vendor Number:** | 1208445 |
| **Description:** | CLEARPLAY INC / FLC |
| **Order Type Code:** | BA |
| **Description:** | Basic |
| **Department Number:** | 008 |

## Carrier Details

### Transportation

| | |
|---|---|
| **Routing Sequence:** | Origin/Delivery Carrier (Any Mode) |
| **Location ID:** | SEE LETTER OF CRE |

## Terms Of Sale

| | |
|---|---|
| **Type:** | Instant |
| **Basis Date:** | Delivery Date |
| **Net Days Due:** | 60 |
| **Payment Method:** | Private label letter of credit |

## Company Information

### Buying Party

| | |
|---|---|
| **Name:** | TARGET DC 3890 |
| **Location ID:** | 3890 |

### Consolidator

| | |
|---|---|
| **Name:** | MAERSK LOGISTICS |
| **Address:** | 32/F, SHUN HING SQUARE. DI WANG COMMERCIAL CENTRE,5002 SHENNAN DONG |
| **City, State Zip:** | SHENZHEN |
| **Country:** | China |

## Line Items

| # | QTY | UOM | Price | Buyer's Catalog # | Vendor's Style # | UPC |
|---|-----|-----|-------|-------------------|------------------|-----|
| 1 | 707 | Each | 40.99 | 008060900 | CP-007 USB | 188215000005 |

**Total Information**

**Total Number Of Line Items:** 1

**Hash Total:** 707

Copyright by directedi.com 2007 directedi.

[DirectEDI.com] - Target - Target Stores (Import): Purchase Order (850)   Page 1 of 1



DIRECT
EDi                                                                    Purchase Order

## General Information

| | |
|---|---|
| **Transaction Purpose:** | Original |
| **Purchase Order Type:** | Blanket Order (QTY Firm) |
| **Purchase Order Number:** | 0008-7167741-0584 |
| **Purchase Order Date:** | 02/16/2007 |
| **Contract Number:** | Standard (D) |
| **Ship Not Before Date:** | 04/19/2007 |
| **Ship No Later Date:** | 04/24/2007 |
| **Product Availability Date:** | 06/05/2007 |
| **Sales Requirements:** | No Back Order |

## FOB Related Instructions

| | |
|---|---|
| **Shipment Method Of Payment:** | Defined By Buyer And Seller |
| **FOB Point Type:** | Origin (Shipping Point) |
| **FOB Point:** | CNSZX |
| **Incoterms:** | Free On Board |
| **Location Type:** | Foreign Freight Forwarder Location |
| **Description:** | MAERSK LOGISTICS |

## Reference Identification

| | |
|---|---|
| **Vendor Number:** | 1208445 |
| **Description:** | CLEARPLAY INC / FLC |
| **Order Type Code:** | BA |
| **Description:** | Basic |
| **Department Number:** | 008 |

## Carrier Details

### Transportation

| | |
|---|---|
| **Routing Sequence:** | Origin/Delivery Carrier (Any Mode) |
| **Location ID:** | SEE LETTER OF CRE |

## Terms Of Sale

| | |
|---|---|
| **Type:** | Instant |
| **Basis Date:** | Delivery Date |
| **Net Days Due:** | 60 |
| **Payment Method:** | Private label letter of credit |

## Company Information

### Buying Party

| | |
|---|---|
| **Name:** | TARGET DC 0584 |
| **Location ID:** | 0584 |

### Consolidator

| | |
|---|---|
| **Name:** | MAERSK LOGISTICS |
| **Address:** | 32/F, SHUN HING SQUARE. DI WANG COMMERCIAL CENTRE,5002 SHENNAN DONG |
| **City, State Zip:** | SHENZHEN |
| **Country:** | China |

## Line Items

| # | QTY | UOM | Price | Buyer's Catalog # | Vendor's Style # | UPC |
|---|---|---|---|---|---|---|
| 1 | 1567 | Each | 40.99 | 008060900 | CP-007 USB | 188215000005 |

**Total Information**

**Total Number Of Line Items:** 1

**Hash Total:** 1567

Copyright by directedi.com 2001-2007©

[DirectEDI.com] - Target - Target Stores (Import): Purchase Order (850)　　　　　Page 1 of 1



DIRECT
EDI

Purchase Order

## General Information

| | |
|---|---|
| **Transaction Purpose:** | Original |
| **Purchase Order Type:** | Blanket Order (QTY Firm) |
| **Purchase Order Number:** | 0008-4157250-3890 |
| **Purchase Order Date:** | 02/16/2007 |
| **Contract Number:** | Standard (D) |
| **Ship Not Before Date:** | 04/27/2007 |
| **Ship No Later Date:** | 05/02/2007 |
| **Product Availability Date:** | 06/01/2007 |
| **Sales Requirements:** | No Back Order |

## FOB Related Instructions

| | |
|---|---|
| **Shipment Method Of Payment:** | Defined By Buyer And Seller |
| **FOB Point Type:** | Origin (Shipping Point) |
| **FOB Point:** | CNSZX |
| **Incoterms:** | Free On Board |
| **Location Type:** | Foreign Freight Forwarder Location |
| **Description:** | MAERSK LOGISTICS |

## Reference Identification

| | |
|---|---|
| **Vendor Number:** | 1208445 |
| **Description:** | CLEARPLAY INC / FLC |
| **Order Type Code:** | BA |
| **Description:** | Basic |
| **Department Number:** | 008 |

## Carrier Details

### Transportation

| | |
|---|---|
| **Routing Sequence:** | Origin/Delivery Carrier (Any Mode) |
| **Location ID:** | SEE LETTER OF CRE |

## Terms Of Sale

| | |
|---|---|
| **Type:** | Instant |
| **Basis Date:** | Delivery Date |
| **Net Days Due:** | 60 |
| **Payment Method:** | Private label letter of credit |

## Company Information

### Buying Party

| | |
|---|---|
| **Name:** | TARGET DC 3890 |
| **Location ID:** | 3890 |

### Consolidator

| | |
|---|---|
| **Name:** | MAERSK LOGISTICS |
| **Address:** | 32/F, SHUN HING SQUARE. DI WANG COMMERCIAL CENTRE,5002 SHENNAN DONG |
| **City, State Zip:** | SHENZHEN |
| **Country:** | China |

## Line Items

| # | QTY | UOM | Price | Buyer's Catalog # | Vendor's Style # | UPC |
|---|---|---|---|---|---|---|
| 1 | 701 | Each | 40.99 | 008060900 | CP-007 USB | 188215000005 |

**Total Information**

**Total Number Of Line Items:** 1

**Hash Total:** 701

Copyright by directedi.com 2002-2007 .

[DirectEDI.com] - Target - Target Stores (Import): Purchase Order (850)                 Page 1 of 1



DIRECT
EDI                                                                        Purchase Order

## General Information

| | |
|---|---|
| **Transaction Purpose:** | Original |
| **Purchase Order Type:** | Blanket Order (QTY Firm) |
| **Purchase Order Number:** | 0008-9427329-0581 |
| **Purchase Order Date:** | 02/16/2007 |
| **Contract Number:** | Standard (D) |
| **Ship Not Before Date:** | 04/27/2007 |
| **Ship No Later Date:** | 05/02/2007 |
| **Product Availability Date:** | 06/01/2007 |
| **Sales Requirements:** | No Back Order |

## FOB Related Instructions

| | |
|---|---|
| **Shipment Method Of Payment:** | Defined By Buyer And Seller |
| **FOB Point Type:** | Origin (Shipping Point) |
| **FOB Point:** | CNSZX |
| **Incoterms:** | Free On Board |
| **Location Type:** | Foreign Freight Forwarder Location |
| **Description:** | MAERSK LOGISTICS |

## Reference Identification

| | |
|---|---|
| **Vendor Number:** | 1208445 |
| **Description:** | CLEARPLAY INC / FLC |
| **Order Type Code:** | BA |
| **Description:** | Basic |
| **Department Number:** | 008 |

## Carrier Details

### Transportation

| | |
|---|---|
| **Routing Sequence:** | Origin/Delivery Carrier (Any Mode) |
| **Location ID:** | SEE LETTER OF CRE |

## Terms Of Sale

| | |
|---|---|
| **Type:** | Instant |
| **Basis Date:** | Delivery Date |
| **Net Days Due:** | 60 |
| **Payment Method:** | Private label letter of credit |

## Company Information

### Buying Party

| | |
|---|---|
| **Name:** | TARGET DC 0581 |
| **Location ID:** | 0581 |

### Consolidator

| | |
|---|---|
| **Name:** | MAERSK LOGISTICS |
| **Address:** | 32/F, SHUN HING SQUARE. DI WANG COMMERCIAL CENTRE,5002 SHENNAN DONG |
| **City, State Zip:** | SHENZHEN |
| **Country:** | China |

## Line Items

| # | QTY | UOM | Price | Buyer's Catalog # | Vendor's Style # | UPC |
|---|-----|-----|-------|-------------------|------------------|-----|
| 1 | 1332 | Each | 40.99 | 008060900 | CP-007 USB | 188215000005 |

### Total Information

**Total Number Of Line Items:** 1

**Hash Total:** 1332

Copyright by directedi.com 2001-2007

[DirectEDI.com] - Target - Target Stores (Import): Purchase Order (850)                  Page 1 of 1



Purchase Order

## General Information

| | |
|---|---|
| **Transaction Purpose:** | Original |
| **Purchase Order Type:** | Blanket Order (QTY Firm) |
| **Purchase Order Number:** | 0008-9427329-0581 |
| **Purchase Order Date:** | 02/16/2007 |
| **Contract Number:** | Standard (D) |
| **Ship Not Before Date:** | 04/27/2007 |
| **Ship No Later Date:** | 05/02/2007 |
| **Product Availability Date:** | 06/01/2007 |
| **Sales Requirements:** | No Back Order |

## FOB Related Instructions

| | |
|---|---|
| **Shipment Method Of Payment:** | Defined By Buyer And Seller |
| **FOB Point Type:** | Origin (Shipping Point) |
| **FOB Point:** | CNSZX |
| **Incoterms:** | Free On Board |
| **Location Type:** | Foreign Freight Forwarder Location |
| **Description:** | MAERSK LOGISTICS |

## Reference Identification

| | |
|---|---|
| **Vendor Number:** | 1208445 |
| **Description:** | CLEARPLAY INC / FLC |
| **Order Type Code:** | BA |
| **Description:** | Basic |
| **Department Number:** | 008 |

## Carrier Details

### Transportation

| | |
|---|---|
| **Routing Sequence:** | Origin/Delivery Carrier (Any Mode) |
| **Location ID:** | SEE LETTER OF CRE |

## Terms Of Sale

| | |
|---|---|
| **Type:** | Instant |
| **Basis Date:** | Delivery Date |
| **Net Days Due:** | 60 |
| **Payment Method:** | Private label letter of credit |

## Company Information

### Buying Party

| | |
|---|---|
| **Name:** | TARGET DC 0581 |
| **Location ID:** | 0581 |

### Consolidator

| | |
|---|---|
| **Name:** | MAERSK LOGISTICS |
| **Address:** | 32/F, SHUN HING SQUARE. DI WANG COMMERCIAL CENTRE,5002 SHENNAN DONG |
| **City, State Zip:** | SHENZHEN |
| **Country:** | China |

## Line Items

| # | QTY | UOM | Price | Buyer's Catalog # | Vendor's Style # | UPC |
|---|---|---|---|---|---|---|
| 1 | 1332 | Each | 40.99 | 008060900 | CP-007 USB | 188215000005 |

## Total Information

| | |
|---|---|
| **Total Number Of Line Items:** | 1 |
| **Hash Total:** | 1332 |

Copyright by directedi.com 2002-2007.



**DIRECT EDI**

Purchase Order

## General Information

**Transaction Purpose:** Original
**Purchase Order Type:** Blanket Order (QTY Firm)
**Purchase Order Number:** 0008-4682530-3890
**Purchase Order Date:** 08/13/2007
**Contract Number:** Standard (D)

**Ship Not Before Date:** 09/06/2007
**Ship No Later Date:** 09/11/2007
**Product Availability Date:** 10/24/2007

**Sales Requirements:** No Back Order

## FOB Related Instructions

**Shipment Method Of Payment:** Defined By Buyer And Seller
**FOB Point Type:** Origin (Shipping Point)
**FOB Point:** CNSZX
**Incoterms:** Free On Board
**Location Type:** Foreign Freight Forwarder Location
**Description:** MAERSK LOGISTICS

## Reference Identification

**Vendor Number:** 1208445
**Description:** CLEARPLAY INC / FLC

**Order Type Code:** BA
**Description:** Basic

**Department Number:** 008

## Carrier Details

### Transportation

**Routing Sequence:** Origin/Delivery Carrier (Any Mode)
**Location ID:** SEE LETTER OF CRE

## Terms Of Sale

**Type:** Instant
**Basis Date:** Delivery Date
**Net Days Due:** 60
**Payment Method:** Private label letter of credit

## Company Information

### Buying Party

**Name:** TARGET DC 3890
**Location ID:** 3890

### Consolidator

**Name:** MAERSK LOGISTICS
**Address:** 32/F, SHUN HING SQUARE. DI WANG COMMERCIAL CENTRE,5002 SHENNAN DONG
**City, State Zip:** SHENZHEN
**Country:** China

## Reference Identification

**Mutually Defined:** Instructions for Inco Terms
For FOB, vendor is responsible for order delivery as follows:
CFS loose freight on 1st day of ship/cancel window to designated consolidator's container freight station.
Full container freight on 1st or last day or between 1st and last days of ship/cancel window to designated carrier's container yard within the designated port of export.

## Line Items

| # | QTY | UOM | Price | Buyer's Catalog # | Vendor's Style # | UPC |
|---|-----|-----|-------|-------------------|------------------|-----|
| 1 | 3600 | Each | 40.99 | 008060900 | CP-007 USB | 188215000005 |

### Total Information

**Total Number Of Line Items:** 1
**Hash Total:** 3600

Copyright by directedi.com 2003-2007.



## Purchase Order

### General Information

| | |
|---|---|
| **Transaction Purpose:** | Original |
| **Purchase Order Type:** | Blanket Order (QTY Firm) |
| **Purchase Order Number:** | 0008-6299391-3890 |
| **Purchase Order Date:** | 08/31/2007 |
| **Contract Number:** | Standard (D) |
| **Ship Not Before Date:** | 09/24/2007 |
| **Ship No Later Date:** | 09/29/2007 |
| **Product Availability Date:** | 11/14/2007 |
| **Sales Requirements:** | No Back Order |

### FOB Related Instructions

| | |
|---|---|
| **Shipment Method Of Payment:** | Defined By Buyer And Seller |
| **FOB Point Type:** | Origin (Shipping Point) |
| **FOB Point:** | CNSZX |
| **Incoterms:** | Free On Board |
| **Location Type:** | Foreign Freight Forwarder Location |
| **Description:** | MAERSK LOGISTICS |

### Reference Identification

| | |
|---|---|
| **Vendor Number:** | 1208445 |
| **Description:** | CLEARPLAY INC / FLC |
| **Order Type Code:** | BA |
| **Description:** | Basic |
| **Department Number:** | 008 |

### Carrier Details

#### Transportation

| | |
|---|---|
| **Routing Sequence:** | Origin/Delivery Carrier (Any Mode) |
| **Location ID:** | SEE LETTER OF CRE |

### Terms Of Sale

| | |
|---|---|
| **Type:** | Instant |
| **Basis Date:** | Delivery Date |
| **Net Days Due:** | 60 |
| **Payment Method:** | Private label letter of credit |

### Company Information

#### Buying Party

| | |
|---|---|
| **Name:** | TARGET DC 3890 |
| **Location ID:** | 3890 |

#### Consolidator

| | |
|---|---|
| **Name:** | MAERSK LOGISTICS |
| **Address:** | 32/F, SHUN HING SQUARE. DI WANG COMMERCIAL CENTRE,5002 SHENNAN DONG |
| **City, State Zip:** | SHENZHEN |
| **Country:** | China |

### Reference Identification

**Mutually Defined:** Instructions for Inco Terms

For FOB, vendor is responsible for order delivery
as follows:
CFS loose freight on 1st day of ship/cancel window
to designated consolidator's container freight station.
Full container freight on 1st or last day or between 1st
and last days of ship/cancel window to designated carrier's
container yard within the designated port of export.

### Line Items

| # | QTY | UOM | Price | Buyer's Catalog # | Vendor's Style # | UPC |
|---|-----|-----|-------|-------------------|-------------------|-----|
| 1 | 3600 | Each | 40.99 | 008060900 | CP-007 USB | 188215000005 |

### Total Information

| | |
|---|---|
| **Total Number Of Line Items:** | 1 |
| **Hash Total:** | 3600 |

Copyright by directedi.com 2002-2007.

Case 9:07-cv-81170-PCH   Document 1   Entered on FLSD Docket 12/10/2007   Page 25 of 73



**DIRECT EDI**

Purchase Order

## General Information

| | |
|---|---|
| **Transaction Purpose:** | Original |
| **Purchase Order Type:** | Blanket Order (QTY Firm) |
| **Purchase Order Number:** | 0008-7635866-3890 |
| **Purchase Order Date:** | 10/05/2007 |
| **Contract Number:** | Standard (D) |
| **Ship Not Before Date:** | 10/18/2007 |
| **Ship No Later Date:** | 10/23/2007 |
| **Product Availability Date:** | 12/05/2007 |
| **Sales Requirements:** | No Back Order |

## FOB Related Instructions

| | |
|---|---|
| **Shipment Method Of Payment:** | Defined By Buyer And Seller |
| **FOB Point Type:** | Origin (Shipping Point) |
| **FOB Point:** | CNSZX |
| **Incoterms:** | Free On Board |
| **Location Type:** | Foreign Freight Forwarder Location |
| **Description:** | MAERSK LOGISTICS |

## Reference Identification

| | |
|---|---|
| **Vendor Number:** | 1208445 |
| **Description:** | CLEARPLAY INC / FLC |
| **Order Type Code:** | BA |
| **Description:** | Basic |
| **Department Number:** | 008 |

## Carrier Details

### Transportation

| | |
|---|---|
| **Routing Sequence:** | Origin/Delivery Carrier (Any Mode) |
| **Location ID:** | SEE LETTER OF CRE |

## Terms Of Sale

| | |
|---|---|
| **Type:** | Instant |
| **Basis Date:** | Delivery Date |
| **Net Days Due:** | 60 |
| **Payment Method:** | Private label letter of credit |

## Company Information

### Buying Party

| | |
|---|---|
| **Name:** | TARGET DC 3890 |
| **Location ID:** | 3890 |

### Consolidator

| | |
|---|---|
| **Name:** | MAERSK LOGISTICS |
| **Address:** | 32/F, SHUN HING SQUARE. DI WANG COMMERCIAL CENTRE,5002 SHENNAN DONG |
| **City, State Zip:** | SHENZHEN |
| **Country:** | China |

## Reference Identification

**Mutually Defined:** Instructions for Inco Terms

For FOB, vendor is responsible for order delivery as follows:
CFS loose freight on 1st day of ship/cancel window to designated consolidator's container freight station. Full container freight on 1st or last day or between 1st and last days of ship/cancel window to designated carrier's container yard within the designated port of export.

## Line Items

| # | QTY | UOM | Price | Buyer's Catalog # | Vendor's Style # | UPC |
|---|---|---|---|---|---|---|
| 1 | 3600 | Each | 40.99 | 008060900 | CP-007 USB | 188215000005 |

### Total Information

**Total Number Of Line Items:** 1
**Hash Total:** 3600

Case 9:07-cv-81170-PCH    Document 1    Entered on FLSD Docket 12/10/2007    Page 26 of 73



DIRECT
ED!

Purchase Order

## General Information

**Transaction Purpose:** Original
**Purchase Order Type:** Blanket Order (QTY Firm)
**Purchase Order Number:** 0008-4351771-0581
**Purchase Order Date:** 10/05/2007
**Contract Number:** Standard (D)

**Ship Not Before Date:** 11/01/2007
**Ship No Later Date:** 11/06/2007
**Product Availability Date:** 12/19/2007

**Sales Requirements:** No Back Order

## FOB Related Instructions

**Shipment Method Of Payment:** Defined By Buyer And Seller
**FOB Point Type:** Origin (Shipping Point)
**FOB Point:** CNSZX
**Incoterms:** Free On Board
**Location Type:** Foreign Freight Forwarder Location
**Description:** MAERSK LOGISTICS

## Reference Identification

**Vendor Number:** 1208445
**Description:** CLEARPLAY INC / FLC

**Order Type Code:** BA
**Description:** Basic

**Department Number:** 008

## Carrier Details

### Transportation

**Routing Sequence:** Origin/Delivery Carrier (Any Mode)
**Location ID:** SEE LETTER OF CRE

## Terms Of Sale

**Type:** Instant
**Basis Date:** Delivery Date
**Net Days Due:** 60
**Payment Method:** Private label letter of credit

## Company Information

### Buying Party

**Name:** TARGET DC 0581
**Location ID:** 0581

### Consolidator

**Name:** MAERSK LOGISTICS
**Address:** 32/F, SHUN HING SQUARE.
DI WANG
COMMERCIAL CENTRE,5002
SHENNAN DONG
**City, State Zip:** SHENZHEN
**Country:** China

## Reference Identification

**Mutually Defined:** Instructions for Inco Terms
For FOB, vendor is responsible for order delivery
as follows:
CFS loose freight on 1st day of ship/cancel window
to designated consolidator's container freight station.
Full container freight on 1st or last day or between 1st
and last days of ship/cancel window to designated carrier's
container yard within the designated port of export.

## Line Items

| # | QTY | UOM | Price | Buyer's Catalog # | Vendor's Style # | UPC |
|---|-----|-----|-------|-------------------|------------------|-----|
| 1 | 1705 | Each | 40.99 | 008060900 | CP-007 USB | 188215000005 |

### Total Information

**Total Number Of Line Items:** 1
**Hash Total:** 1705

Copyright by directed .com 2002-2007 .

**CAREY**
**RODRIGUEZ**
**GREENBERG**
**PAUL**

INTELLECTUAL PROPERTY LAW
AND COMPLEX COMMERCIAL LITIGATION

1395 Brickell Avenue
Suite 700
Miami, Florida 33131
T 305.372.7474
F 305.372.7475
www.crgplaw.com

*Via Federal Express*

June 11, 2007

Timothy R. Baer, Esq.
Senior Vice President, Legal and General Counsel
Target Corporation
1000 Nicollet Mall
Minneapolis, Minnesota 55403

Re:     Unlicensed ClearPlay DVD Players
        Infringement of Nissim U.S. Patents 5,434,678;
        5,589,945; 5,724,472; 5,913,013; 6,067,401

Dear Mr. Baer:

I represent Nissim Corp., owner of the above-identified United States patents, copies of which are available at my client's website, www.nissim.com. Nissim has in the past received substantial cooperation from Target in ensuring that all DVD devices sold by Target are properly licensed. Nissim is grateful for the efforts in particular of Stephen Lee and Huong Nguyen of your office. Regrettably, however, a serious matter has recently arisen involving the sale by Target of unlicensed DVD players which we believe warrants your immediate attention and action.

Target is currently selling DVD players bearing model number CP007-USB supplied by a company named ClearPlay, Inc. A copy of ClearPlay's website advertisement promoting this product for sale at Target stores is attached to this letter for your review. As part of a settlement of prior patent infringement litigation, Nissim had previously granted ClearPlay a conditional license to sell certain DVD players that adopt the "CustomPlay Specifications," a detailed set of standards for coding objectionable content in movies developed by Nissim's subsidiary CustomPlay LLC. However, the CP007-USB DVD players and the ClearPlay filters used by the players <u>do not comply</u> with the required standards and therefore are not covered by the license. Accordingly, Nissim has re-opened the case to enforce the settlement agreement against ClearPlay and has requested that the court halt the continued sale of these DVD players and the distribution of the filters.

Importantly, the CP007-USB DVD player does not operate as advertised. Specifically, the player fails to provide any filtering whatsoever of entire categories and levels of explicitness of content which the menu screen of the player leads consumers to believe can be filtered. The player also does not filter the same objectionable content consistently, not only across different movies, but also within a single movie. As a result, this ClearPlay DVD player is qualitatively deficient and constitutes a disservice to consumers as well as to the standard CustomPlay established.



EXHIBIT
"C"

Miami | Boca Raton | Washington D.C.

Timothy R. Baer, Esq.
Target Corporation
June 11, 2007
Page 2 of 2

Nissim hereby provides Target formal notice that the ClearPlay CP007-USB Player is <u>not licensed</u> by Nissim, and therefore that Target's sales and offers to sell the ClearPlay CP007-USB DVD Player constitute <u>infringements</u> of the above-identified Nissim patents. On behalf of Nissim, we hereby demand that Target <u>immediately remove</u> these infringing products from all Target stores and that Target <u>discontinue</u> selling these infringing products. As I am sure you appreciate, as a seller of unlicensed goods Target is liable as a direct infringer under United States patent law. *See* 35 U.S.C. § 271(a).

This is not the first time ClearPlay has created significant potential infringement liabilities for a major retailer. In 2004, after unsuccessfully attempting to obtain an appropriate license from Nissim, ClearPlay nonetheless proceeded to supply another infringing ClearPlay-enabled DVD player, the RCA DRC232N, to Wal-Mart Stores. Although ClearPlay had knowledge of the fact that this ClearPlay-enabled player was excluded from the scope of the manufacturer's (Thomson's) license agreement with Nissim, ClearPlay failed to disclose the issue to the appropriate personnel at Thomson. When Nissim immediately brought suit to stop the infringement, Thomson ceased producing the ClearPlay-enabled player, and Wal-Mart ceased selling it. It is therefore with good reason that Thomson and Wal-Mart are no longer business partners of ClearPlay. Unfortunately, we suspect that, as it did with Thomson and Wal-Mart over the previous DVD player, ClearPlay likewise failed to disclose to Target that its new DVD player is not covered by the license from Nissim.

Nissim values greatly the goodwill it has shared over the years with Target, and expects that Target will take immediate steps to cease selling ClearPlay's unlicensed DVD player. Nissim has in the past refrained from formally including Target in any legal proceedings required to prevent unlicensed infringements, and hopes that such action will not be necessary in this important instance. Please do not hesitate to contact me if you have any questions. Thank you for your attention in this matter.

Very truly yours,

John C. Carey

Enclosure

cc:     Stephen Lee, Esq. (via email)
        Huong L. Nguyen, Esq. (via email)
        Nissim Corp.



Home | Privacy Policy | In the News | Help | About Us | Contact Us
Affiliate Program | Advisors | Press Releases | Non-Profit Support | Job Opportunities

Copyright ClearPlay 2001-2007 All Rights Reserved



**Being a Responsible Parent
Just Got a Whole Lot Easier.**

0 items in cart                    $0.00

If you have a **Coupon Code** or **Special Offer**, enter it here:

[Apply]

**New ClearPlay USB Player**

All New ClearPlay DVD player with EASY Filter loading via USB or memory cards. Home Theater quality! Progressive Scan, Optical Audio. **More info.**

**Price: $79.95**

**In Stock!**
Players also available at Target Stores:
**Target Store Locator**

[Buy as a Gift]   [Choose this Player]

**MaxPlay DVD Player**

**Price: $84.95**

**Puchase the MaxPlay DVD player from IntegraCore.**
more info

[Choose this Player]

**ClearPlay Memberships**

Already have a ClearPlay enabled DVD player? Get the latest Filters for new release movies.

[Continue]

**Questions?
Call 1-866-788-6992
or email or chat**

**Customer Comments**

We've loved our ClearPlay player. My kids are 11, 12 and 14, and they just haven't watched anything because I wouldn't let them. I home school my kids, and we just had a summer party with ClearPlay. We watched Pirates of the Caribbean and King Kong, and it was awesome. I have no idea what we missed, but it was just awesome. I was telling everybody about it in my Sunday school class, do you have any kind of a referal program?

– Mary

I heard that it would be near impossible to filter The Last Samurai because of the violence and blood, but when I watched it with your filter, I didn't see hardly any blood. I was very impressed!

**– Ben, West Valley City**

Everyone at Clear Play: Thank you so much for such awesome service on The Rush Hour movie and for suppling the new filter disk. You exceeded our expections! We are spreading the word about Clear Play. Thanks Again!

**– Carlene, Palm Coast FL**

more >

**Home | Privacy Policy | In the News | Help | About Us | Contact Us
Affiliate Program | Advisors | Press Releases | Non-Profit Support | Job Opportunities**

Copyright ClearPlay 2001-2007 All Rights Reserved

Home   Patents   Licensees   News   Contacts

Home
Patents
Licensees
News
Contacts

## News

### Nissim Brings Legal Action To Halt Sales Of ClearPlay's DVD Players And Filters

Boca Raton, FL – June 11, 2007 – Nissim Corp. today commenced legal proceedings in the United States District Court for the Southern District of Florida to halt the sale of a new ClearPlay DVD Player and the distribution of related ClearPlay Filters.

The current litigation re-opens a patent infringement suit originally filed by Nissim in 2004 regarding a prior DVD player, the ClearPlay-enabled RCA DRC232N. Following extensive pretrial litigation and claim construction proceedings, partial summary judgment of infringement was entered in favor of Nissim on all but two elements of the thirty-six asserted patent claims. The action was subsequently resolved by a settlement agreement under which Nissim granted ClearPlay a limited conditional license to sell certain players that adopt the CustomPlay Objectionable Content Specifications. The CustomPlay Specifications, developed by Nissim's subsidiary CustomPlay LLC, comprise a detailed set of standards for coding objectionable content in movies.

The new ClearPlay DVD Player, model CP007-USB, and the ClearPlay Filters used by the player are not in compliance with the CustomPlay Specifications and are not covered by the Nissim license. Nissim has thus re-opened the prior patent infringement case in order to enforce the settlement agreement against ClearPlay and has requested that the court prohibit the continued sale of the non-compliant ClearPlay DVD Players and the distribution of the non-compliant ClearPlay Filters.

In addition to failing to comply with the requirements of the settlement agreement with Nissim, the ClearPlay DVD Player does not operate as advertised. Specifically, the player fails to provide any filtering whatsoever of entire categories and levels of explicitness of content which the menu screen of the player leads consumers to believe can be filtered. The player also does not filter the same objectionable content consistently across different movies and within a single movie. As a result, the new ClearPlay DVD Player is deficient and inconsistent with the quality standard CustomPlay has established..

In the case of the earlier infringing player, ClearPlay had knowledge of the fact that the RCA DRC232N DVD player was excluded from the scope of the manufacturer's (Thomson's) license agreement with Nissim. Nonetheless, ClearPlay failed to disclose the issue to the appropriate personnel at Thomson and Wal-Mart. When Nissim immediately brought suit to stop the infringement, Thomson ceased producing the ClearPlay-enabled player, and Wal-Mart ceased selling it. Similarly, ClearPlay knew or should have known that the ClearPlay DVD Player was excluded from the scope of the limited conditional license granted by Nissim.

Accordingly, Nissim is providing formal notice to all retailers and other third parties that the ClearPlay DVD Player is not licensed and therefore that any sales and offers to sell the ClearPlay DVD Player and any similarly non-compliant devices constitute infringements of the Nissim patents. Nissim is demanding all retailers to immediately remove these infringing products from their stores and to cease and desist from marketing these infringing products. Under United States law, all sellers of unlicensed goods may be held liable as direct patent infringers.

Nissim has also provided notice to cable and satellite operators that ClearPlay does not hold a license from Nissim permitting cable and satellite implementations of objectionable content control. Nissim has not licensed its video server and set-top systems and methods which are covered by, for example, U.S. Patents 5,696,869 and 5,717,814, to any entities, reserving these implementations exclusively for Nissim's subsidiary CustomPlay LLC.



EXHIBIT
"D"

PENGAD 800-631-6989

About Nissim Corp. Nissim is the owner of an extraordinarily valuable portfolio of intellectual properties, including United States Patents that has been widely recognized by the consumer electronics industry as essential to the implementation of the DVD Specifications. Current licensees of Nissim include virtually all significant manufacturers of devices capable of playing DVDs, including Dell Products, L.P., Funai Electric Company, Ltd., Gateway Inc., Hewlett-Packard Company, Lenovo (Singapore) Pte. Ltd., LG Electronics Inc., Matsushita Electric Industrial Co., Ltd., Philips Electronics N.V., Pioneer Corporation, Sony Corporation, Thomson Multimedia SA, and Toshiba Corporation, among numerous others. Most recently, Microsoft Corporation became a direct licensee of Nissim for the Xbox 360 device.

© Nissim Corp. All Rights Reserved • Updated: 06-11-2007

# Baker Hostetler

Baker & Hostetler LLP

SunTrust Center, Suite 2300
200 South Orange Avenue
Post Office Box 112
Orlando, FL 32802-0112

T 407.649.4000
F 407.841.0168
www.bakerlaw.com

David S. Wood
direct dial: 407.649.4084
dwood@bakerlaw.com

**VIA E-MAIL AND U.S. MAIL**

July 6, 2007

Karl G. Schwappach, Esq.
Faegre & Benson LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901

**_Re: ClearPlay, Inc., DVD Player CP007-USB F&B No. 355759_**

Dear Mr. Schwappach:

This firm represents ClearPlay, Inc. ("ClearPlay"). I am in receipt of your June 26, 2007 correspondence wherein you enclose a copy of correspondence dated June 11, 2007 received from counsel for Nissim Corp. ("Nissim").

Please be advised that ClearPlay has every legal right to market and sell the DVD player known as CP007-USB. This player in no way infringes upon any patent owned by Nissim.

In the first instance, Nissim agreed to release ClearPlay from previously filed patent litigation, and the parties entered into a settlement and license agreement to memorialize this agreement. The DVD player for sale at Target stores and the ClearPlay filters sold outside of Target stores are compliant with the settlement agreement. In the second instance, the DVD player sold to Target does not include any settings for filtering and thus does not include any of the "mapping" that Nissim claims to be not in compliance with its patents or the settlement agreement reached by the parties. Indeed, there is not a filter setting user interface on the DVD player until the first map is actually loaded to the DVD player by the end user after contacting ClearPlay.

As a result, the DVD player currently being sold to Target does not constitute infringement of any patents held by Nissim and is in full compliance with the settlement and license agreement entered into by and between ClearPlay and Nissim.

This letter will also confirm that ClearPlay is fully aware of the terms and conditions under which Target purchased the subject DVD players from ClearPlay, and ClearPlay stands behind the warranties and representations made to Target.

Cincinnati   Cleveland   Columbus   Costa Mesa   Denver   Houston   Los Angeles   New York   Orlando   Washington, DC

EXHIBIT
"E"

PENGAD 800-631-6989

As to Nissim's current attempts to seek judicial enforcement of the parties' settlement and license agreement, it is ClearPlay's position that this motion is unnecessary and unfounded.  Further, please be advised that the Court has not yet agreed that Nissim's motion is properly before it, much less taken any action on Nissim's attempts to enforce the settlement agreement.   In any event, the Court has not halted the sale of any DVD players by ClearPlay nor the distribution of any ClearPlay filters.

ClearPlay looks forward to a long and profitable relationship with Target including but not limited to the sale of DVD player CP007-USB.

Yours very truly,

Signed in Mr. Wood's absence to avoid delay

David S. Wood

cc: William Aho
    Matt Jarman
    Lee Jarman

**CAREY**
**RODRIGUEZ**
**GREENBERG**
**PAUL**

INTELLECTUAL PROPERTY LAW
AND COMPLEX COMMERCIAL LITIGATION

1395 Brickell Avenue
Suite 700
Miami, Florida 33131
T 305.372.7474
F 305.372.7475
www.crgplaw.com

October 19, 2007

**Via E-mail and Regular Mail**

Karl G. Schwappach, Esq.
Faegre & Benson LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901

Re:   Unlicensed DVD Devices
      Infringement of Nissim U.S. Patents 5,434,678;
      5,589,945; 5,913,013; 6,151,444; 6,208,805; 6,463,207

Dear Mr. Schwappach:

As you know, we represent Nissim Corp. ("Nissim"), owner of the above-referenced U.S. patents. The attached list of DVD players, portable DVD players, DVD home theater systems, TV/DVD combination systems, DVD enabled notebook computers, and DVD enabled personal computers ("DVD-Devices") compiled from a recent visit to a Target retail store and www.target.com are examples of DVD-Devices that Nissim believes are not licensed under any of the more than 90 executed Nissim DVD-Device License Agreements ("Nissim's Agreement"). The unlicensed DVD-Devices comprise three areas of concern for Nissim: (1) unlicensed DVD-Devices sold under a private label brand owned or controlled by Target; (2) unlicensed DVD-Devices supplied to Target by third parties, including several third parties regarding whom Nissim has previously identified to Target as being unlicensed; and (3) unlicensed DVD-Devices supplied by ClearPlay.

While Nissim has made every effort to work cooperatively with Target over the years to ensure that only properly licensed DVD-Devices are distributed by Target, at this time Nissim is compelled to take action with respect to Target's continuing sales of unlicensed and infringing DVD-Devices. Such action is compelled by: (a) Nissim's responsibilities to its retail licensees (such as Best Buy) who have executed Nissim's Agreement to cover their private label DVD-Devices; (b) Nissim's responsibilities to its existing manufacturing licensees, which number more than 90 companies and include the largest and most respectable manufacturers of DVD-Devices in the world; and (c) Nissim's responsibilities to its subsidiary CustomPlay, LLC which is commercially developing certain aspects of the Nissim patents but whose efforts are being undermined by Target's continuing sales of certain infringing DVD-Devices from ClearPlay.



EXHIBIT
"F"

Karl G. Schwappach, Esq.
Faegre & Benson LLP
October 19, 2007
Page 2 of 3

With respect to the first area of concern, the attached list includes unlicensed private label DVD-Devices sold under a brand owned or controlled by Target or its subsidiaries, such as TruTech. While we understand that at one time Daewoo Electronics Corporation was manufacturing these units for Target, for the last three reported quarters, Daewoo has not reported or paid for any such units, leaving us to conclude that Target's private label DVD-Devices are not currently licensed. In view of the fact that Target controls these products, Nissim demands that Target execute Nissim's DVD-Device License Agreement (a copy of which is attached) to cover Target's private label DVD-Devices.

The attached list also includes unlicensed DVD-Devices sold by Target under brands not owned or controlled by Target, including Coby and Astar, among others. Nissim previously (and repeatedly) has identified Coby and Astar to Target as unlicensed suppliers in correspondence dated July 27, 2006, August 28, 2006 and October 2, 2006. Considering that more than 90 of the world's leading manufacturers and suppliers of DVD-Devices have accepted and are licensees in good standing under Nissim's Agreement, these sales by Target create an uneven playing field and are unfair to companies which respect intellectual property rights. Accordingly, Nissim demands that Target promptly cease selling these devices until the appropriate supplier executes Nissim's Agreement. This is what the reputable and properly licensed suppliers of DVD-Devices to Target expect.

Finally, Nissim demands that Target discontinue selling the unlicensed DVD players from ClearPlay model CP-007-USB unless and until those players are found by the court presiding over Nissim's current enforcement proceeding to be in compliance with the terms of the Nissim-ClearPlay Settlement and License Agreement. Given ClearPlay's refusal to fully disclose the facts to Target regarding ClearPlay's noncompliance with the terms of that Settlement and License Agreement, Nissim does not accept Target's current position to sit on the sidelines on this matter. The ClearPlay products are unlicensed and infringing products and should be removed from Target's shelves.

Nissim requests that Target provide written assurances within 14 days that Target will: (a) execute Nissim's Agreement to cover Target's own private label DVD-Devices; (b) require all unlicensed suppliers to execute Nissim's Agreement; and (c) cease selling ClearPlay's DVD players. Should Target not provide these assurances, Nissim will file the attached Complaint for Patent Infringement in the United States District Court for the Southern District of Florida.

Finally, please note that under the terms of Nissim's Agreement, the license of DVD-Devices held by many of Nissim's licensees who currently supply licensed products to Target will no longer extend to Target in the event that Target asserts in any judicial proceeding or document that any of the essential claims in the licensed patent portfolio is invalid and/or not infringed. (See DVD-Device License Agreement at paragraph 2.7). As a result, if litigation ensues between Nissim and Target, Target's consumer electronic business will be materially compromised.

Karl G. Schwappach, Esq.
Faegre & Benson LLP
October 19, 2007
Page 3 of 3


Thank you for your attention to this matter.


Very truly yours,


John C. Carey

Attachments

cc:   Stephen C. Lee, Esq., Intellectual Property Law Manager, Target Corporation (via e-mail)
      Nissim Corp.

## Target Store Visit 10-06-2007

Target
21637 State Road 7
Boca Raton, FL 33428
(561) 483-3400

**TruTech**
DVD/CD Player
T600-D
$29.99
Distributed by Target Corporation
Minneapolis, MN 55403
Made In China
© 2006 Target Brands, Inc.
target.com/trutech

**TruTech**
DVD Home Theater
STS9300

**TruTech**
17" LCDTV +DVD
PVS31170S1

**TruTech**
DVD/VCR
ZV450TT8

**ClearPlay**
DVD Player with Filtering
CP007 USB
$49.99

## Target Website Visit 10-08-2007

**Coby**
7" TFT Portable DVD/CD/MP3 Player
TF-DVD7006
http://www.target.com/dp/B000R99LZO/qid=1191856278/ref=br_1_11/601-1655086-6597763?ie=UTF8&node=10222201&frombrowse=1&rh=&page=1

**TruTech**
Silver 7" Portable DVD Player
PVS12701

http://www.target.com/TruTech-Silver-Portable-DVD-Player/dp/B000AV532Y/qid=1191856278/ref=br_1_12/601-1655086-6597763?ie=UTF8&node=10222201&frombrowse=1&rh=&page=1

**ClearPlay**
DVD Player with Filtering
CP007 USB
http://www.target.com/ClearPlay-DVD-Player-Filtering-CP007/dp/B000MRJ4KS/qid=1191856623/ref=br_1_10/601-1655086-6597763?ie=UTF8&node=10286161&frombrowse=1&rh=&page=1

**Skyworth**
15" LCD TV/ DVD Combo – White
SLC-1551W
http://www.target.com/Skyworth-LCD-DVD-Combo-SLC-1551W/dp/B000FZX7ZK/qid=1191857437/ref=br_1_6/601-1655086-6597763?ie=UTF8&node=10286161&frombrowse=1&index=tgt-mf-mv&field-browse=10286161&rank=pmrank&rh=&page=2

**NextPlay**
DVD Player – Blue
NP625FB
http://www.target.com/NextPlay-DVD-Player-Blue-NP625FB/dp/B000PAQJN2/qid=1191857755/ref=br_1_16/601-1655086-6597763?ie=UTF8&node=10286161&frombrowse=1&index=tgt-mf-mv&field-browse=10286161&rank=pmrank&rh=&page=6

**Astar**
7" DVD Player with Travel Bag
PD-8800
http://www.target.com/dp/B000FGEO1U/qid=1191858323/ref=br_1_15/601-1655086-6597763?ie=UTF8&node=293618011&frombrowse=1&rh=&page=1

# Target Website Visit 10-15-2007

**ASUS**
VX1 15" Notebook – Black
http://www.target.com/dp/B000NWGXBU/qid=1192457316/ref=br_1_16/602-3257322-6235824?ie=UTF8&node=12611981&frombrowse=1&rh=&page=1

**ZT**
1.6GHz 14" Notebook Computer - T2060
http://www.target.com/ZT-1-6GHz-14-Notebook-Computer/dp/B000OCSLW8/qid=1192457316/ref=br_1_6/602-3257322-6235824?ie=UTF8&node=12611981&frombrowse=1&rh=&page=1

**ZT**
Intel Celeron D 3.46G Desktop Computer
http://www.target.com/Intel-Celeron-3-46G-Desktop-Computer/dp/B000OCZPZE/qid=1192457878/ref=br_1_1/602-3257322-6235824?ie=UTF8&node=12614161&frombrowse=1&rh=&page=1

**Q2 Designs**
15.4" Intel Celeron 440 Notebook Computer - Fusion Pink
http://www.target.com/Designs-Intel-Celeron-Notebook-Computer/dp/B000KA70NU/qid=1192457601/ref=br_1_15/602-3257322-6235824?ie=UTF8&node=12611981&frombrowse=1&index=tgt-mf-mv&field-browse=12611981&rank=pmrank&rh=&page=2

**Optima**
12" Centrino Notebook Bundle – Gray
http://www.target.com/Optima-12-Centrino-Notebook-Bundle/dp/B000GX4CZU/qid=1192457706/ref=br_1_13/602-3257322-6235824?ie=UTF8&node=12611981&frombrowse=1&index=tgt-mf-mv&field-browse=12611981&rank=pmrank&rh=&page=3

**Optima**
Intel Dual Core Gamer System - Black
http://www.target.com/Optima-Intel-Dual-Gamer-System/dp/B000GX4CR8/qid=1192457878/ref=br_1_9/602-3257322-6235824?ie=UTF8&node=12614161&frombrowse=1&rh=&page=1

## DVD-DEVICE LICENSE AGREEMENT

This Agreement is made this _____ day of _____, 2007 ("Effective Date") by and between Nissim Corp. (hereinafter referred to as "Licensor"), a Florida corporation having its principal place of business at 18457 Long Lake Drive, Boca Raton, Florida 33496, USA, and _____, a _____ corporation (hereinafter referred to as "Licensee") having its principal place of business at _____, individually referred to as "Party" and collectively as the "Parties".

## WITNESSED THAT

**WHEREAS,** Licensor has the right to provide a license under certain patents as herein identified;

**WHEREAS,** Licensee is engaged in the business of manufacturing, selling or otherwise disposing of DVD-Devices in the United States;

**WHEREAS,** a license under certain patents as herein identified is necessary to implementing the DVD-Specifications in DVD-Devices sold in the United States; and

**WHEREAS,** Licensee desires to obtain, and Licensor is willing to grant Licensee, a non-exclusive, royalty-bearing license as hereafter defined and under the terms and provisions herein specified.

**NOW, THEREFORE**, in consideration of the promises and mutual agreements herein contained, Licensor and Licensee hereby agree as follows:

## TERMS AND CONDITIONS

1.    **DEFINITIONS**

1.1    The term "consist" limits and covers only the elements expressly recited.  By contrast, the terms "include", "such as", and "for example" are not limited and therefore cover more elements than those expressly recited.

1.2    "Affiliate" shall mean any corporation or entity at least fifty percent (50%) of whose voting share capital is owned or directly or indirectly controlled by or under common control with a Party as of the Effective Date of this Agreement or at any time during the term of this Agreement and any other entity over which a Party exercises effective managerial control.

1.3    "Days" shall mean calendar days.

1.4    "DVD-Devices" shall mean consumer electronics devices that implement the DVD-Specifications, including the following:  (i) personal computers having an optical drive and Navigation Software ("DVD-PCs");  (ii) consumer electronic kits for sale to an end user comprising an optical drive and Navigation Software for an end user to upgrade a personal computer ("DVD-Kits");  (iii) home video game consoles having an optical drive and Navigation Software ("DVD-Gamers");  (iv) electronic kits comprising an optical drive and Navigation Software, incorporated into automobiles, trucks, sea crafts, and airplanes ("DVD-Transports");  (v) consumer electronic combination devices having an optical drive and Navigation Software, e.g., DVD/TVs, DVD/VHS players, and DVD/PVRs ("DVD-Combos"); and (vi) consumer electronic devices, other than DVD-PCs, DVD-Kits, DVD-Gamers, DVD-Transports, and DVD-Combos, having an optical drive and Navigation Software, e.g., DVD

players ("DVD-Players"). DVD-Devices do not include optical drives not having, including, and/or being bundled with Navigation Software. DVD-Devices do not include software, for example, Navigation Software, not bundled with optical drives. DVD-Devices do not exclude DVD-Devices which are also capable of recording and writing optical discs.

1.5   "DVD-Specifications" shall mean the DVD Specifications for Read-Only Disc, Part 3 Video Specifications, Version 1.1, December 1997 published by Toshiba Corporation.

1.6   "DVD-Videos" shall mean optical discs in compliance with the DVD-Specifications that have, as part of their manufacturing, a prerecorded video.

1.7   "Essential Claims" shall mean claims 1-3, 7-8, 10-15, and 18 of United States Patent Number 5,434,678; claims 5-12 of United States Patent Number 5,589,945; claims 1-4, 7-10, 13-16, 18, 21-23 of United States Patent Number 5,913,013; claims 9, 11, 13, 15-17, 19, 21, 23-24 of United States Patent Number 6,151,444; claims 1-9 of United States Patent Number 6,208,805; claims 1, 4, 8, 9, 14, 16, 21, of United States Patent Number 6,463,207; and any other claims, but only such claims, in the Patent Portfolio that are necessarily infringed by implementation of the DVD-Specifications.

1.8   "Excluded Special Features" shall mean the following features facilitated in whole or in part by use of video segment information, for example, navigation data, distributed separate from a DVD-Video: (i) Subject Retrieval - enables retrieving video segments focusing on a subject such as, for example, individual performers, best lines, close-ups, martial arts, philosophy, action, effects, touchdowns, interceptions, home runs, double plays, and advertisements; (ii) Time Management - enables playing a condensed version of a video, such as, for example, a sixty-minute version that excludes advertisements, fillers, marginal segments, and some significant but not critical segments; (iii) Versions - enables playing a version that focuses on a genre, e.g., romance, comedy, action; a subject, e.g., martial arts; and/or point of view, e.g., one of the character's perspective; iv) Keyword Search - enables retrieving video segments and/or clips having content that is responsive to keywords; (v) Adult Content Control - enables playing video content according to adult content preferences; (vi) Presentation Control - enables the selection and execution of video presentation controls such as camera angles, alternate scenes, temporal order, skip clues, perspectives; and (vii) Multi-User Control - enables individualized content preferences and privileges for each of a plurality of viewers.

1.9   "Navigation Software" shall mean software and/or firmware implementing the DVD-Specifications.

1.10   "Patent Portfolio" shall mean the portfolio consisting of United States Patent Numbers 5,434,678; 5,589,945; 5,913,013; 6,151,444; 6,208,805; and 6,463,207; and those future United States Patents that may be added in accordance with the covenants and warranties set forth in Section 8.1.

1.11   "Royalty Products" shall mean DVD-Devices.

1.12   "Sale or Sold" shall mean selling, leasing, or otherwise transferring ownership, possession, or use to another party, of a Royalty Product (except as scrap), either directly or through a chain of distribution, and shall be deemed to have occurred upon invoicing of a Royalty Product to a third party, or if not invoiced, when ownership, possession, or use is transferred to a third party. All Royalty Products in Licensee's inventory in the United States and its

2

territories and possessions as of the date of termination of this Agreement or expiration of the last applicable Essential Claims in the Patent Portfolio shall be deemed Sold or otherwise disposed of as of such date.

## 2.   LICENSE GRANT

2.1   Subject to the terms and provisions of this Agreement, and to Licensee making the royalty payments required under Section 4.1 and (if applicable) Section 4.7, Licensor grants to Licensee a royalty-bearing, non-exclusive, personal, non-transferable, worldwide right and license under the Essential Claims in the Patent Portfolio to test, make, have made, use, import, export, distribute, offer for sale, sell, lease, and/or otherwise dispose of Royalty Products Sold by Licensee in, or for, the United States and its territories and possessions, but this right and license only extends to the implementation of the DVD-Specifications in Royalty Products and no right or license is granted under any claim in the Patent Portfolio for a purpose other than the implementation of the DVD-Specifications in Royalty Products.

2.2   Subject to the terms and provisions of this Agreement, and to Licensee making the royalty payments required under Section 4.1 and (if applicable) Section 4.7, Licensor grants to Licensee the right to extend to its direct and indirect distributors, suppliers, dealers, and customers its right, under the Essential Claims in the Patent Portfolio, to test, make, have made, use, import, export, distribute, offer for sale, sell, lease, and/or otherwise dispose of Royalty Products Sold by Licensee in, or for, the United States and its territories and possessions, but this right and license only extends to the implementation of the DVD-Specifications in Royalty Products and no right or license is granted under any claim in the Patent Portfolio for a purpose other than the implementation of the DVD-Specifications in Royalty Products.

2.3   Subject to Licensee making the royalty payment required under Section 4.2 to Licensor, Licensor releases and forever discharges Licensee (and its direct and indirect distributors, suppliers, dealers and customers) from any and all claims, liens, demands, causes of action, obligations, losses, damages, and liabilities, known or unknown, suspected or unsuspected, liquidated or unliquidated, fixed or contingent, that it has had in the past or now has or may have in the future under any of the Essential Claims in the Patent Portfolio based on or arising out of Royalty Products Sold, prior to and including September 30, 2007, by Licensee in, or for, the United States and its territories and possessions, but this release and discharge only extends to the implementation of the DVD-Specifications in Royalty Products and no release or discharge is granted under any claim in the Patent Portfolio for a purpose other than the implementation of the DVD-Specifications in Royalty Products.

2.4   Subject to the terms and provisions of this Agreement, and to Licensee making the royalty payment required under Section 4.1 and (if applicable) Section 4.7 and during the term of the life of this Agreement, Licensor further represents, covenants and agrees that it will not bring suit or otherwise assert a claim for infringement under any Essential Claims in the Patent Portfolio against Licensee (or its direct and indirect distributors, suppliers, dealers or customers) before any court or administrative agency in any country of the world based on or arising out of Royalty Products Sold by Licensee in, or for, the United States and its territories and possessions, but this representation, covenant and agreement only applies with respect to the implementation of the DVD-Specifications in Royalty Products and no representation, covenant or agreement is made under any claim in the Patent Portfolio for a purpose other than the implementation of the DVD-Specifications in Royalty Products.

2.5    The release and covenant not to sue provided in Sections 2.3 and 2.4, as well as any other releases or covenants not to sue set out in this Agreement, shall bind any assignee or other person to whom Essential Claims in the Patent Portfolio, or any interest therein, may be conveyed.

2.6    Licensor grants to Licensee the right to sublicense to an Affiliate of Licensee the rights granted to Licensee under this Agreement; provided that the Affiliate is bound by the terms and provisions of this Agreement as if it were named in the place of Licensee; and provided that the Affiliate shall pay and account, directly or through Licensee, to the Licensor the royalties payable under this Agreement as a result of the activities of the Affiliate as if it were named in the place of Licensee.   Any rights granted to an Affiliate shall terminate automatically and without notice on the date such Affiliate ceases to be an Affiliate; provided, however, that such termination shall not affect the rights granted to the Affiliate for acts occurring prior to the effective date of such termination. Upon written request from Licensor as to whether a particular entity or entities is an Affiliate, Licensee will answer such request in writing within thirty (30) Days from receipt of the request.

2.7    The rights, grants, covenants, and terms of Sections 2.1, 2.2, 2.4, 4.1, 4.2, and 4.7 shall not apply to Royalty Products Sold by Licensee to a third party after Licensee was notified by Licensor that such third party has or had, directly or through others, asserted in any judicial proceeding or document, at any time during the term of this Agreement, that any of the Essential Claims in the Patent Portfolio is invalid and/or not infringed.

2.8    The rights, grants, covenants, and terms of Sections 2.1, 2.2, 2.3, 2.4, 4.1, 4.2, and 4.7 shall not apply to Royalty Products Sold by Licensee to a third party for sale under a brand not owned or controlled by Licensee unless: (i) such third party has executed with Licensor a DVD-Device License Agreement; (ii) such third party is in full compliance with said DVD-Device License Agreement; and (iii) royalty payments are made, under Sections 4.1, 4.2, and (if applicable) Section 4.7, to Licensor for every Royalty Product Sold by such third party in, or for, the United States and its territories and possessions.

## 3.    LIMITATIONS ON SCOPE OF LICENSE GRANT

3.1    DVD-Videos. Any license grant or other authorization that may be provided by Licensor to Licensee under this Agreement or to a third party does not provide, directly, by implication, or otherwise, any license grant, or authorization to Licensee to make, have made, use, import, export, distribute, offer for sale, sell, rent, or otherwise dispose of DVD-Videos; and/or to make, have made, test, use, import, export, distribute, offer for sale, sell or lease, or otherwise dispose of equipment used to produce or manufacture DVD-Videos.

3.2    DVD-Devices By Implication.  Any license grant or other authorization by Licensor to any third party for the production, or manufacture or sale of DVD-Videos, or for the manufacture, use or sale of equipment used to create DVD-Videos, will not by implication or otherwise operate to authorize or license Licensee to make, have made, test, use, import, export, distribute, offer for sale, sell, lease or otherwise dispose of any DVD-Device.

3.3    CustomPlay Functions and Patents. Any license grant or other authorization that may be provided by Licensor to Licensee under this Agreement does not provide, directly, by implication, or otherwise, any license grant, authorization, or option to Licensee to, either directly or indirectly, make, have made, test, use, import, export, distribute, offer for sale, offer as a subscription, sell, lease, dispose, implement, or otherwise cause the utilization,

4

separately and/or in products, of i) software, video segment information, and/or navigation data not required by the DVD-Specifications; ii) software, video segment information, and/or navigation data distributed separate from a DVD; and/or iii) the subject matter as is, for example, called for in the claims of United States Patent Number 6,067,401 (said software, video segment information, navigation data, and/or subject matter referred to as the "CustomPlay Functions"). No license grant or authorization is provided hereunder by Licensor under United States Patent Number 6,067,401 and any reissued United States Patents of said patent (the "CustomPlay Patents"). The rights, grants, covenants, and terms of Sections 2.1, 2.2, 2.3, 2.4, 4.1, and 4.2 shall not apply to, and this Agreement does not provide, directly, by implication, or otherwise, any license grant or authorization for, DVD-Devices that either (i) directly or indirectly, make, test, use, distribute, dispose, implement, or otherwise utilize or cause the utilization of any of the CustomPlay Functions and/or (ii) infringe the CustomPlay Patents, unless a separate written agreement between Licensor and Licensee explicitly licenses the CustomPlay Functions in such DVD-Devices.

3.4     Excluded Special Features. Any license grant or other authorization that may be provided by Licensor to Licensee under this Agreement, or to a third party, does not provide directly, by implication, or otherwise, any license grant or authorization to Licensee or to a third party to: i) make, have made, test, use, import, export, distribute, offer for sale, sell, lease or otherwise dispose of any of the Excluded Special Features; or ii) make, have made, test, use, import, export, distribute, offer for sale, sell, lease or otherwise dispose of DVD-Devices containing or utilizing any of the Excluded Special Features.

## 4.     ROYALTIES

4.1     In consideration for the licenses, covenants not to sue, and other rights granted by Licensor to Licensee under this Agreement relative to Royalty Products Sold by Licensee in, or for, the United States and its territories and possessions after September 30, 2007, Licensee agrees to pay Licensor a continuing royalty throughout the term of this Agreement equal to twenty-five United States Cents ($0.25 USD) (the "Settlement Rate") for each such Royalty Product.

4.2     In consideration for the releases, covenants not to sue and other rights granted by Licensor to Licensee under this Agreement relative to Royalty Products Sold by Licensee in, or for, the United States and its territories and possessions prior to and including September 30, 2007, Licensee agrees to pay Licensor an accrued royalty equal to the Settlement Rate for each such Royalty Product.

4.3     Licensee shall not be required to make payments under Sections 4.1, 4.2 and (if applicable) Section 4.7 as to Royalty Products Sold by Licensee where the royalties due have been paid to Licensor by a third party. Licensee shall not be required to make payments under Sections 4.1, 4.2 and (if applicable) Section 4.7 as to Royalty Products Sold by Licensee and subsequently found defective and returned to Licensee for full credit, and not thereafter Sold by Licensee in, or for, the United States and its territories and possessions.

4.4     The Parties understand that there should be no taxes imposed by any foreign country on the income of Licensor paid under this Agreement. However, to the extent, if any, that such taxes are imposed for any reason: (i) such taxes shall be borne by Licensor; (ii) Licensee will deduct such tax from the amounts payable to Licensor and pay such tax to the appropriate authority in the name of and on behalf of Licensor; (iii) Licensee shall send to Licensor certificates of tax payment in due course after each payment of the tax; and (iv) Licensee

agrees to submit and to file any document to the competent foreign revenue office, that is required to have such certificate issued.

4.5    Except as provided in Section 4.6, in the event that Licensor grants, after the Effective Date of this Agreement, a license for Royalty Products to another party at a rate less than the Settlement Rate set forth in Section 4.1 of this Agreement, whether or not such lower royalty rate is on terms and conditions that are different from those set forth herein, Licensor shall send written notice to Licensee specifying the lesser royalty rate and any terms and conditions that are different from those set forth herein, within sixty (60) days of the granting of such license providing for such more favorable royalty rate. Licensee shall be entitled to an amendment of this Agreement to the extent of providing for a royalty rate as favorable as that available to such other party within thirty (30) days of receipt of such written notice from Licensor by sending written notice to Licensor requesting such amendment; provided, however, Licensee also agrees to be bound by any terms and conditions under which such lesser royalty rates are made available to such other party, including any additional benefits to Licensor that may be included among the terms and conditions corresponding to such royalty rate. Any amendment made pursuant to this Section 4.5 shall be effective as of the date it is made, and such lesser royalty rate shall not be retroactively applicable in favor of Licensee, and shall not be a basis for claiming any refund of any royalty paid prior to such effective date.

4.6    Section 4.5 of this Agreement shall not apply to (a) the settlement of any litigation; (b) the determination by Licensor of back or accrued royalties owed by a licensee; (c) compromise or settlement of royalty payments owed by a licensee in financial distress; or (d) an order of a court or an administrative body.

4.7    In the event that Licensee and/or any of its Affiliates, during the term of the Agreement, directly or through others, asserts in any judicial proceeding or document that any of the Essential Claims in the Patent Portfolio is invalid and/or unenforceable and/or not necessarily infringed by implementation of the DVD-Specifications, and if in such event Licensor does not terminate this Agreement pursuant to Section 6.3(e) below, then Licensee shall pay to Licensor additional royalties equal to one United States dollar and seventy-five United States Cents ($1.75 USD) (the "Additional Royalty Rate") for each Royalty Product Sold by Licensee in, or for, the United States and its territories and possessions, in addition to the royalties due under Sections 4.1 and 4.2 above.

4.8    All royalties required to be paid to Licensor under this Agreement shall at all times while this Agreement is in effect continue to be paid to Licensor as required by Article 5 of this Agreement. Licensee shall not be entitled for any reason to, and Licensee hereby waives any claim to, a refund of any royalties paid to Licensor under this Agreement.

## 5.    PAYMENTS AND REPORTS

5.1    Royalties due under Section 4.1 of this Agreement shall be paid by Licensor in the manner and to the account specified in Section 5.4, and within thirty (30) days after the end of each quarterly period (i.e. on or before the last day of the months of January, April, July and October of each year during the term of this Agreement).

5.2    Royalties due under Section 4.2 of this Agreement shall be paid within 30 days of the Effective Date.

5.3    Royalties due under Section 4.7 of this Agreement shall be paid as follows:  (a) for any and all Royalty Products Sold prior to the date of the action giving rise to the obligation to pay additional royalties (as provided in Section 4.7 above), such additional royalties shall be paid within 30 days of such date; and (b) for Royalty Products Sold after the date of the action giving rise to the obligation to pay additional royalties (as provided in Section 4.7 above), such additional royalties shall be paid on a quarterly basis contemporaneously with the royalties paid as provided for in Section 5.1 above.

5.3    Upon termination of this Agreement, any royalty remaining due shall be paid within 30 Days of the date of termination.

5.4    All royalty payments under this Agreement shall be paid in United States currency, without deductions of taxes of any kind other than as provided for in Section 4.4, payable by wire transfer to:

> John C. Carey P.A. Trust Account For Nissim Corp.
> Citibank, F.S.B.
> 201 S. Biscayne Blvd., Suite 3100
> Miami, FL 33131 U.S.A.
> Account Number:  3200483129
> For Domestic Wire Transfers:  ABA/Routing Number 266086554
> For International Wire Transfers:  Swift Number Citius33MIA

or to such other account as may be instructed in writing by Licensor.

5.5    All royalty payments which are not made on the due date specified in this Agreement shall accrue interest at the rate of two percent (2%) per month.

5.6    A royalty report shall be submitted by Licensee prior to, or no later than contemporaneously with, the payment of each royalty required to be paid under this Agreement.  All such royalty reports (a) shall be in writing; (b) shall be certified as to their correctness by Licensee's representative responsible for accounting such on Licensee's behalf in the normal course of Licensee's business; (c) shall set forth with respect to the preceding quarterly time period (or in the case of reporting the accrued royalty as provided for in Section 4.2 above, the time period prior to and including September 30, 2007) all of the information (as applicable) called for in the form of royalty report attached to this Agreement; and (d) shall be sent via electronic mail, regular mail, facsimile or courier, addressed to:

> John C. Carey, Esq.
> Carey, Rodriguez, Greenberg & Paul LLP
> 1395 Brickell Avenue, Suite 700
> Miami, Florida 33131 U.S.A.
> Telephone:  (305) 372-7474
> Facsimile:  (305) 372-7474
> Email:  jcarey@crgplaw.com

or to such other address as may be instructed in writing by Licensor.

5.7    Licensor shall maintain the royalty reports provided by Licensee under this Agreement as "Confidential Information" in accordance with Article 9 of this Agreement.

5.8     Licensee shall keep sales records of all Royalty Products Sold by Licensee during the term of this Agreement. These sales records shall be of sufficient detail to permit verification in accordance with the accuracy and completeness of the information and the royalties required to be paid and reported under this Agreement. Licensee shall keep such records for at least five (5) years after each due date for royalty payments under this Agreement.

5.9     Licensor shall have the right, during reasonable business hours and at the reasonable convenience of Licensee, to have the correctness of any royalty report and payment of Licensee audited, at Licensor's expense, by an auditor selected by Licensor, and reasonably acceptable to Licensee. The auditor shall examine Licensee's records only on matters pertinent to this Agreement. No more than one such audit shall be performed per year, unless Licensee has underreported as provided in the following sentence. In the event it is determined by the auditor, at any time, that Licensee has underreported in an amount in excess of five percent (5%) of the royalties properly due with respect to one or more royalty reports, then Licensee, in addition to any other remedy provided Licensor by law or by this Agreement, agrees and is bound to:

(a)     Reimburse Licensor's full cost and expense associated with the audit; and

(b)     Pay Licensor an amount equal to one hundred and twenty-five percent (125%) of the amount that Licensee has failed to report or pay, along with interest at the rate of two percent (2%) per month calculated from the date each royalty accrued to the date of payment under this Section.

Any payments due under this Section shall be due and payable within thirty (30) Days following notice from Licensor of such failure, breach or default.

5.10    In the event applicable exchange control regulations shall prevent remittance of United States currency payment hereunder by Licensee, Licensee agrees, at Licensor's option and in accordance with the requirement to make payments without deductions of taxes of any kind other than as provided for in Section 4.4, to deposit an equivalent amount in a currency as designated by Licensor, in a bank designated by Licensor for the account of Licensor, such equivalent amounts to be calculated using currency tables published in the Wall Street Journal.

## 6.     TERM AND TERMINATION

6.1     This Agreement shall continue in full force and effect, unless sooner terminated by specific provisions in this Agreement, until the expiration date of the last remaining of the Essential Claims in the Patent Portfolio, which shall be no later than January 11, 2013, or until a final decree of invalidity from which no appeal or other judicial recourse can be, or is, taken of the last remaining of the Essential Claims in the Patent Portfolio; or until a final decree of non-infringement in favor of Licensee from which no appeal or other judicial recourse can be, or is, taken of the last remaining of the Essential Claims in the Patent Portfolio.

6.2     If Licensee ceases all Sales of DVD-Devices and has no intention to resume such Sales of DVD-Devices for a period of at least one year, Licensee may terminate this Agreement upon sixty (60) days written notice to Licensor.

6.3     Licensor may terminate this Agreement forthwith upon written notice to Licensee if:

8

(a)   Licensee remains in default in making any payment or supplying a royalty report as required by this Agreement or fails to comply with any other provision for a period of thirty (30) Days, in each case after written notice of such default or failure is given by Licensor to Licensee. If such default or failure is not cured within 30 days of such notice, the termination shall be effective as of the date of notice of termination given by Licensor;

(b)   Licensee fails to timely make a payment or supply a royalty report required by this Agreement three or more times in any consecutive twelve-month period. In such event, without regard to whether notice of such default or failure is given by Licensor to Licensee, the termination shall be effective as of the date of notice of termination given by Licensor;

(c)   Licensee shall make an assignment for the benefit of creditors, or any order for the compulsory liquidation of Licensee shall be made by any court. In such event, the termination shall be effective as of the date of notice of termination given by Licensor;

(d)   Licensee shall have (i) willfully violated any material provision of this Agreement; (ii) concealed from Licensor any failure to comply with this Agreement including, but not limited to, the understatement of royalties payable; (iii) expressly refused to timely pay royalties; and/or (iv) acted in bad faith in breaching any material provision of this Agreement. In such an event, the termination shall be effective as of the date of notice of termination given by Licensor;

(e)   Licensee and/or any of its Affiliates have asserted in any judicial proceeding or document that any product made, used or sold by Licensor and/or any of its Affiliates infringes any patents that are necessarily infringed when implementing the DVD-Specifications or claiming technologies for which there is no realistic alternative in implementing the DVD-Specifications, and Licensee and/or any of its Affiliates have refused to grant Licensor and/or any of its Affiliates a license and release upon fair, reasonable, and non-discriminatory terms and provisions under such patents. In such an event, the termination shall be effective as of the date of notice of termination given by Licensor; and/or

(f)   Notwithstanding Section 4.7 of this Agreement, Licensee and/or any of its Affiliates, during the term of the Agreement, directly or through others, assert in any judicial proceeding or document that any of the Essential Claims in the Patent Portfolio is invalid and/or unenforceable and/or not necessarily infringed by implementation of the DVD-Specifications. In such an event, the termination shall be effective as of the date of notice of termination given by Licensor

6.4   Any termination of this Agreement shall .not relieve Licensee of its liability for any payments accrued or owing prior to the effective date of such termination, or for any payments on Royalty Products manufactured by Licensee, in whole or in part, and located in the United States and its territories and possessions, prior to the effective date of such termination and Sold after the termination date.

9

## 7.   ASSIGNMENTS

7.1   This Agreement may be assigned by Licensor provided that the assignment does not operate to terminate, impair or in any way change any obligations or rights that Licensor currently has under this Agreement, or any of the obligations or rights that Licensee would have had, if the assignment had not occurred.   In the event the assignment is to a competitor of Licensee, Licensor will continue to receive Royalty Reports made by Licensee on a confidential basis and will not reveal the contents of the Royalty Reports to the assignee.

7.2   This Agreement shall inure to the benefit of, and be binding upon, the successors and assigns of the Parties, but no purported assignment or transfer by Licensee of this Agreement or any part thereof shall have any force or validity whatsoever unless and until approved in writing by Licensor, except an assignment to a direct or indirect wholly-owned subsidiary of Licensee, or to a buyer of all or substantially all of an entire business unit or product line of Licensee to which this license pertains.  However, any purported conveyance or any attempt by Licensee to confer or extend the benefits and privileges of this Agreement upon or to an entity shall be void and ineffective if that entity: (i) shall have, directly or indirectly, rejected or declined to accept a license from Licensor upon like, similar or more favorable terms as embodied herein; and/or (ii) directly or through others, asserted in any judicial proceeding or document that any of the Essential Claims in the Patent Portfolio is invalid and/or unenforceable and/or not necessarily infringed by implementation of the DVD-Specifications.

## 8.   COVENANTS, REPRESENTATIONS AND WARRANTIES

8.1   Licensor warrants and covenants that:  (i) the Patent Portfolio includes all patents owned by Licensor having claims that are necessarily infringed by implementation of the DVD-Specifications; (ii) if during the term of this Agreement Licensor acquires additional United States Patent(s) having Essential Claim(s), the Patent Portfolio will be supplemented to include such additional United States Patent(s) without the payment by Licensee of any royalties other than those required to be paid under this Agreement; (iii) Licensor has the entire right, title and interest in and to the Essential Claims in the Patent Portfolio;  (iv) Licensor has the right and authority to enter into this Agreement; (v) Licensor does not own or control any foreign issued patents or foreign pending patent applications; and (vi) there are no liens, conveyances, mortgages, assignments, encumbrances or other agreements to which Licensor is a party or by which it is bound, that would prevent or impair the full exercise of all substantive rights granted to Licensee by Licensor pursuant to the terms and provisions of this Agreement.

8.2   Licensee acknowledges the validity and enforceability of the Essential Claims in the Patent Portfolio.  Licensee agrees not to, directly or indirectly, encourage, initiate, assist others, or cooperate with any activity that may result in an attack on the validity or enforceability of, or an effort to void, the Essential Claims in the Patent Portfolio; provided, however, that Licensee may respond to subpoenas or other government process.

8.3   Licensor makes no representation or warranty that Royalty Products will not infringe, directly, contributorily or by inducement under the laws of the United States or any foreign country, any patent or other intellectual property right of a third party.

8.4   Licensee represents and warrants that Licensee assumes responsibility for obtaining all necessary official governmental approval, validation, and/or consent from the appropriate governmental authorities for the performance of this Agreement and for remittance of payment pursuant hereto and for registering or recording this Agreement as required; provided, however, that Licensee shall use its best efforts to provide that Licensor shall have the right to participate or be represented in any proceeding, hearing, negotiation or the like with governmental authorities relating to such approval, validation and/or consent.

8.5   Licensee and its Affiliates shall, upon request, grant to Licensor and/or its Affiliates a non-exclusive license to and release from any and all claims of infringement of any patents that are necessarily infringed when implementing the DVD-Specifications or claiming technologies for which there is no realistic alternative in implementing the DVD-Specifications and with respect to which Licensee has or may in the future obtain rights or controls, directly or indirectly, to grant such a license and release. Any such licenses and release shall be granted upon fair, reasonable, and non-discriminatory terms and provisions.

8.6   Each Party represents and warrants that in executing this Agreement, other than the promises, warranties and representations expressly made in this Agreement, it does not rely on any promises, inducements, or representations made by any Party or third party with respect to this Agreement or any other business dealings with any Party or third party, now or in the future.

8.7   Each Party represents and warrants that it is not presently the subject of a voluntary or involuntary petition in bankruptcy or the equivalent thereof, is not presently contemplating filing any such voluntary petition, and does not presently have reason to believe that such an involuntary petition will be filed against it.

8.8   Other than the express warranties of this Article, there are no other warranties, express or implied.

9.    **CONFIDENTIAL INFORMATION**

9.1   For a period of five (5) years as measured from the first date of disclosure of Confidential Information pursuant to this Agreement, Licensor agrees to use reasonable care and discretion, at least commensurate with that degree of reasonable care it uses to protect similar information of its own, to avoid disclosure, publication, or dissemination of Confidential Information, outside of those employees, attorneys or consultants of Licensor, and independent public accountants selected by Licensor pursuant to Section 5.6, who have a need to know Confidential Information, and are bound by the terms of this Article to keep Confidential Information in confidence.

9.2   Disclosure by Licensor of Confidential Information under Section 9.1 of this Agreement shall be permitted in the following circumstances; provided, that Licensor shall have first given reasonable notice to Licensee that such disclosure is to be made:

   (a)   in response to an order of a court, government or governmental body;

   (b)   otherwise as required by law; or

11

(c)    to auditors selected in accordance with Section 5.6 who agree in writing to maintain Confidential Information in confidence.

9.3    Notwithstanding any other provisions of this Agreement, the obligations specified in Section 9.1 of this Agreement will not apply to any Confidential Information that:

(a)    is or becomes publicly available without breach of this Agreement;

(b)    is released for disclosure by written consent of Licensee;

(c)    can be shown by written documentation to have already been in Licensor's possession at the time of its receipt from Licensee; or

(d)    is disclosed to Licensor by a third party without Licensor's knowledge of any breach of any obligation or confidentiality owed to Licensee.

## 10.   MISCELLANEOUS

10.1    All notices to, demands, consents, and communications that any Party may desire to give to the other, and/or may be required under this Agreement, must be in writing. The notice shall be effective upon receipt in the United States after having been sent by registered or certified mail, or a reputable overnight delivery service or courier, or sent by facsimile and electronic mail transmission; and shall be effective upon receipt outside the United States after having been delivered prepaid to a reputable international delivery service or courier, or sent by facsimile and electronic mail transmission; and addressed to the address designated below:

For notice to Licensor:

John C. Carey, Esq.
Carey, Rodriguez, Greenberg & Paul LLP
1395 Brickell Avenue, Suite 700
Miami, Florida 33131 USA
Tel: (305) 372-7474
Fax: (305) 372-7475
E-mail: jcarey@crgplaw.com

For notice to Licensee:

Name:   _____
Address: _____
          _____
          _____
Tel:      _____
Fax:     _____
E-Mail:  _____

or to such address that the Party to whom notices are to be sent may from time to time designate in writing.

12

10.2   Licensee hereby designates the following agent in the United States for service of any summons, complaint or other process in connection with any litigation arising out of this Agreement and Licensee agrees and certifies that such agent shall have full authority to accept the same on behalf of Licensee:

Name: _____

Address: _____

_____

_____

Tel.: _____

Fax: _____

E-Mail: _____

10.3   No failure or delay to act upon any default or to exercise any right, power or remedy under this Agreement will operate as a waiver of any such default, right, power or remedy.

10.4   This Agreement constitutes the entire understanding of the Parties with respect to its subject matter and supersedes all prior oral or written negotiations, agreements and understandings. This Agreement may not be modified or amended except in writing duly signed by authorized persons on behalf of the Parties.

10.5   The validity, construction, interpretation and performance of this Agreement, and any disputes or legal actions arising under or from this Agreement, shall be governed by the laws and regulations of the United States of America as to patent law, and the State of Florida as applied to contracts.

10.6   Any dispute arising under or relating to this Agreement or any dispute arising with respect to or related to the subject matter of the Essential Claims in the Patent Portfolio, which cannot be resolved by negotiation in good faith between the parties hereto, shall be resolved by an action brought in, and the Parties and their Affiliates who have agreed to be bound by this Agreement consent to the exclusive jurisdiction and venue of, a federal or state court located in the State of Florida, U.S.A. Without regard to those laws relating to conflict of laws, the parties to this agreement hereby submit to the exclusive jurisdiction and venue of the federal and state courts located in the State of Florida, U.S.A. in connection with any dispute arising out of or relating to this Agreement.

10.7   Each of the terms and provisions of this Agreement is material. Without such terms and provisions the Parties would not have entered into this Agreement. If any term or provision of this Agreement is, becomes, or is deemed invalid, illegal or unenforceable under the applicable laws or regulations of the United States or any of its jurisdictions including, for example, the State of Florida, such term or provision may be amended, by mutual agreement between Licensor and Licensee, to the extent necessary to conform to applicable laws or regulations without materially altering the intention of the parties or, if it cannot be so amended by good-faith negotiations and agreement between Licensor and Licensee then this Agreement shall be terminated sixty (60) days following such term or provision becoming or being deemed invalid, illegal or unenforceable.

10.8   This Agreement does not constitute either Party the agent of the other Party for any purpose whatsoever, nor does either Party have the right or authority to assume, create or incur any liability of any kind, express or implied, against or in the name or on behalf of the other Party.

13

10.9    The English language form of this Agreement shall control and determine its interpretation.

10.10   This Agreement shall not be effective unless an original or a facsimile copy of the signature page fully executing this Agreement is received by Licensor within twenty one (21) Days of the Effective Date; provided however, that Licensor may waive the requirements of this Section 10.10 in its sole discretion, in which case this Agreement shall be effective if executed by both Parties.

        **IN WITNESS WHEREOF**, the Parties hereto have caused this DVD-Device License Agreement to be executed by their respective duly authorized officers as of the Effective Date.


                                NISSIM CORP.


Date: _____, 2007     By:_____
                                      Max Abecassis
                                      President



                                LICENSEE:


Date: _____, 2007     By:_____
                                      NAME:_____
                                      TITLE:_____


14

**NISSIM CORP.**
**ROYALTY REPORT**

**Licensee:**

**Affiliate of Licensee**: _____

**Report For Period Beginning** _____ **And Ending** _____

I.    Royalty Calculation

Total number of Royalty Products Sold by Licensee on which a royalty is payable by Licensee:

| | |
|---|---|
| DVD-PCs | |
| DVD-Kits | |
| DVD-Gamers | |
| DVD-Transports | |
| DVD-Combos | |
| DVD-Players (Set-Top) | |
| DVD-Players (Portable) | |
| Total Royalty Products Sold | = |
| Less Returned Royalty Products Sold | ( ) |
| Net Royalty Products Sold | = |
| Royalty Rate Per Royalty Product Sold (USD) | X    $ |
| Total Royalty Due (USD) | = |

II.   Description and date of remittance: _____

_____

_____

III.   DVD-Devices purchased or otherwise obtained from a third party by Licensee where such third party is a licensee of Licensor and a royalty has been paid to Licensor by such third party and no royalty is being paid by Licensee:

| Supplier | Product Category | Brand Name | Model | No. of Units |
|---|---|---|---|---|
|  |  |  |  |  |

IV.   DVD-Devices Sold by Licensee to a third party who is a licensee of Licensor and on which no royalty is being paid by Licensee.

| Third-Party Licensee | Product Category | Brand Name | Model | No. of Units |
|---|---|---|---|---|
|  |  |  |  |  |

V.   DVD-Devices Sold by Licensee to a third party where no royalty is paid by either Licensee or the third party, and the basis for such non-payment.

| Third Party | Basis | Product Category | Brand Name | Model | No. of Units |
|---|---|---|---|---|---|
|  |  |  |  |  |  |

VI.   DVD-Devices Sold by Licensee to a third party who markets those DVD-Devices under a brand name controlled by such third party and on which a royalty is being paid by Licensee.

| Third Party | Product Category | Brand Name | Model | No. of Units |
|---|---|---|---|---|
|  |  |  |  |  |

Licensee and/or Affiliate of Licensee hereby certifies the correctness of this report.

By:_____

Title:_____

Date: _____

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No.

NISSIM CORP.,

      Plaintiff,

vs.

TARGET CORPORATION,

      Defendant.
_____/

## COMPLAINT FOR PATENT INFRINGEMENT

    Plaintiff Nissim Corp., by and through its undersigned counsel, hereby sues Target Corporation for patent infringement, and for its Complaint alleges as follows:

### THE PARTIES

    1.    Plaintiff Nissim Corp. ("Nissim") is a corporation organized and existing under the laws of the state of Florida with its principal place of business in Florida.

    2.    Defendant Target Corporation ("Target") is a corporation organized and existing under the laws of the state of Minnesota with its principal place of business in Minnesota.

### JURISDICTION AND VENUE

    3.    This Court has federal question jurisdiction of this action under 28 U.S.C. §§ 1331 and 1338(a) because Nissim seeks relief under the Patent Act, 35 U.S.C. § 271 *et seq.*, including remedies for infringement of United States Patents owned by Nissim.

    4.    Target is subject to general and specific personal jurisdiction in this state under Florida Statutes § 48.193 because Target has transacted business in this state, contracted to supply services or products in this state, and caused tortious injury in this state.

5.     Venue is proper pursuant to 28 U.S.C. §§ 1391 and 1400(b) because a substantial part of the events giving rise to these claims occurred in this judicial district, because Nissim has suffered injury in this district, and because Target resides in this district under the patent venue statute by having committed acts of patent infringement in this district.

## COUNT I – INFRINGEMENT OF U.S. PATENT 5,434,678

6     Nissim repeats and realleges each and all of the allegations contained in paragraphs 1 through 5 above as though fully set forth herein.

7.     Nissim is the owner of United States Patent 5,434,678 ("the '678 patent"), entitled "Seamless Transmission Of Non-Sequential Video Segments," which was duly and lawfully issued on July 18, 1995 by the United States Patent and Trademark Office.  The '678 patent issued from an application filed with the United States Patent and Trademark Office on January 11, 1993, and is now, and has been at all times since its date of issue, valid and enforceable.  A true and correct copy of the '678 patent is attached hereto as Exhibit 1.

8.     Target directly and/or indirectly infringes, literally or under the doctrine of equivalents, one or more claims of the '678 patent, by selling and offer for sale DVD players, portable DVD players, DVD home theater systems, TV/DVD combination systems, DVD enabled notebook computers, and DVD enabled personal computers through its United States retail outlets and/or through the Internet.

9.     Target's acts of infringement have been willful, intentional, and with full knowledge and in conscious disregard of Nissim's rights under the '678 patent.

10.     Target will continue to infringe in the future unless enjoined by the Court.

2

11.    Nissim has been damaged by Target's infringement of the '678 patent in an amount to be proven at trial.

### COUNT II – INFRINGEMENT OF U.S. PATENT 5,589,945

12.    Nissim repeats and realleges each and all of the allegations contained in paragraphs 1 through 5 above as though fully set forth herein.

13.    Nissim is the owner of United States Patent 5,589,945 ("the '945 patent"), entitled "Computer-Themed Playing System," which was duly and lawfully issued on December 31, 1996 by the United States Patent and Trademark Office. The '945 patent issued from an application filed with the United States Patent and Trademark Office on September 13, 1994, which claims priority from a parent application originally filed on January 11, 1993 and which issued as United States Patent 5,434,678, and which is now, and has been at all times since its date of issue, valid and enforceable. A true and correct copy of the '945 patent is attached hereto as Exhibit 2.

13.    Target directly and/or indirectly infringes, literally or under the doctrine of equivalents, one or more claims of the '945 patent, by selling and offer for sale DVD players, portable DVD players, DVD home theater systems, TV/DVD combination systems, DVD enabled notebook computers, and DVD enabled personal computers through its United States retail outlets and/or through the Internet.

14.    Target's acts of infringement have been willful, intentional, and with full knowledge and in conscious disregard of Nissim's rights under the '945 patent.

15.    Target will continue to infringe in the future unless enjoined by the Court.

3

16.     Nissim has been damaged by Target's infringement of the '945 patent in an amount to be proven at trial.

## COUNT III– INFRINGEMENT OF U.S. PATENT 5,913,013

17.     Nissim repeats and realleges each and all of the allegations contained in paragraphs 1 through 5 above as though fully set forth herein.

18.     Nissim is the owner of United States Patent 5,913,013 ("the '013 patent"), entitled "Seamless Transmission Of Non-Sequential Video Segments," which was duly and lawfully issued on June 15, 1999 by the United States Patent and Trademark Office. The '013 patent issued from an application filed with the United States Patent and Trademark Office on December 15, 1997, claims priority from a parent application which was originally filed on January 11, 1993 and which issued as United States Patent 5,434,678, and which is now, and has been at all times since its date of issue, valid and enforceable. A true and correct copy of the '013 patent is attached hereto as Exhibit 3.

19.     Target directly and/or indirectly infringes, literally or under the doctrine of equivalents, one or more claims of the '013 patent, by selling and offer for sale DVD players, portable DVD players, DVD home theater systems, TV/DVD combination systems, DVD enabled notebook computers, and DVD enabled personal computers through its United States retail outlets and/or through the Internet.

20.     Target's acts of infringement have been willful, intentional, and with full knowledge and in conscious disregard of Nissim's rights under the '013 patent.

21.     Target will continue to infringe in the future unless enjoined by the Court.

4

22.    Nissim has been damaged by Target's infringement of the '013 patent in an amount to be proven at trial.

### COUNT IV –INFRINGEMENT OF U.S. PATENT 6,151,444

23.    Nissim repeats and realleges each and all of the allegations contained in paragraphs 1 through 5 above as though fully set forth herein.

24.    Nissim is the owner of United States Patent 6,151,444 ("the '444 patent"), entitled "Motion Picture Including Within A Duplication Of Frames," which was duly and lawfully issued on November 21, 2000 by the United States Patent and Trademark Office. The '444 patent issued from an application filed with the United States Patent and Trademark Office on June 30, 1998, claims priority from a parent application which was originally filed on January 11, 1993 and which issued as United States Patent 5,434,678, and which is now, and has been at all times since its date of issue, valid and enforceable. A true and correct copy of the '444 patent is attached hereto as Exhibit 4.

25.    Target directly and/or indirectly infringes, literally or under the doctrine of equivalents, one or more claims of the '444 patent, by selling and offer for sale DVD players, portable DVD players, DVD home theater systems, TV/DVD combination systems, DVD enabled notebook computers, and DVD enabled personal computers through its United States retail outlets and/or through the Internet.

26.    Target's acts of infringement have been willful, intentional, and with full knowledge and in conscious disregard of Nissim's rights under the '444 patent.

27.    Target will continue to infringe in the future unless enjoined by the Court.

28.     Nissim has been damaged by Target's infringement of the '444 patent in an amount to be proven at trial.

## COUNT V – INFRINGEMENT OF U.S. PATENT 6,208,805

29.     Nissim repeats and realleges each and all of the allegations contained in paragraphs 1 through 23 above as though fully set forth herein.

30.     Nissim is the owner of United States Patent 6,208,805 ("the '805 patent"), entitled "Inhibiting A Control Function From Interfering With A Playing Of A Video," which was duly and lawfully issued on March 27, 2001 by the United States Patent and Trademark Office. The '805 patent issued from an application filed with the United States Patent and Trademark Office on February 7, 1992, and which is now, and has been at all times since its date of issue, valid and enforceable. A true and correct copy of the '805 patent is attached hereto as Exhibit 5.

31.     Target directly and/or indirectly infringes, literally or under the doctrine of equivalents, one or more claims of the '805 patent, by selling and offer for sale DVD players, portable DVD players, DVD home theater systems, TV/DVD combination systems, DVD enabled notebook computers, and DVD enabled personal computers through its United States retail outlets and/or through the Internet.

32.     Target's acts of infringement have been willful, intentional, and with full knowledge and in conscious disregard of Nissim's rights under the '805 patent.

33.     Target will continue to infringe in the future unless enjoined by the Court.

34.     Nissim has been damaged by Target's infringement of the '805 patent in an amount to be proven at trial.

6

<u>COUNT VI – INFRINGEMENT OF U.S. PATENT 6,463,207</u>

35.     Nissim repeats and realleges each and all of the allegations contained in paragraphs 1 through 23 above as though fully set forth herein.

36.     Nissim is the owner of United States Patent 6,643,207 ("the '207 patent"), entitled "Playing A Variable-Content-Video Having A User Interface," which was duly and lawfully issued on October 8, 2002 by the United States Patent and Trademark Office. The '207 patent issued from an application filed with the United States Patent and Trademark Office on December 12, 1997, claims priority from a parent application which was originally filed on February 7, 1992 and which issued as United States Patent 6,208,805, and which is now, and has been at all times since its date of issue, valid and enforceable. A true and correct copy of the '207 patent is attached hereto as Exhibit 6.

37.     Target directly and/or indirectly infringes, literally or under the doctrine of equivalents, one or more claims of the '207 patent, by selling and offer for sale DVD players, portable DVD players, DVD home theater systems, TV/DVD combination systems, DVD enabled notebook computers, and DVD enabled personal computers through its United States retail outlets and/or through the Internet.

38.     Target's acts of infringement have been willful, intentional, and with full knowledge and in conscious disregard of Nissim's rights under the '207 patent.

39.     Target will continue to infringe in the future unless enjoined by the Court.

40.     Nissim has been damaged by Target's infringement of the '207 patent in an amount to be proven at trial.

7

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Nissim Corp. prays:

A.      That the Court finds Defendant Target Corporation liable for infringement of the asserted Nissim Patents.

B.      That Defendant Target Corporation, and all of its officers, directors, agents, servants, employees, successors, and assigns, and all persons acting in concert or in active participation with it, be preliminarily and permanently enjoined and restrained from infringing any of the asserted Nissim Patents.

C.      That the Court awards Nissim compensatory damages against Defendant Target Corporation pursuant to 35 U.S.C. § 284.

D.      That based on the willful nature of the infringement by Defendant Target Corporation, the Court enters judgment three (3) times such compensatory amount pursuant to 35 U.S.C. § 284.

E.      That the Court finds this case exceptional within the meaning of 35 U.S.C. § 285 and awards Nissim its reasonable attorneys' fees incurred in this action.

F.      That the Court awards Nissim its taxable costs, disbursements, and pre-judgment and post-judgment interest.

G.      For such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Nissim Corp. demands trial by jury on all issues so triable.

Dated:  November ___, 2007                    Respectfully submitted,

 

 

_____

John C. Carey
Florida Bar No. 78379
CAREY,  RODRIGUEZ,  GREENBERG  &
PAUL, LLP
1395 Brickell Avenue, Suite 700
Miami, Florida 33131
Telephone:  (305) 372-7474
Facsimile:  (305) 372-7475
E-mail:  jcarey@crgplaw.com

*Counsel for Plaintiff Nissim Corp.*

9

# Baker Hostetler

Baker&Hostetler LLP

SunTrust Center, Suite 2300
200 South Orange Avenue
Post Office Box 112
Orlando, FL 32802-0112

T 407.649.4000
F 407.841.0168
www.bakerlaw.com

David S. Wood
direct dial: 407.649.4084
dwood@bakerlaw.com

**VIA E-MAIL AND U.S. MAIL**

November 1, 2007

Karl G. Schwappach, Esq.
Faegre & Benson LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901

### *Re: ClearPlay, Inc., DVD Player CP007-USB*

Dear Mr. Schwappach:

I am in receipt of a copy of that certain October 19, 2007 demand letter addressed to your attention, as counsel to Target Corporation ("Target") from John Carey, counsel to Nissim Corp. ("Nissim").

You have asked for an update on the dispute currently pending between Nissim and ClearPlay, Inc. ("ClearPlay') as well as additional comment on the demand letter you recently received from Mr. Carey.

### Nissim Corp. v. ClearPlay Inc. Case No. 04-21140-CIV-HUCK/SIMONTON, in the United States District Court for the Southern District of Florida

As you are aware, Nissim has filed a motion in this litigation to enforce the terms of a Settlement and License Agreement entered into by and between Nissim and ClearPlay as of November 23, 2005 (the "License Agreement"). By this motion, Nissim alleges that ClearPlay is not in compliance with certain of the terms of the License Agreement and has asked the Court to enforce the License Agreement.

Due to confidentiality provisions set forth in the License Agreement, I am unable to comment as to the exact terms of the agreement nor as to any of the alleged deficiencies in ClearPlay's performance under the agreement. However, please be advised that ClearPlay believes that it is in compliance with all of the material terms and conditions of the License Agreement and has responded in kind to the Court. Nissim's motion to enforce the License Agreement has been fully briefed by all parties, and we currently are awaiting a ruling from the Court.

Cincinnati   Cleveland   Columbus   Costa Mesa   Denver   Houston   Los Angeles   New York   Orlando   Washington, DC

090916, 000001, 501530523.1



EXHIBIT

"*G*"

PENGAD 800-631-6989

November 1, 2007
Page 2

Note, however, that ClearPlay DVD model CP0007-USB is duly licensed and has been manufactured and distributed in full compliance with the License Agreement reached by the parties. ClearPlay stands behind its product and has every legal right to market and distribute this product in the marketplace, including to your client, Target.

### Alleged unlicensed DVD-devices sold under Target's private label brand or supplied to Target by third parties

Mr. Carey's demand to Target demands written assurance from Target that Target will execute Nissim's DVD Device License Agreement ("DVD License") to cover Target's own private labeled DVD devices and require all unlicensed suppliers to similarly execute Nissim's DVD License. Execution of the DVD License by Target and/or by any of the alleged unlicensed suppliers is not within ClearPlay's control. Moreover, ClearPlay has not reviewed nor inspected the DVD devices sold under a private label brand owned or controlled by Target nor has ClearPlay reviewed nor inspected the DVD devices supplied to Target by third parties. Thus, ClearPlay is in no position to comment on whether or not these DVD devices possibly infringe upon any of the Nissim patents that are delineated in the DVD License provided to you by Mr. Carey.

To that end, patent counsel engaged by Target should carefully review the subject DVD devices sold under Target's private label brand or supplied to Target by third parties to determine whether or not these DVD devices possibly infringe upon the Nissim patents. In that light, the ClearPlay DVD player model CP007-USB has been carefully designed and manufactured to avoid the Nissim patents delineated in the DVD License and any of the essential claims in such patents as set forth in section 1.7 of the proposed DVD License. For example, a ClearPlay end-user has the ability to fast forward or otherwise interrupt playback of any portion of a DVD, such as during trailers or other material at the beginning of a DVD. Another example of a unique feature of the CP007-USB player is the onscreen seam indication during playback. This onscreen indicator augments the visibility of seams at branch points, aiding the user in interactively toggling between the different branch options during playback. As a result of these design features, the CP007-USB, as a benefit to its customers, does not implement every aspect of the DVD Specifications. As a result of this design engineering, the Nissim patents referenced in the proposed DVD License are not breached by the CP007-USB player. Moreover, as noted above, the ClearPlay player is fully licensed pursuant to the License Agreement by and between Nissim Corp. and ClearPlay.

ClearPlay is mindful of its obligations to Target as a vendor and looks forward to continuing its long term mutually beneficial relationship.

Yours very truly,

David S. Wood

cc: Lee Jarman

090916, 000001, 501530523.1

**General Information**

**Transaction Purpose:** Cancellation

**Purchase Order Type:** Blanket Order (QTY Firm)

**Purchase Order Number:** 0008-4351771-0581

**Purchase Order Date:** 10/05/2007

**Sourcing Track:** Standard

**Purchase Order Change Date:** 11/01/2007

**Vendor Number:** 1208445

**Company:** FLC

**Department Number:** 008

**Sales Requirements:** No Back Order

**FOB Related Instructions**

**Shipment Method Of Payment:** Defined By Buyer And Seller

**Location Type:** Origin (Shipping Point)

**Description:** CN

**Incoterms:** Free On Board

**Location Type:** Foreign Freight Forwarder Location

**Description:** MAERSK LOGISTICS

**Carrier Details**

**Routing Sequence:** Origin/Delivery Carrier (Any Mode)

**Location ID:** SEE LETTER OF CRE

**Company Information**

**Buying Party**

**Name:** TARGET DC 0581

**Location ID:** 0581

**Consolidator**

**Name:** MAERSK LOGISTICS

**Address:** 32/F, SHUN HING SQUARE. DI WANG, COMMERCIAL SHENNAN DONG

**City, State Zip:** SHENZHEN

**Country:** China

**Total Information**

**Total Number Of Line Items:** 0



**General Information**

**Transaction Purpose:** Cancellation

**Purchase Order Type:** Blanket Order (QTY Firm)

**Purchase Order Number:** 0008-7635866-3890

**Purchase Order Date:** 10/05/2007

**Sourcing Track:** Standard

**Purchase Order Change Date:** 11/01/2007

**Vendor Number:** 1208445

**Company:** FLC

**Department Number:** 008

**Sales Requirements:** No Back Order

**FOB Related Instructions**

**Shipment Method Of Payment:** Defined By Buyer And Seller

**Location Type:** Origin (Shipping Point)

**Description:** CN

**Incoterms:** Free On Board

**Location Type:** Foreign Freight Forwarder Location

**Description:** MAERSK LOGISTICS

**Carrier Details**

**Routing Sequence:** Origin/Delivery Carrier (Any Mode)

**Location ID:** SEE LETTER OF CRE

**Company Information**

**Buying Party**

**Name:** TARGET DC 3890

**Location ID:** 3890

**Consolidator**

**Name:** MAERSK LOGISTICS

**Address:** 32/F, SHUN HING SQUARE. DI WANG, COMMERCIAL SHENNAN DONG

**City, State Zip:** SHENZHEN

**Country:** China

.

**Total Information**

**Total Number Of Line Items: 0**



FAEGRE
&
BENSON
LLP

UNITED STATES | ENGLAND | GERMANY | CHINA

KARL G. SCHWAPPACH
KSchwappach@faegre.com
(612) 766-7773

November 2, 2007

Via e-mail
(Confirmation by U.S. Mail)

Mr. John G. Carey, Esq.
Carey, Rodriguez, Greenberg & Paul
1395 Brickell Avenue
Suite 700
Miami, FL 33131

    Re:   ClearPlay, Inc. DVD player CP007-USB
          F&B No. 355759



EXHIBIT
" I "

Dear John:

This letter is in response to your correspondence dated October 19, 2007. Your letter identifies three categories of allegedly unlicensed DVD-Devices.

Regarding the first category, Target's private labeled DVD-Devices, we note that Daewoo Electronics Corporation is currently listed on www.nissim.com as a licensee of the Nissim patents. We have no information regarding whether or not Daewoo Electronics Corporation is current in its royalty payments. Target will immediately contact its vendors of such private labeled DVD-Devices to obtain confirmation that they are licensed under the Nissim patents and that all applicable royalties have been paid. Any unlicensed vendor will be required to obtain a license from Nissim or Target will cease purchases of such devices.

Regarding the second category, DVD-Devices not carrying the Target brand, as has been Target's practice in the past, Target will contact its vendors of such DVD-Devices to obtain confirmation that they are licensed under the Nissim patents and that all applicable royalties have been paid. Any unlicensed vendor will be required to obtain a license from Nissim or Target will cease purchases of such devices.

Finally, regarding the third category, ClearPlay model CP-007-USB DVD-Device, it is our understanding that the dispute between Nissim and ClearPlay has been fully briefed and is currently awaiting the decision of the court.

Target has cooperated with Nissim for many years to obtain vendor compliance with the Nissim licensing program. At the same time, Target greatly values its vendor relationships.

John G. Carey, Esq.
November 2, 2007
Page 2

Target has received assurances that ClearPlay is in compliance with its license agreement with Nissim. If you have a court order to the contrary, please send it to us for consideration.

Notwithstanding those assurances, Target agrees to make a concession with the purpose of balancing the interests of Nissim and our vendor. Therefore, pending outcome of the current litigation, Target agrees to i) cease sales of the ClearPlay DVD-Device on www.target.com; ii) cancel any open orders with ClearPlay for this DVD-Device, and iii) not place any further orders for this DVD-Device.

Finally, we want to assure you and your client that Target is committed to respecting the intellectual property rights of third parties and it will reasonably cooperate with your client to ensure that its vendors have obtained appropriate licenses.

We will continue to work with you on this matter and will keep you updated on our progress. Please feel free to contact me to discuss this matter further.

Sincerely,

Karl G. Schwappach

cc:     Mike Kroll, Esq. – Target Brands (via email)
        David Wood, Esq. – Baker & Hostetler LLP

fb.us 2395217.02

**Target Has Agreed To Cease Sales Of ClearPlay DVD-Devices**

Boca Raton, FL – November 2, 2007 – In correspondence dated today, "Target agrees to i) cease sales of the ClearPlay DVD-Device on www.target.com; ii) cancel any open orders with ClearPlay for this DVD-Device, and iii) not place any further orders for this DVD-Device." With respect to all other devices capable of playing a DVD, Target has also confirmed that "Any unlicensed vendor will be required to obtain a license from Nissim or Target will cease purchases of such devices."
Nissim had informed Target that the ClearPlay DVD Player, model CP007-USB, and the ClearPlay Filters used by the player are not in compliance with the CustomPlay Specifications and are not covered by a Nissim license.
As in the case of an earlier infringing ClearPlay enabled DVD player, model RCA DRC232N, when Nissim immediately brought suit to stop the infringement, Thomson ceased producing the ClearPlay DVD player, and Wal-Mart ceased selling it.
Nissim is the owner of extraordinarily valuable portfolio of intellectual properties, including United States Patents that has been widely recognized by the consumer electronics industry as essential to the implementation of the DVD Specifications. Current licensees of Nissim include virtually all significant manufacturers of devices capable of playing DVDs, including Dell Products, ..P., Funai Electric Company, Ltd., Gateway Inc., Hewlett-Packard Company, Lenovo (Singapore) Pte. Ltd., LG Electronics Inc., Matsushita Electric Industrial Co., Ltd., Philips Electronics N.V., Pioneer Corporation, Sony Corporation, Thomson Multimedia SA, and Toshiba Corporation, among numerous others. Most recently, Microsoft Corporation became a direct licensee of Nissim for he Xbox 360 device.



JS 44 (Rev. 11/05)

## CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)   NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.

### I. (a) PLAINTIFFS
CLEARPLAY, INC., A UTAH CORPORATION

### DEFENDANTS
NISSIM CORP., A FLORIDA CORPORATION

**(b)** County of Residence of First Listed Plaintiff   SALT LAKE
(EXCEPT IN U.S. PLAINTIFF CASES)

07-81 CIV - HURLEY 7HOPKINS

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
DAVID S. WOOD, BAKER & HOSTETLER, LLP
200 SOUTH ORANGE AVENUE, SUITE 2300
ORLANDO, FL 32801

Attorneys (If Known)

O7cv 81170- DTKH/JMH

**(d)** Check County Where Action Arose:  ☐ MIAMI- DADE  ☐ MONROE  ☐ BROWARD  ☐ PALM BEACH  ☐ MARTIN  ☐ ST. LUCIE  ☐ INDIAN RIVER  ☐ OKEECHOBEE HIGHLANDS

### II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff
☐ 3  Federal Question (U.S. Government Not a Party)
☐ 2  U.S. Government Defendant
☑ 4  Diversity (Indicate Citizenship of Parties in Item III)

### III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☑ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☑ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 |  | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability |  | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability |  |  | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise |  |  | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General |  | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty |  |  | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other |  |  | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights |  |  | ☐ 950 Constitutionality of State Statutes |
|  | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition |  |  |  |

### V. ORIGIN (Place an "X" in One Box Only)
☑ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Re-filed- (see VI below)
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

### VI. RELATED/RE-FILED CASE(S).
(See instructions second page):
a) Re-filed Case ☐ YES ☑ NO   b) Related Cases ☑ YES ☐ NO
JUDGE PAUL HUCK   DOCKET NUMBER 04-21140

### VII. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity):
28 USC SECTION 1332(a)(1); TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS
LENGTH OF TRIAL via 5 days estimated (for both sides to try entire case)

### VIII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ 75,000.00
CHECK YES only if demanded in complaint:
JURY DEMAND: ☑ Yes ☐ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE
SIGNATURE OF ATTORNEY OF RECORD
David S. Wood
DATE 12/6/07

FOR OFFICE USE ONLY
AMOUNT 350.00   RECEIPT # 541747   IFP