UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 07-81170-CIV-HUCK/SIMONTON

CLEARPLAY, INC.,

    Plaintiff,

vs.

NISSIM CORP.,

    Defendant.
_____/

## ORDER GRANTING MOTION TO DISMISS COMPLAINT

THIS CAUSE is before the Court upon Defendant's Motion to Dismiss Complaint (D.E. #5). The Court has reviewed the Motion, Plaintiff's response, Defendant's reply, the Complaint, and all other pertinent parts of the record.

### I. FACTUAL ALLEGATIONS[1]

Plaintiff is a Utah corporation with its principal place of business in Salt Lake City, Utah. It manufactures and produces DVD players and related software and hardware. Defendant is a Florida corporation with its principal place of business in Boca Raton, Florida.

On or about December 10, 2001 Plaintiff began marketing a "filtering" computer program and membership service allowing customers to filter their DVD movies by skipping or muting certain "objectionable" content. In April 2004 Thomson, Inc. began selling an RCA brand DVD player that incorporated Plaintiff's filtering technology at Walmart and other national retailers. On May 13, 2004 Defendant sued Plaintiff in this Court alleging claims of patent infringement under the Patent Act (Title 35, U.S. Code), misappropriation of trade secrets, and breach of contract in connection with Thomson, Inc.'s sale of RCA DVD players incorporating the filtering technology. *See Nissim Corp. v. Clearplay, Inc., et al*, No. 04-21140-CIV-PCH. In its patent infringement claims, Defendant asserted that in marketing and selling the filtering program and related technologies in the form of the RCA DVD player, Plaintiff infringed on four of Defendant's U.S. patents. Defendant and

---

[1] This factual background is derived from Plaintiff's Complaint, as the factual allegations in a complaint must be taken as true when reviewing a motion to dismiss.

Plaintiff settled that case on the eve of trial, November 23, 2005, entering into a confidential settlement and licensing agreement in which Defendant granted Plaintiff a license to produce and sell a modified version of its filtering technology. *See* Compl. Ex. A.

In October 2006 the retail store Target offered Plaintiff an opportunity to place its DVD players in Target's spring 2007 "Planogram," a blueprint that designates certain locations in each Target store for the placement of the "display product and product stock." Target only modifies its Planogram on an annual basis, so being placed in Target's spring 2007 Planogram would ensure Plaintiff's products to remain in Target's electronics department from May 2007 to at least April 2008. In light of these discussions, Plaintiff invested more than $1 million into producing point of sale displays for Target stores.

In January 2007 Target placed its first order for Plaintiff's DVD players bearing the model number CP007-USB, which were compatible with Plaintiff's filtering software. *See* Compl. Ex. B. Customers who purchased these DVD players would be able to sign up for Plaintiff's filtering service, in order to filter content from DVD movies in their homes. However, without obtaining a "filter file" from Plaintiff that loads the "filtering user interface" onto the DVD player and provides filtering information for specific movie titles, these DVD players would simply play DVD movies without any filtering.

In June 2007, after learning that Plaintiff sold its DVD players to Target, Defendant sent Target a letter. *See* Compl. Ex. C. This letter alleged that Plaintiff's CP007-USB DVD players were not covered by the November 2005 license and that such products thus infringed on Defendant's patents. *Id*. Defendant stated that the DVD players did not "operate as advertised" and were qualitatively deficient, thus failing to conform to the specifications outlined in the November 2005 license agreement. *Id*. Defendant informed Target that its sale of unlicensed products would render Target itself liable as a patent infringer, and demanded that Target remove the "unlicensed" DVD players from its shelves and discontinue their sale. *Id*. Also in June 2007 Defendant published a press release on its website stating that Plaintiff was violating its intellectual property rights by selling the CP007-USB players, which were "deficient and inconsistent with the quality standard [Defendant] has established," and unlicensed. *See* Compl. Ex. D. The press release stated that "all sellers of unlicensed goods may be held liable as direct patent infringers." *Id*. Further, on June 11, 2007 Defendant filed a motion to enforce the November 2005 settlement agreement in *Nissim Corp.*

2

*v. Clearplay, Inc., et al*, No. 07-21140-CIV-PCH (*see* D.E. #442) - the parties are currently engaged in discovery before Magistrate Judge Andrea M. Simonton.

In July 2007 Plaintiff responded to Defendant's letter to Target with its own letter to Target. *See* Compl. Ex. E. This letter stated that Defendant's claims of patent infringement were incorrect, and that Plaintiff's CP007-USB DVD player was covered by a license from Defendant pursuant to their November 2005 agreement. *Id.* As of the time of this letter, Target was continuing to sell Plaintiff's DVD players. In October 2007 Defendant sent another letter to Target, again demanding that Target remove Plaintiff's "unlicensed" and "infringing" DVD players from its shelves. *See* Compl. Ex. F. Defendant further stated that unless Target pulled the DVD players Defendant would sue Target for patent infringement, and attached a draft complaint against Target seeking to recover for patent infringement under the federal Patent Act. *See id.*

On or about November 1, 2007 Plaintiff responded to this letter by again writing to Target and stating that its DVD players were covered by a valid license, and that in any case the players did not infringe on Defendant's patent rights. *See* Compl. Ex. G. The next day Target cancelled several large purchase orders for additional DVD players from Plaintiff and agreed not to place any additional orders, based on Defendant's allegations that they infringed on its patents. *See* Compl. Ex. I. On or about the same day Target stopped selling Plaintiff's DVD players on its website, www.target.com. *See id.* Further, on or about the same day, Defendant published a press release on its website stating that Target had ceased sales of Plaintiff's DVD player, and that such players were not covered by a license from Defendant. *See* Compl. Ex. J. Before Target cancelled its orders with Plaintiff and Defendant published the press release announcing such cancellation, Plaintiff had been in the process of negotiating future purchase orders with Target and other clients. On October 28, 2007 Target had physically placed a point-of-sale interactive display featuring Plaintiff's DVD player into the 2008 Planogram at Target's corporate headquarters, and had included the player in the Planogram for May 2008 through April 2009.

## II.  PROCEDURAL BACKGROUND

Plaintiff filed a two count Complaint in this Court on December 10, 2007 bringing the following Florida state law claims: Count I, tortious interference with a contractual relationship, and Count II, tortious interference with potential advantageous business relationships. Plaintiff invoked

the jurisdiction of this Court under 28 U.S.C. § 1332(a)(1), diversity jurisdiction.[2]

On January 2, 2008 Defendant filed its Motion to Dismiss both counts of the Complaint (D.E. #5). In its Motion Defendant offered two main arguments for dismissing Plaintiff's state law claims: A) that those claims are preempted by federal patent law, and B) that those claims are barred by the Noerr-Pennington doctrine. Defendant's Motion is now fully briefed and ripe for resolution.

### III. MOTION TO DISMISS STANDARD

In reviewing a motion to dismiss, all well-pleaded facts in the plaintiff's complaint and all reasonable inferences drawn from those facts must be taken as true. *Jackson v. Okaloosa County, Fla.*, 21 F.3d 1531, 1534 (11th Cir. 1994). Federal Rule of Civil Procedure 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 335 U.S. 41, 47 (1957)). Nonetheless, when on the basis of a dispositive issue of law no construction of the factual allegations will support the cause of action, dismissal of the complaint is appropriate. *Marshall County Bd. of Educ. v. Marshall County Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

### IV. ANALYSIS

One of Defendant's arguments in support of its Motion to Dismiss is that Plaintiff's state law claims of tortious interference with a contractual relationship (Count I) and tortious interference with potential advantageous business relationships (Count II) are preempted by federal patent law. Defendant claims that this is true "[a]s a result of . . . clear Federal Circuit precedent." Mot. to Dismiss, D.E. #5 at 6. In response, Plaintiff argues that the Court should not look to the law of the Federal Circuit as controlling because this case is before the Court under diversity jurisdiction, because this case could not be appealed to the Federal Circuit, and because this case does not involve a substantive "law field" assigned exclusively to the Federal Circuit. Thus, before evaluating Defendant's argument that Plaintiff's state law claims are preempted, the Court must first determine the law applicable to that inquiry.

---

[2] This case was originally assigned to U.S. District Judge Daniel T. K. Hurley, but transferred to U.S. District Judge Paul C. Huck on January 3, 2008 (*see* D.E. #6).

4

**1.      Applicable Law**

In arguing that Federal Circuit law should not apply to the question of whether its state tort claims are preempted, Plaintiff states that it brought this action under diversity jurisdiction and not patent law jurisdiction, that this case could not be appealed to the Federal Circuit, and that this case does not involve a substantial "law field" assigned exclusively to the Federal Circuit. These arguments are all related. Under 28 U.S.C. § 1338(a), federal district courts "have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks." In the case of patents, plant variety protection, and copyright cases, this jurisdiction is exclusive. The Federal Circuit has exclusive jurisdiction of appeals brought from cases where jurisdiction was based in whole or in part on section 1338, with exceptions not applicable here. 28 U.S.C. § 1295(a)(1); *see, e.g.*, *3D Sys., Inc. v. Aarotech Labs., Inc.*, 160 F.3d 1373, 1377 (Fed. Cir. 1998) ("The Federal Circuit has exclusive jurisdiction over an appeal from a district court when that court's jurisdiction is based at least in part on a claim arising under the patent laws of the United States.").

Thus, with respect to patents, "the Federal Circuit's jurisdiction is fixed with reference to that of the district court, and turns on whether the action arises under federal patent law." *Holmes Group, Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 829 (2002). According to the Supreme Court, a case "arises under" patent law where "a well-pleaded complaint establishes either that federal patent law creates the cause of action *or* that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 808-09 (1988) (emphasis added).

Where an action "arises under" patent law, the action is appealed to the Federal Circuit, and thus the law of that Circuit applies. *See, e.g.*, *Ventrassist Pty Ltd. v. Heartware, Inc.*, 377 F. Supp. 2d 1278, 1282 (S.D. Fla. 2005) (noting that because an appeal of the patent action at issue would lie with the Federal Circuit, the court "must apply the law of the Federal Circuit"); *Pfizer Inc. v. Teva Pharm. USA, Inc.*, 482 F. Supp. 2d 390, 398 (D.N.J. 2007) ("Because this action arises under the patent laws of the United States, this Court must apply the precedents of the United States Court of Appeals for the Federal Circuit, which has jurisdiction over any appeal of this judgment.") (citing 28 U.S.C. § 1295(a)) (reversed in part on other grounds, *Pfizer, Inc. v. Teva Pharm. USA, Inc.*, No.

2007-1271, 2008 WL 613118 (Fed. Cir. Mar. 7, 2008)); *Livorski Marine, Inc. v. Nordskog Pub., Inc.*, 268 F. Supp. 2d 994, 995 n.1 (N.D. Ill. 2003) ("Because this case arises under patent law, the Court must apply the substantive law of the Federal Circuit.") (citing *Vanguard Research, Inc. v. Peat, Inc.*, 304 F.3d 1249, 1254 (Fed. Cir. 2002)).

Here, the Court finds that Plaintiff's two state claims do "arise under" patent law such that an appeal would lie within the jurisdiction of the Federal Circuit, and the Federal Circuit's law should apply. Plaintiff brings two state law tort claims: tortious interference with a contractual relationship, and tortious interference with potential advantageous business relationships. Under Florida law, the elements of the "tortious interference with a contractual relationship" tort are: "(1) The existence of a contract, (2) The defendant's knowledge of the contract, (3) The defendant's intentional procurement of the contract's breach, (4) Absence of any justification or privilege, (5) Damages resulting from the breach." *McKinney-Green, Inc. v. Davis*, 606 So. 2d 393, 397-98 (Fla. 1st DCA 1992). The elements of Florida's intentional interference with potential advantageous business relationship tort are: "(1) the existence of a business relationship . . . (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship." *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 814 (Fla. 1994) (alteration in original) (quoting *Tamiami Trail Tours, Inc. v. Cotton*, 463 So. 2d 1126, 1127 (Fla. 1985)). With respect to this tort, while a "protected business relationship" need not be evidenced by an enforceable contract, "'the alleged business relationship must afford the plaintiff existing or prospective legal or contractual rights.'" *Id.* (quoting *Register v. Pierce*, 530 So. 2d 990, 993 (Fla. 1st DCA 1988)).

Both torts contain an element of *unjustified* interference. Plaintiff bases its claims on Defendant's communications with Target and also Defendant's publication of press releases on its website. In those letters and press releases Defendant claimed that Plaintiff sold and distributed DVD players which were not covered by the 2005 license and which thus infringed on Defendant's patent rights. Compl. ¶¶ 37, 43. Thus, in order to determine whether Defendant's alleged interference with Plaintiff's contractual relationship with Target and its potential business relationships with Target and other clients was "unjustified," the Court must examine whether Defendant acted to protect its valid patent rights from infringement.

This situation is similar to that of *Mikohn Gaming Corp. v. Acres Gaming, Inc.*, 165 F.3d 891 (Fed. Cir. 1998). In that case, both parties were in the business of manufacturing and selling gaming devices such as slot machines. *Id.* The defendant sent letters to the plaintiff's customers alerting them to the defendant's recently issued patent, stating that it believed some of the plaintiff's products infringed on that patent and that it intended to enforce its patent rights. *Id.* at 893-94. The plaintiff brought suit for, among other things, the Nevada state law torts of intentional interference with prospective business relations and intentional interference with existing business relations, both of which both required an element of interference without legal justification. *Id.* at 896. The court stated that "whether [the defendant's] communications were legally justified raises considerations of federal law governing the giving of notice of patent rights." *Id.* The court noted that

> [t]he only basis for this action of tortious interference with business relationships was [the defendant's] giving of notice of its patent rights and the intent to enforce them. The propriety of that notice depends on patent law and the patent issues to which the notice pertains. National uniformity, in confluence with the national scope of the patent grant and the general federal exclusivity in patent causes, require that determination of the propriety of [the defendant's] actions in giving notice of its patent rights is governed by federal statute and precedent and is not a matter of state tort law.

*Id.*

Another instructive case is *Additive Controls & Measurement Systems, Inc. v. Flowdata, Inc.*, 986 F.2d 476 (Fed. Cir. 1993). There, the plaintiff alleged a Texas state law business disparagement claim against the defendant. The elements of the state law tort included publication by the defendant of the disparaging words, falsity, malice, lack of privilege, and special damages. *Id.* at 478 n.2. The defendant's allegedly disparaging statement in that case was its accusation that the plaintiff infringed on its patent, and to prove the "falsity" element of the tort, the plaintiff would have had to show its product *did not* infringe on the defendant's patent. Thus, the court held the claim "arose under" federal patent law because the plaintiff's "right to relief necessarily depend[ed] on resolution of a substantial question of federal patent law, in that patent law is a necessary element of [its business disparagement claim]." *Id.* (quoting *Christianson*, 486 U.S. at 809).

Further, in *Hunter Douglas, Inc. v. Harmonic Design, Inc.* the court held that a state law claim for injurious falsehood "arose under" federal patent law. 153 F.3d 1318, 1332 (Fed. Cir.

1998). There, the alleged falsehood was the defendants' assertion that they held exclusive rights to make or sell items covered by their patents. *Id.* at 1329. The court held this claim to "arise under" federal patent law because "falsity," a required element of the state law claim, "necessarily depend[ed] on a question of federal patent law" - that is, whether the defendants' claims about its patent rights were valid or not. *Id.* Because the plaintiff did not offer any other basis for falsity on the defendants' part, and because questions of the validity and enforceability were indeed "substantial" questions of federal patent law, the court held it had jurisdiction over the state law claim. *Id.* at 1329-31.

In another case, the Federal Circuit reviewed orders by this Court. *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356 (Fed. Cir. 2006). In *Breckenridge* the court noted that one of the elements for a claim of tortious interference with business relationships under Florida law is the defendant's "intentional and unjustified interference with those business relationships." *Id.* at 1362. The plaintiff's tort claim was based on letters the defendant sent to, among others, the plaintiff's customers, informing them of the defendant's patent rights. The court stated that the district court "correctly noted" that the defendant's letters "would neither be unjustifiable nor unfair if the implication of infringement contained therein is true." *Id.* This illustrates how, in order to determine whether Plaintiff in this case has alleged "unjustified" intentional interference, the Court must look to federal patent law and examine the validity of Defendant's patent infringement allegations.

The Court notes that district courts in this Circuit have applied the law of the Federal Circuit to determine whether a state claim is preempted by federal patent law. For example, in *Boldstar Technical, LLC v. Home Depot, Inc.*, in noting that a state tort claim for tortious interference with a business relationship would likely be preempted by federal patent law if the tortious interference was "patent infringement or inducement," the court referred only to a Federal Circuit case. 517 F. Supp. 2d 1283, 1289 n.3 (S.D. Fla. 2007) (citing *Rodime PLC v. Seagate Tech.*, 174 F.3d 1294, 1306 (Fed. Cir. 1999)). In *Breckenridge Pharmaceutical., Inc. v. Metabolite Laboratories., Inc.*, in noting the circumstances under which state law claims for tortious interference with a business relationship and for unfair competition would be preempted by federal patent law, the court referred to a Federal Circuit case. 348 F. Supp. 2d 1335, 1342 n.9 (S.D. Fla. 2004) (citing *Globetrotter*, 362 F.3d at 1377) (reversed and remanded on other grounds, *Breckenridge Pharm.*, 444 F.3d 1356). In *Third Party*

8

*Verification, Inc. v. Signaturelink, Inc.*, the court referred to Federal Circuit law in assessing whether a state law unfair competition claim was preempted by federal patent law. 492 F. Supp. 2d 1314, 1326 (M.D. Fla. 2007) (quoting *Globetrotter*, 362 F.3d at 1374). Plaintiff has not offered any cases on point that hold otherwise, from any court.[3]

In sum, Plaintiff's tort claims do pose a "substantial question of federal patent law." *See Christianson*, 486 U.S. at 808-09. Nevertheless, Plaintiff insists that because it invoked diversity jurisdiction, the Court should apply Florida law rather than Federal Circuit law. However, "merely because a claim makes no reference to federal patent law does not necessarily mean the claim does not 'arise under' patent law. Just as a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint, so a plaintiff may not defeat § 1338(a) jurisdiction by omitting to plead necessary federal patent-law questions." *Id.* at 809 n.3 (internal quotations and citations omitted). Here, it is plain from the exhibits attached to the Complaint, including Defendant's letters and press releases accusing Plaintiff of patent infringement and the parties' 2005 licensing agreement, that Plaintiff's tort claims pose a substantial question of federal patent law. The Court may consider these exhibits as part of the pleading for all purposes, including a Rule 12(b)(6) motion. *See, e.g.*, *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205 (11th Cir. 2007). Although Plaintiff did not specifically reference patent law in its Complaint, "when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." *Id.* at 1206.

Because Plaintiff's tort claims "arise under" federal patent law, the law of the Federal Circuit applies to the question of whether federal patent law preempts those torts. The Federal Circuit applies its own law in "resolving questions involving the relationship between patent law and other federal and state law rights." *Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356, 1358-59

---

[3] Further, district courts in other circuits have expressly stated that Federal Circuit law governs the determination of whether federal patent law preempts a state law tort claim. *See, e.g.*, *CardioVention, Inc. v. Medtronic, Inc.*, 430 F. Supp. 2d 933, 939 (D. Minn. 2006) ("Federal Circuit law governs whether federal patent law preempts a state law claim . . . .") (citations omitted); *Int'l Elecs., Inc. v. Human Elecs., Inc.*, 320 F. Supp. 2d 1085, 1089 (W.D. Wash. 2004) ("[T]he law of the Federal Circuit governs the question of whether a state law claim is preempted by the federal patent law.") (citing *Globetrotter*, 362 F.3d at 1374 and *Zenith Elecs. Corp. v. Elgo Touchsystems, Inc.*, 182 F.3d 1340 (Fed. Cir. 1999)); *In re Netflix Antitrust Litig.*, 506 F. Supp. 2d 308, 319 (N.D. Cal. 2007) ("Federal Circuit law governs whether federal patent law preempts a state law claim.") (quoting *Ultra-Precision Mfg., Ltd. v. Ford Motor Co.*, 411 F.3d 1369, 1376 (Fed. Cir. 2005)).

(Fed. Cir. 1999); *see also Globetrotter Software, Inc. v. Elan Computer Group, Inc.*, 362 F.3d 1367, 1374 (Fed. Cir. 2004) ("We apply Federal Circuit law not only to the patent issues but also in deciding whether the patent laws preempt a state-law tort claim.").[4] Thus, the Court will apply Federal Circuit law in determining whether Plaintiff's claims are preempted by federal patent law.

**2.    Preemption**

Having determined that Federal Circuit law applies to the question of whether Plaintiff's tort claims are preempted by federal patent law, the Court must now determine whether those claims are in fact preempted and subject to dismissal.

"It has long been recognized that 'Patents would be of little value if infringers of them could not be notified of the consequences of infringement or proceeded against in the courts. Such action considered by itself cannot be said to be illegal.'" *Mikohn Gaming*, 165 F.3d at 897 (quoting *Virtue v. Creamery Package Mfg. Co.*, 227 U.S. 8, 37-38 (1913)). "Title 35 [of the Patent Act] authorizes patentholders to 'give notice to the public that the [patented article] is patented' and makes the marking or specific notice of the patent to the accused infringer a prerequisite to the recovery of damages." *Hunter Douglas*, 153 F.3d at 1336 (quoting 35 U.S.C. § 287). Indeed, "a patentee must be allowed to make its rights known to a potential infringer so that the latter can determine whether to cease its allegedly infringing activities, negotiate a license if one is offered, or decide to run the risk of liability and/or the imposition of an injunction." *Globetrotter*, 362 F.3d at 1374-75 (quoting *Va. Panel Corp. v. MAC Panel Co.*, 133 F.3d 860, 869 (Fed. Cir. 1997)).

Accordingly, the Federal Circuit has held that "federal patent law bars the imposition of liability for publicizing a patent in the marketplace unless the plaintiff can show that the patentholder acted in bad faith." *Hunter Douglas*, 153 F.3d at 1336. Thus, it is clear that "state tort claims, including tortious interference claims, based on publicizing a patent in the marketplace are not preempted by the patent laws if the claimant can show that the patent holder acted in bad faith in its publication of the patent." *Zenith*, 182 F.3d at 1355. "[T]o avoid patent law preemption of such state law tort claims, bad faith must be alleged and ultimately proven, even if bad faith is not otherwise an element of the tort claim." *Id.*

---

[4] Note, however, that the Court applies the law of the Eleventh Circuit to procedural issues not unique to patent law. *See, e.g.*, *Vanguard Research*, 304 F.3d at 1254.

"Exactly what constitutes bad faith remains to be determined on a case by case basis." *Id.* at 1354. "Obviously, if the patentee knows that the patent is invalid, unenforceable, or not infringed, yet represents to the marketplace that a competitor is infringing the patent, a clear case of bad faith representations is made out." *Id.* "Although 'bad faith' may encompass subjective as well as objective considerations, and the patentholder's notice is not irrelevant to a determination of bad faith, a competitive commercial purpose is not of itself improper, and bad faith is not supported when the information is objectively accurate." *Mikohn Gaming*, 165 F.3d at 897. Further, "[i]n general, a threshold showing of incorrectness or falsity, or disregard for either, is required in order to find bad faith in the communication of information about the existence or pendency of patent rights." *Id.* However, "a patentee, acting in good faith on its belief as to the nature and scope of its rights, is fully permitted to press those rights 'even though he may misconceive what those rights are.'" *Id.* (quoting *Kaplan v. Helenhart Novelty Corp.*, 182 F.2d 311, 314 (2d Cir. 1950)).

In the context of state law claims over prelitigation communications to potential infringers, the Federal Circuit has added another layer to the meaning of bad faith. *Globetrotter*, 362 F.3d at 1367. Where a plaintiff claims that "a patent holder has engaged in wrongful conduct by asserting claims of patent infringement," that plaintiff must "establish that the claims of infringement were objectively baseless." *Id.* at 1377. Under this standard, "[s]ubjective considerations of bad faith are irrelevant if the assertions are not objectively baseless." *GP Indus.*, 500 F.3d at 1375. The court in *Globetrotter* explicitly limited its adoption of the "objectively baseless" standard for bad faith. The court acknowledged that "federal patent law preempts state law that punishes merely 'publicizing a patent in the marketplace[,] unless the plaintiff can show that the patentholder acted in bad faith,'" but stated that it need not decide whether the "objectively baseless" standard applied in circumstances other than "the context of publicizing a patent through means other than pre-litigation communications," that is, cease-and-desist letters warning of potential litigation. 362 F.3d at 1377 n.9 (quoting *Hunter Douglas*, 153 F.3d at 1336) (alteration in original).

As stated above, "to avoid patent law preemption of . . . state law tort claims, bad faith must be alleged and ultimately proven." *Zenith*, 182 F.3d at 1355. Here, Plaintiff alleges that Defendant sent letters to Target and issued press releases accusing Plaintiff of patent infringement. Compl. ¶¶ 19-22, 26, 30. On the basis of these actions, Plaintiff seeks to recover for intentional interference with its contractual relationship with Target (Count I), and also for intentional interference with

11

"potential advantageous business relationships" with its clients, "including, but not limited to, Target" (Count II). In support of Count I, Plaintiff points to Defendant's letters to Target. *See id.* ¶ 37. In support of Count II, Plaintiff points to both Defendant's letters to Target and its press releases. *See id.* ¶ 43. Insofar as Plaintiff seeks to recover in Counts I and II based on Defendant's letters to Target those letters are clearly cease-and-desist letters warning of potential litigation, and both the general subjective and the "objectively baseless" standard for bad faith apply.

Plaintiff has failed to allege either subjective or objective bad faith. In support of its tort claims, Plaintiff alleges that Defendant's claims of patent infringement were "false," for two reasons. *Id.* ¶¶ 22, 37, 43. First, Plaintiff alleges that the 2005 agreement granted Plaintiff a license to sell its filtering technology under Defendant's patents and Plaintiff's DVD players complied with that license. Second, Plaintiff alleges that its DVD players did not infringe on Defendant's patents because they were not enabled to immediately filter movies. *Id.* ¶ 22. However, merely pleading that Defendant's statements were "false" is insufficient to plead bad faith. As the Federal Circuit has held, patentholders "are allowed to make representations that turn out to be inaccurate provided they make them in good faith." *Golan v. Pingel Enter., Inc.*, 310 F.3d 1360, 1371 (Fed. Cir. 2002).

Plaintiff also argues that the fact that Defendant "pressured Target with threats of prohibiting other manufacturers from selling their DVD players at Target and of materially compromising Target's consumer electronics business" supports the theory that Defendant's claims of patent infringement were baseless. Pl.'s Resp., D.E. #10 at 8; *see also* Compl. Ex. F at 2. However, Defendant's statement appears to merely repeat the language of paragraph 2.7 of its standard licensing agreement for DVD players. *See* Compl. Ex. F at 10. As stated above, "bad faith is not supported when the information [provided to an alleged or potential infringer] is objectively accurate." *Mikohn Gaming*, 165 F.3d at 897.[5]

---

[5] Specifically, in its October 19, 2007 letter to Target Defendant stated that "under the terms of [Plaintiff's] Agreement, the license of DVD-Devices held by many of [Defendant's] licensees who currently supply licensed products to Target will no longer extend to Target in the event that Target asserts in any judicial proceeding or document that any of the essential claims in the licensed patent portfolio is invalid and/or not infringed. (See DVD-Device License Agreement at paragraph 2.7). As a result, if litigation ensues between [Defendant] and Target, Target's consumer electronic business will be materially compromised." Plaintiff's summary of the terms of paragraph 2.7 of Defendant's standard license agreement is accurate. *See* Compl. Ex. F at 10.

Plaintiff also seeks to recover in Count II based on Defendant's press releases to the public. In these press releases, attached to the Complaint as Exhibits D and J, Defendant states that Plaintiff's DVD player infringes on its patent rights, and also provides "formal notice" that any retailer offering such DVD player for sale would be liable as a direct patent infringer. Compl. Ex. D. In order to avoid preemption, it is clear that Plaintiff must plead Defendant's press release statements asserting its patent infringement rights were subjectively made in bad faith. As stated above, Plaintiff has failed to do this. It is less clear whether *Globetrotter's* "objective baselessness" standard applies to Defendant's press release statements. After all, the court in *Globetrotter* stated that it "need not decide" whether that standard applied in circumstances other than "the context of publicizing a patent through means other than pre-litigation communications," that is, cease-and-desist letters warning of potential litigation. 362 F.3d at 1377 n.9 (quoting *Hunter Douglas*, 153 F.3d at 1336); *see also GP Indus.*, 500 F.3d at 1374-75 ("[W]e have expressly applied the 'objectively baseless' standard to a situation in which 'the party challenged statements made in cease-and-desist letters by a patentee asserting its patent rights.'") (quoting *Globetrotter*, 362 F.3d at 1377). However, the Court considers Defendant's press release statements that any retailer who sells an unlicensed product would be liable as a direct patent infringer to be the functional equivalent of a cease-and-desist letter warning of potential litigation. As such, the "objective baselessness" standard of bad faith applies to the press release statements. Plaintiff has failed to allege any facts suggesting those statements were "objectively baseless."

Plaintiff also argues that "the right to inform potential infringers of potential liability does not in any way include an unrestricted right to issue press releases to the world alleging patent infringement." Pl.'s Resp., D.E. #10 at 8. However, in *Mikohn Gaming* the defendant issued a press release accusing the plaintiff of patent infringement, as well as sent letters to this effect to the plaintiff's customers and potential customers - the court proceeded with the preemption analysis related to "the giving of notice of patent rights," without distinguishing the letters from the press release. 165 F.3d 891, 896-98. The court even stated that "[c]ommunication of accurate information about patent rights, whether by direct notice to potential infringers *or by publicity release*, does not support a finding of bad faith." *Id.* at 898 (emphasis added). Further, the issuance of a press release is consistent with the Federal Circuit's well-established precedent that "federal patent law bars the imposition of liability for *publicizing a patent in the marketplace* unless the plaintiff can show that

the patentholder acted in bad faith." *Hunter Douglas*, 153 F.3d at 1336 (emphasis added).

In sum, although at this motion to dismiss stage Plaintiff need only provide "enough facts to state a claim to relief that is plausible on its face," to "nudge[]" its claim "across the line from conceivable to plausible," Plaintiff has failed to do even that. *Twombly*, 127 S. Ct. at 1974. From the face of Defendant's letters and press releases attached to the Complaint it appears that Defendant's patent right assertions were made in good faith and were not objectively baseless, and Plaintiff did not offer any factual allegations to suggest otherwise. Thus, because Plaintiff failed to plead that Defendant acted in bad faith in asserting its patent rights, its state law tort claims are preempted by federal patent law.[6]

## V. CONCLUSION

For the reasons stated above, it is hereby ORDERED AND ADJUDGED that Defendant's Motion to Dismiss the Complaint is GRANTED, and both counts in Plaintiff's Complaint are DISMISSED WITHOUT PREJUDICE. Plaintiff may replead those claims by **Tuesday, April 15, 2008** if it can cure the defects discussed above.

DONE AND ORDERED in Chambers, Miami, Florida on April 2, 2008.

Copies furnished to:    Paul C. Huck
Counsel of record       United States District Judge

---

[6] Based on the discussion above, it is clear that the preemption doctrine bars Plaintiff's state law tort claims in the absence of allegations of bad faith. As such, there is no need to determine whether the Noerr-Pennington doctrine is separate from the preemption doctrine and, if so, whether it also bars Plaintiff's tort claims.