UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CLEARPLAY, INC., a Utah corporation,

       Plaintiff,

vs.                               Case No. 07-81170-CIV-HUCK/O'SULLIVAN

NISSIM CORP., a Florida corporation,

       Defendant.

_____

## AMENDED COMPLAINT

    Plaintiff, CLEARPLAY, INC., a Utah corporation, hereby files this action against Defendant, NISSIM CORP., a Florida corporation, and alleges as follows:

### PARTIES, JURISDICTION AND VENUE

    1.    Plaintiff CLEARPLAY, INC., ("ClearPlay"), is a Utah corporation, with its principal place of business at 5284 South Commerce Drive, Salt Lake City, Utah, 84107. ClearPlay manufactures and produces digital video disc (DVD) players and related content-filtering software, and offers its products for sale throughout the United States, including Florida.

    2.    Defendant NISSIM CORP., ("Nissim"), is a Florida corporation with its principal place of business at 18457 Long Lake Drive, Boca Raton, Florida, 33496.

    3.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) as this is a dispute in which the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states.

    4.    This Court has personal jurisdiction over Nissim in that, at all times material hereto, Nissim operated, conducted, engaged in and/or carried on a business or business venture in the State of Florida, breached a contract in this state, committed tortious acts within this state

and caused injury to persons and/or entities arising out of an act(s) or omission(s) by Nissim within the state of Florida.

5.     Venue is proper in the United States District Court for the Southern District of Florida under 28 U.S.C. § 1391(a) in that the Defendant's principal place of business is located within this district and a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this district.

<u>GENERAL ALLEGATIONS</u>

6.     Plaintiff ClearPlay has pioneered cutting edge technologies in the DVD filtering playback field, allowing consumers to filter out objectionable content from movies that are already available in the marketplace on DVD.  ClearPlay manufactures, produces, and offers for sale DVD players and related content-filtering software which allow consumers to filter offensive material from the playback of DVD movies.  For these reasons, ClearPlay is the industry leader in parental filtering technology for DVD players.  Plaintiff is unaware of any other entities manufacturing and selling similar products.

7.     Defendant Nissim is a patent holding company incorporated in Florida.  Nissim does not manufacture or sell any products or services and appears to have only one employee – Max Abecassis, its President and CEO.  Nissim, however, owns a subsidiary corporation, CustomPlay LLC, that allegedly is developing technology similar to the DVD players and related content-filtering software manufactured and sold by ClearPlay.

8.     Nissim, nor any of its subsidiary or related entities, as of the date of this Complaint, has not manufactured, produced nor offered for sale any DVD players or content-filtering software or hardware which allow consumers to view customized playback of DVD movies.  However, Mr. Abecassis has repeatedly represented that he intends to manufacture, produce, or offer for sale such products.  His actions, however, belie any such intent.  The

2

offensive content specifications that were allegedly authored by Nissim were created in written form at least as soon as November 2005.  To date, however, Nissim has not manufactured, produced, nor offered for sale any such products notwithstanding no lack of financial resources available to Nissim from the handsome royalties that Nissim has received from licensing its patents.

9.     Matthew Jarman, Cofounder of ClearPlay invented the concepts underlying ClearPlay's filtering technology in 1998.  ClearPlay has already received two patents pertaining to the concept of ClearPlay's filtering technology and has several pending patent applications. Matthew Jarman and ClearPlay have been working on the development and improvement of this innovative parental filtering technology for about ten years.

10.    ClearPlay first came aware of Nissim in early 2000 and contacted Mr. Abecassis to evaluate a potential business relationship.  Based on sporadic emails and phone conversations over the course of a few months, ClearPlay quickly decided against pursuing any business relationship with Mr. Abecassis because, among other things, of Mr. Abecassis' desire to offer a product to customize the viewing of pornographic material.   When ClearPlay broke off communications with Nissim, Nissim offered to purchase ClearPlay's software.  This purchase did not materialize and Nissim ultimately represented that it would have its own product on the market within a year from April 2000.

11.    On or about December 10, 2001, ClearPlay began marketing a computer program and membership service which allowed consumers to filter their DVD movies by skipping or muting objectionable content.  In light of ClearPlay's prior contact with Mr. Abecassis, ClearPlay was aware that Mr. Abecassis may have some patent claims that could impact the product offered for sale by ClearPlay.  As a result, ClearPlay sought and thereafter received in early 2004

a reasoned opinion of non-infringement that ClearPlay's DVD player and filters did not infringe upon any patents held by Nissim.

12.    In April 2004, Thomson, Inc. ("Thomson") began selling a RCA brand DVD player that incorporated the ClearPlay advanced parental controls at Walmart and other national retailers.

13.    Shortly thereafter, on May 13, 2004, Nissim sued ClearPlay in the United States District Court for the Southern District of Florida in Case No. 04-21140-Civ-Huck, alleging claims of patent infringement, misappropriation of trade secrets, and breach of contract arising out of ClearPlay's activities as set forth above.  Nissim also threatened Thomson with patent infringement litigation and pressured Thomson with the threat that Nissim would never allow Thomson to market DVD players within the United States again if Nissim prevailed in its threatened litigation against Thomson.  Based on these threats, Thomson decided to discontinue manufacturing the RCA player with incorporated ClearPlay parental controls.  Wal-Mart, however, did not buckle under to Nissim's ill-founded demands and continued to sell its inventory of RCA-branded DVD players that incorporated the ClearPlay advance parental controls until such time as this inventory was exhausted.

14.    On the eve of trial in Case No. 04-21140-Civ-Huck, on November 23, 2005, the parties entered into a confidential settlement and licensing agreement which, *inter alia*, granted ClearPlay a license to make and sell a modified version of its ClearPlay filtering technology under Nissim's patents.   A copy of such confidential settlement and licensing agreement (the "License Agreement") is hereby filed under seal as **Exhibit "A"** to this Amended Complaint.  ClearPlay entered into the License Agreement in good faith.  Nissim, however, entered into the License Agreement only as a way to avoid trial of the underlying claims and to

position Nissim with the subsequent ability to make it extremely difficult for ClearPlay to comply with the terms of the License Agreement and at the expenditure of extensive time and prodigious expense.

15.     Subsequent to entering into the License Agreement with Nissim, ClearPlay engaged in extensive work to modify the categorization of offensive content in its movie indexes and content-filtering software to comply with the terms of said License Agreement. This work was performed at extensive time and significant expense to ClearPlay.  The amount of effort expended by ClearPlay to comply with the License Agreement is demonstrated by its recent delivery of over 200,000 pages of movie indexes representing an aggregate of close to five million data points pertaining to the potentially offensive content evaluated by ClearPlay in order to comply with the License Agreement.

16.     After many months of work, including re-watching substantially all of the movies that were previously filtered and indexed, ClearPlay began to manufacture and produce movie indexes or filters compliant with the License Agreement.

17.     Eight days after the execution of the License Agreement, Max Abecassis emailed ClearPlay a modified version of the Specification. Max Abecassis stated in the email that version 5.6 "relocates the restrictions and clarifications to the beginning or to the relevant passages making it easier to understand."  Unbeknownst to ClearPlay, Nissim directly or through its subsidiary corporation, CustomPlay, LLC, subsequently made dramatic categorical modifications to his "standard" and posted these changes on the CustomPlay website.  These changes included the removal of the categories "Disturbing", Mushiness", and "Vulgarity" and added the categories of "Bodily Functions", "Hideous", "Mature Subject", "Profanity" and "Sexual Humor".  Nissim did not apprise ClearPlay directly of these changes to his "standard"

and it was not until ClearPlay inquired of these changes that Max Abecassis provided version 8.0 of the "standard" to ClearPlay.  When ClearPlay requested delivery of the versions of the "standard" that were created between version 5.6 and 8.0 Max Abecassis replied that ClearPlay did not have a right to these versions and that they had been destroyed and were no longer in existence

18.    The Defendant, Nissim, directly or through its subsidiary corporation, CustomPlay, LLC, intentionally created vague, objectionable standards within the terms of the License Agreement and quickly changed the objectionable content standards set forth in the License Agreement with the express purpose to make it impossible for ClearPlay to comply with the License Agreement and/or to render the filters, manufactured and produced by ClearPlay at substantial expense, to be obsolete and outdated.

19.    The Defendant, Nissim, immediately subsequent to entering into the License Agreement, intended, at the earliest possible date, to institute litigation against the Plaintiff, ClearPlay, for alleged breach of the License Agreement.  Indeed, Nissim intended to bring litigation against ClearPlay even before ClearPlay had the opportunity to release new versions of the ClearPlay filters.

20.    After ClearPlay entered into the License Agreement and after ClearPlay had modified its movie filters and content-filtering software to comply with the material terms of the License Agreement, ClearPlay engaged in negotiations with prospective business partners, including Best Buy Co., Inc. ("Best Buy") and Target Corporation ("Target") to offer ClearPlay DVD players for sale.  In fact, preliminary negotiations with Best Buy had begun as early as November 2001.

21.     In May 2006, a buyer from Target, visited ClearPlay's office and the parties continued their dialog with respect to the purchase by Target of DVD players from ClearPlay, which dialog had commenced some time prior to the Target buyer's visit to ClearPlay's office.

22.     In October of 2006, Target offered ClearPlay the opportunity to place its DVD players in Target's spring 2007 "Planogram." The Target Planogram is the blue print that designates a certain location in each Target store for the placement of the display product and product stock.  Since Target only does major changes to its Planogram on an annual basis, this placement in the Planogram would enable ClearPlay's products to remain as permanent items in Target's electronics department from May 2007 to at least April 2008.  Relying on this offer and on the expectation of future business with Target, ClearPlay invested more than $1 million into producing point of sale displays for Target stores.

23.     In January of 2007, Target placed its first purchase order with ClearPlay to sell DVD players which are compatible with the ClearPlay software.  These ClearPlay DVD players sold to Target would allow consumers, who also sign up for the ClearPlay filtering service, to filter their DVD movies from home.  However, without obtaining a ClearPlay filter file that loads the ClearPlay filtering user interface onto the DVD player and provides filtering information for specific movie titles, such DVD players would simply play DVDs without any filtering. ClearPlay has, in fact, sold some DVD players to Target, and had the reasonable expectation to sell additional DVD players to Target.  Copies of the ClearPlay/Target purchase orders are attached as **Exhibit "B"** to this Amended Complaint.

24.     After learning of the sale of ClearPlay DVD players to Target, Nissim, in June of 2007 sent a letter to Target alleging that the ClearPlay DVD player sold to Target did not comply with Nissim's requirements regarding the categorizing of objectionable content in movies and

was, therefore, not covered by the License Agreement entered into in November 2005.  Nissim further alleged that the ClearPlay DVD player was not licensed under the License Agreement and demanded that Target remove the "unlicensed" ClearPlay DVD players from its shelves and that Target discontinue selling the "infringing products".  A copy of this letter is attached as **Exhibit "C"** to this Amended Complaint.

25.     The communication sent by Nissim to Target in June 2007 was false on its face at least in the following particulars.  First, the CP 007-USB DVD Player sold to Target was not covered by any of Nissim's patents and therefore could not and did not infringe any of Nissim's patents, facts all known by Nissim.  Second, at the time of the communication from Nissim to Target, there had been no adjudication that the ClearPlay filters did not comply with the required standards set forth in the License Agreement and, as of the date of this Amended Complaint, there had been no such adjudication, either by a Court of competent jurisdiction or pursuant to any other mechanism set forth in the License Agreement.  Therefore, the statement set forth in Nissim's June 11, 2007 letter to Target that the ClearPlay filters do not comply with the required standards of the License Agreement is patently false and known by Nissim to be false.  Finally, ClearPlay's license would not be compromised even were the movie indexes or filters ultimately determined to be in non-compliance with the License Agreement.

26.     Also, in June of 2007, Nissim published a "press release" on its website (http://www.nissim.com/news.htm) stating that ClearPlay was violating Nissim's intellectual property rights by offering DVD players for sale without a proper license under Nissim's patents.  This press release was viewable throughout the world, including Florida, via the World Wide Web, and a copy is attached as **Exhibit "D"** to this Amended Complaint.

27.     The press release published by Nissim on or about June 11, 2007 was false on its face when it stated that the ClearPlay filters were not in compliance with the CustomPlay specifications because, as of that date, and continuing to the present, there has been no adjudication either by a court of competent jurisdiction or by any other authority set forth in the License Agreement to determine that the filters were not in compliance with the CustomPlay specifications.  As such, the statement in the press release that non-compliant devices constitute infringement of the Nissim patents is patently false.  These facts were known to Nissim at the time the press release was published.  Importantly, in any event, ClearPlay is operating under a License granted by Nissim, which License is not compromised regardless if the movie indexes or filters are ultimately determined to be non-compliant with the License Agreement.  In that unlikely event, ClearPlay need only modify the filters to cure any non-compliance.

28.     Nissim also removed, in or around July 2007, from its website a copy of the press release issued on November 30, 2005, which was titled "Nissim and ClearPlay Resolve Patent Litigation" and which stated, among other things that "Nissim Corp. has resolved its ongoing patent infringement litigation with ClearPlay, Inc. and the companies have entered into a settlement and license agreement."  An archived copy of this press release is attached as **Exhibit "D-1"**.  Thus, Nissim has gone to great lengths to hide from third parties, including ClearPlay's business partners and prospective business partners, that ClearPlay has a license to sell products incorporating certain technology covered by Nissim patents.

29.     Nissim's allegations that the ClearPlay DVD players offered for sale by Target were not covered by a Nissim license were false for at least two significant reasons, each of which stands alone as an argument against this allegation.  First, the License Agreement between ClearPlay and Nissim granted ClearPlay a license to sell its filtering technology under Nissim

patents.  ClearPlay negotiated for this license in good faith from Nissim as part of the settlement of the patent litigation, and ClearPlay has sought in good faith to comply with the requirements of the License Agreement.  Second, the DVD players, as sold to and by Target, were not enabled to filter movies.  The consumer only has access to ClearPlay's parental filtering technology after he or she signs up for the ClearPlay filtering service directly with ClearPlay, downloads the software from the ClearPlay website and installs it into the DVD player.  The DVD players as sold to and by Target do not provide an option for filtered playback or even a user interface for adjusting filter settings.

30.    In July of 2007, ClearPlay responded to Target stating that the ClearPlay DVD player was covered by a license from Nissim pursuant to the Agreement.  A copy of ClearPlay's letter is attached as **Exhibit "E"** to this Amended Complaint.  As a result, Target did not remove the DVD players from its shelves and continued placing purchase orders for additional DVD players with ClearPlay.  (*See* Exhibit B).

31.    In October of 2007, Nissim sent another letter to Target again demanding that Target remove ClearPlay's "unlicensed" and "infringing" DVD players from its shelves.  Nissim further stated that unless Target pulled the ClearPlay DVD players from its shelves, Nisism would sue Target for patent infringement.  Nissim attached a draft complaint to this letter and claimed that it would file this complaint on November 2, 2007 if Target did not cease selling ClearPlay DVD Players.  In addition, Nissim also pressured Target with the threat that Nissim would prohibit other manufacturers from selling their DVD players at Target and that Target's consumer electronics business would be materially compromised.   A copy of this letter is attached as **Exhibit "F"** to this Amended Complaint.

32.     The statements contained in Nissim's October 19, 2007 letter to Target that the ClearPlay products were unlicensed and infringing are false on their face.  First, ClearPlay DVD player model CP-007-USB does not incorporate any of Nissim's patents and therefore is non-infringing.  Second, the enforcement proceeding referenced in the October 2007 letter referenced a motion to enforce the License Agreement by allegedly requiring ClearPlay to manufacture and produce filters, compliant with the CustomPlay offensive content specifications.  As of the date of the October 2007 letter and continuing through the present, there has been no determination that any of the ClearPlay movie indexes or filters are not in compliance with the Custom Play offensive content specifications.  Thus, Nissim's blanket statement that the ClearPlay products are non- compliant is factually inaccurate and known by Nissim to be false.  Moreover, even were the filters determined not to be in compliance with the License Agreement, ClearPlay's license is not compromised.  Third, under the License Agreement, Nissim is obligated to extend to ClearPlay any other patent licenses that may be required to manufacture and sell its DVD Player.  To date, Nissim has failed to comply with this requirement.

33.     On or about November 1, 2007, ClearPlay responded to Target advising Target that with respect to Nissim's allegations against ClearPlay, ClearPlay had a valid license with Nissim and, in any event, the DVD players as offered for sale in Target were not enabled to perform ClearPlay's parental filtering service.  A copy of this letter is attached as **Exhibit "G"** to this Amended Complaint.

34.     On or about November 2, 2007, Target cancelled several large purchase orders for additional ClearPlay DVD players and agreed not to place any additional orders for purchasing ClearPlay DVD players in Target stores, based on the unfounded allegations by Nissim that such players were not licensed.  Target stated in their communication to ClearPlay that they were

cancelling the existing purchase orders due to "the recent legal situation".  Copies of the cancellations of the existing purchase orders are hereby filed as **Exhibit "H"** to this Amended Complaint.

35.     On or about November 2, 2007, Target also discontinued selling the ClearPlay DVD Players at Target.com.  *See* correspondence from Target's counsel to counsel for Nissim attached hereto as **Exhibit "I"** to this Amended Complaint.  When a ClearPlay employee asked a Target.com employee why Target.com was no longer selling ClearPlay DVD players, the ClearPlay employee was told in an email that sales had been discontinued since "the player does not have the proper licensing agreements in place."

36.     Also on November 2, 2007, Nissim published another "press release" on its website stating that Target had ceased sales of ClearPlay DVD players and stating that the ClearPlay DVD players were "not covered by a Nissim license."  As of the date of this Amended Complaint, such press release was still available online at http://www.nissim.com/news.2007.11.02.htm, and a copy is attached as **Exhibit "J"** to this Amended Complaint.  Moreover, as stated above Nissim has now removed its previous press release announcing the settlement and license agreement reached between Nissim and ClearPlay in November 2005.

37.     The press release published by Nissim on or about November 2, 2007 is false on its face because the ClearPlay DVD Player sold at Target, model number CP007-USB, does not incorporate any of Nissim's patented technology and therefore cannot and does not infringe upon of Nissim's patents. Further, the ClearPlay filters used by the player have not been found to be non-compliant with the CustomPlay offensive content specifications and ClearPlay continues to operate under a valid License Agreement entered into by and between it and Nissim.  This

12

License continues throughout the term of the License Agreement irrespective of whether or not the ClearPlay filters are in compliance with the terms thereof.

38.     ClearPlay was in the process of negotiating future purchase orders with Target and other clients when Target cancelled the existing purchase orders and Nissim published news of the cancellation on its website.  In fact, on October 28, 2007, Target had physically placed a ClearPlay point-of-sale interactive display and ClearPlay DVD players into its 2008 Planogram at its corporate headquarters, and were including the ClearPlay DVD player in their plans for their 2008 Planogram, which goes from May 2008 through April 2009.

39.     In July of 2007, BestBuy agreed to carry ClearPlay DVD players for sale in BestBuy locations beginning on or about October 31, 2007.  Thereafter, ClearPlay DVD players appeared in BestBuy's weekly circular and since that date have been available for sale at BestBuy.  Representative copies of BestBuy purchase orders (redacted to protect confidential pricing information) are hereby attached to this complaint as **Exhibit "K"**.

40.     On or about January 14, 2008, counsel for Nissim sent a demand letter to counsel for ClearPlay and demanded that ClearPlay contact BestBuy and direct BestBuy to discontinue selling DVD players offered for sale by ClearPlay.  A copy of this demand letter is attached as **Exhibit "L"**.  This letter makes clear Nissim's unjustified position that the ClearPlay DVD players somehow infringe on Nissim's patents and that this position is based solely on unsupportable allegations.  Nissim's allegation that the ClearPlay DVD players offered for sale by BestBuy were not covered by Nissim's license were false for at least two significant reasons. First, the License Agreement between ClearPlay and Nissim granted ClearPlay a license to sell its filtering technology under Nissim patents.  ClearPlay negotiated for this license in good faith from Nissim as part of the settlement of the underlying patent litigation and ClearPlay has

sought, as at times and in good faith, to comply with the requirements of the License Agreement. Second, even if Nissim had a valid claim that ClearPlay had somehow not followed the subjective terms of the License Agreement for categorizing possibly offensive content and failed to follow the specifications for every single movie index for every single movie, Nissim's demand to ClearPlay that ClearPlay direct BestBuy to remove the ClearPlay DVD players from its stores and its website constitutes bad faith because ClearPlay's license is not compromised in any event, and the DVD players, as sold to and by BestBuy were not even enabled to filter movies.  A consumer only has access to ClearPlay's parental filtering technology after he or she signs up for the ClearPlay filtering service directly with ClearPlay, downloads the software from the ClearPlay website and installs the filtering technology via a drive that can be inserted into the DVD player.  The ClearPlay DVD players as sold to and by BestBuy do not provide an option for filtered playback or even access to the user interface for adjusting filter settings.   Thus, irrespective of Nissim's hollow arguments surrounding the License Agreement or the reach of its patents, Nissim acts in bad faith by demanding that ClearPlay direct BestBuy to remove the ClearPlay DVD players that are sold with neither the disputed filtering user interface nor the disputed movie indexes.

41.    On February 22, 2008, counsel for Nissim served a demand letter upon BestBuy, directed to its senior corporate counsel, alleging that ClearPlay was not in compliance with the License Agreement and that the sale of ClearPlay DVD players at BestBuy constituted an unlicensed infringement of Nissim's patents.   Nissim also demanded, through counsel, that BestBuy "promptly cease and desist from selling the infringing CP427 player."  A copy of the February 22, 2008 letter is attached as **Exhibit "M"**.   Nissim's February 22, 2008

correspondence was objectively baseless and patently false for the same reasons attributed to Nissim's January 14, 2008 letter directed to ClearPlay's counsel and copied to BestBuy's counsel.

42.     Thereafter, on March 19, 2008, Nissim delivered a demand letter to Kari Wangensteen, BestBuy's senior corporate counsel, demanding that BestBuy terminate its business relationship with the Plaintiff, ClearPlay, and take the following action: (a) immediately cease selling ClearPlay DVD players on www.bestbuy.com, (b) cancel any open orders for ClearPlay DVD players, (c) not place any further orders for ClearPlay players, and (d) ease selling any current inventory of ClearPlay DVD players in BestBuy stores within sixty (60) days.   Further, Nissim threatened BestBuy that should BestBuy not take the aforementioned actions, Nissim would file a complaint for patent infringement and attached a copy of the proposed patent infringement complaint as an exhibit to its written demand.  A copy of Nissim's March 19, 2008 demand letter is attached as **Exhibit "N"**.

43.     Nissim's March 19, 2008 demand letter to BestBuy is objectively baseless and exhibits bad faith for numerous reasons, including that the draft complaint attached as an exhibit to the demand letter included a proposed Count VI, sounding in infringement of U.S. Patent 6,208,805 (the "805 Patent").  ClearPlay's DVD players sold at BestBuy do not incorporate any technology implementing any portion of the 805 Patent.  In addition, the United States Patent and Trademark Office, on February 14, 2008, more than one month prior to Nissim's March 19, 2008 demand letter, ordered a re-examination of the 805 Patent on numerous grounds.  A copy of the PTO's order directing re-examination of the 805 Patent is attached as **Exhibit "O"**.  For all of the foregoing reasons, the ClearPlay CP427 DVD player could not possibly infringe on any valid claims under the 805 Patent and, therefore, the March 19, 2008 demand letter to BestBuy was objectively baseless and tendered in bad faith.  In addition, under the License Agreement,

Nissim is obligated to extend to ClearPlay any other patent licenses that may be required for ClearPlay to manufacture and sell its DVD Player.  To date, Nissim has failed to comply with this requirement.

44.     As a direct result of Nissim's written communication to BestBuy, BestBuy fell victim to Nissim's demands and is no longer offering for sale the ClearPlay CP427 DVD player, either in its stores or on its website, has not placed any future orders with ClearPlay and has removed all ClearPlay DVD players from its shelves.

45.     Further, on March 31, 2008, Nissim authored and published a press release on its website, www.nissim.com.  By this press release, the Defendant, Nissim, broadcast to the world that the ClearPlay DVD player previously offered for sale at BestBuy was not in compliance with the requirements of the License Agreement, was therefore, non-compliant, and subjected BestBuy to patent infringement.  A copy of this press release is attached as **Exhibit "P"**.  For the reasons set forth above, this brash statement intentionally and openly published by the Defendant, Nissim, is objectively baseless and published in bad faith.

46.     Pursuant to the terms of the License Agreement, the Defendant, Nissim, has consistently demanded that the Plaintiff, ClearPlay, submit regular royalty reports and tender royalty payments to Nissim.  From the date of execution of the License Agreement, the Plaintiff, ClearPlay, has submitted all required royalty reports and has tendered all required royalty payments and the Defendant, Nissim, has, in fact, accepted all such royalty payments resulting from ClearPlay's sale of DVD Players and filters, all such products that Nissim alleges are not licensed or are manufactured and sold contrary to the terms of the License Agreement.

47.     At all times material to this action, ClearPlay has complied with all of the material terms and conditions of the License Agreement.

48.     A motion to enforce the License Agreement was filed by Nissim on June 11, 2007, and is currently pending in the Southern District of Florida under Case No. 04-21140-CIV-HUCK.  To date, there has been no determination by any Special Master (as contemplated by the License Agreement) nor by the Court that ClearPlay has not complied with the License Agreement. In any event, ClearPlay continues to hold a license to sell its filtering technology in the marketplace.  Moreover, Nissim by its motion to enforce the License Agreement, has not sought to terminate the License Agreement and ClearPlay's duly-bargained for license to use Nissim's patented technology.

49.     The Plaintiff, ClearPlay, has retained the undersigned attorneys to represent its interest herein and is obligated to pay said attorneys a reasonable fee for their services.

## COUNT I – TORTIOUS INTERFERENCE WITH A CONTRACTUAL RELATIONSHIP (TARGET)

50.     ClearPlay realleges and incorporates herein by reference the allegations contained in paragraphs 1 through 49 above as though fully set forth herein.

51.     ClearPlay and Target were parties in a contractual relationship which constituted an advantageous business relationship wherein ClearPlay had legal rights.  This relationship is evidenced by, but not limited to, the purchase orders by Target for ClearPlay DVD players.

52.     ClearPlay performed its obligations under the contractual relationship until Target terminated the relationship as a result of Nissim's communication to Target.

53.     Nissim was not a party to the contractual relationship between ClearPlay and Target, and thus had no right, justification, or privilege to interfere with the relationship between the two parties.

54.     Nissim at all times material to this action had knowledge of the relationship between ClearPlay and Target.

55.     Nissim intentionally, unjustifiably and in bad faith interfered with the contractual relationship between ClearPlay and Target by, *inter alia*, falsely stating to Target that the ClearPlay DVD players and related filtering technology, were not covered by a Nissim license and by threatening to sue Target if Target did not immediately cease sales of the ClearPlay DVD players.

56.     As a direct result of Nissim's intentional, unjustified, and bad faith interference with the contractual relationship between ClearPlay and Target, the contractual relationship was disrupted, and ClearPlay has suffered and continues to sustain damages.

WHEREFORE, Plaintiff demands judgment against Nissim for damages, in excess of $1,000,000, plus interest, costs, attorneys' fees, punitive damages upon a proper showing,  and any and all other relief as the Court deems appropriate.

## COUNT II – TORTIOUS INTERFERENCE WITH A CONTRACTUAL RELATIONSHIP (BEST BUY)

57.     Plaintiff, ClearPlay realleges and incorporates herein by reference the allegations contained in paragraphs 1 through 49 above as though fully set forth herein.

58.     ClearPlay and Best Buy were parties in a contractual relationship which constituted an advantageous business relationship wherein ClearPlay had legal rights.  This relationship is evidenced by, but not limited to, the purchase orders issued by ClearPlay for ClearPlay DVD players.

59.     ClearPlay performed its obligations under the contractual relationship with Best Buy until Best Buy terminated the relationship based on the intentional interference from the Defendant, Nissim.

60.     Nissim was not a party to the contractual relationship between ClearPlay and Best Buy and thus had no right, justification or privilege to interfere with the relationship between the two parties.

61.     Nissim at all times material to this action had knowledge of the relationship between ClearPlay and Best Buy.

62.     Nissim intentionally, unjustifiably and in bad faith interfered with the contractual relationship between ClearPlay and Best Buy by, *inter alia*, falsely stating to Best Buy that the ClearPlay DVD players and relating filtering technology were not covered by a Nissim license and by threatening to sue Best Buy for patent infringement if Best Buy did not immediately cease sales of the ClearPlay DVD players.

63.     As a direct result of Nissim's intentional, unjustified and bad faith interference with the contractual relationship between ClearPlay and Best Buy, the contractual relationship was disrupted, and ClearPlay has suffered and continues to sustain damages.

WHEREFORE, Plaintiff demands judgment against Nissim for damages, in excess of $1,000,000, plus interest, costs, attorneys' fees, punitive damages upon a proper showing, and any and all other relief as this Court deems just and proper.

<u>COUNT III – TORTIOUS INTERFERENCE WITH POTENTIAL ADVANTAGEOUS
BUSINESS RELATIONSHIPS</u>

64.     ClearPlay realleges and incorporates herein by reference the allegations contained in paragraphs 1 through 49 above as though fully set forth herein.

65.     Economically advantageous business relationships, capable of ascertainment, existed between ClearPlay and numerous clients, including but not limited to Target and Best Buy, in which ClearPlay had existing and/or prospective legal rights.

66.     Nissim was not a party to any of the relationships between ClearPlay and its clients, and thus had no right, justification, or privilege to interfere with these relationships.

67.     Nissim at all times material to this action had knowledge of the relationships between ClearPlay and its clients, including, but not limited to, Target and Best Buy.

68.     Nissim intentionally, unjustifiably and in bad faith interfered with the relationships between ClearPlay and its clients by, *inter alia*, falsely stating to Target and Best Buy that the ClearPlay DVD players and related filtering technology were not covered by a Nissim license, by threatening to Target and Best Buy if Target and Best Buy did not immediately cease sales of the ClearPlay DVD players, and publishing false press releases on its website stating that ClearPlay was engaged in the sale and distribution of DVD players and/or related filtering technology which are not covered by a Nissim license.

69.     As a direct result of Nissim's intentional, unjustified and bad faith interference with the relationships existing between ClearPlay and its clients, including, but not limited to Target and Best Buy, ClearPlay's business relationships were disrupted, and ClearPlay has suffered and continues to sustain damages in the form of lost sales, lost clients, and lost business.

WHEREFORE, Plaintiff demands judgment against Nissim for damages in excess of $1,000,000, plus interest, costs, attorneys' fees, punitive damages upon a proper showing, and any and all other relief as the Court deems appropriate.

<u>COUNT IV - BREACH OF SETTLEMENT AND LICENSE AGREEMENT</u>

70.     ClearPlay realleges and incorporates herein by reference the allegations contained in paragraphs 1 through 49 above as though fully set forth herein.

71.     The License Agreement entered into by and between the parties on November 23, 2005 sets forth an express mechanism for handling and responding to mapping disputes relative to movie filters or indexes created by the Plaintiff, ClearPlay.  This provision is set forth with particularity in Section 4.6 of the License Agreement, which Agreement is filed under seal.

72.     It was the intent of the parties in entering into the License Agreement that any and all disputes related to ClearPlay CustomPlay OC Maps be determined by submission to a Special Master.  In fact, this is the only mechanism set forth in the License Agreement for handling any disputes relating to whether or not movie indexes or filters are in compliance with the terms of the License Agreement.  The Defendant, Nissim, has wholly failed to comply with Section 4.6 of the License Agreement and, despite requests by ClearPlay, has refused to submit to a Special Master the determination of the question of whether or not a ClearPlay CustomPlay OC Map has not been created in good faith compliance with the terms of the License Agreement. As of the date of the Amended Complaint, Nissim has identified only two movie filters that allegedly were created by ClearPlay and not in compliance with the License Agreement although ClearPlay has created movie indexes for more than 2,500 movies in compliance with the terms of the License Agreement.

73.     The parties also specifically agreed not to interfere with each other's business activities and agreed that they would not use the provisions of Section 4.6 of the License Agreement to unreasonably interfere with or disrupt the other party's business operations.  *See* Section 4.7 of the License Agreement, filed under seal.

74.     The Defendant, Nissim, as evidenced by Nissim's communications with ClearPlay's business partners, specifically, Target and BestBuy, has unreasonably interfered with, has harassed and has disrupted the business operations existing between the Plaintiff, ClearPlay, and its business partners.  Specifically, Nissim has represented to Target and BestBuy that the ClearPlay CustomPlay OC Maps created by ClearPlay were not created in compliance with the License Agreement and, that, therefore, ClearPlay allegedly has no license to market and sell such filters and ClearPlay DVD Players.  Nissim has advanced this position while knowing that Nissim has failed to comply with the only provision of the License Agreement that address the mechanism for handling mapping disputes and knowing that no special master has made any determination as to whether or not any ClearPlay filters are not in compliance with the terms of the License Agreement.

75.     The Defendant, Nissim, had an obligation to deal with ClearPlay in good faith and not to impugn ClearPlay or the products manufactured and sold by ClearPlay.  The Defendant, Nissim, by its conduct as detailed herein, has breached this obligation.

76.     The License Agreement also includes a "most favored" nations clause under section 5.4 (See Exhibit "A"-filed under seal).  In October 2007, the Defendant, Nissim presented a proposed DVD-Device License Agreement to the Plaintiff, ClearPlay, for execution. The Plaintiff, ClearPlay, through counsel, on November 19, 2007, invoked the most-favored nations clause in the License Agreement and requested that the Defendant, Nissim, provide ClearPlay with copies of other DVD-Device License Agreements that Nissim had entered into with other parties so that ClearPlay could fully evaluate whether or not it was in its best interests to execute such a DVD-Device License Agreement.  A copy of counsel's letter is filed under seal as **Exhibit "Q"**.

77.     As of the date of this Amended Complaint, the Defendant Nissim has not complied with the Plaintiff's request set forth above. Thus, the Defendant, Nissim is in breach of section 5.4 of the License Agreement.

78.     As a direct result of Nissim's failure to comply with the provisions of Sections 4.6 4.7, and 5.4 of the License Agreement, the Plaintiff, ClearPlay, has been damaged.

WHEREFORE, Plaintiff demands judgment against Nissim for damages in excess of $5,000,000.00, plus interest, costs, attorneys' fees, punitive damages upon a proper showing, and any and all other relief as this Court deems just and proper.

COUNT V - BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

79.     Plaintiff, ClearPlay realleges and incorporates herein by reference the allegations contained in paragraphs 1 through 49 above as though fully set forth herein.

80.     The License Agreement entered into by and between ClearPlay and Nissim as of November 23, 2005 was entered into by ClearPlay in good faith and contains an implied covenant of good faith and fair dealing.

81.     The Defendant, Nissim, by its actions as detailed herein, has failed to act in good faith and has not dealt fairly with the Plaintiff, ClearPlay.

82.     As a result of the Defendant's lack of good faith and failure to deal fairly with the Plaintiff, ClearPlay, ClearPlay has been damaged.

WHEREFORE, Plaintiff demands judgment against Nissim for damages in excess of $5,000,000.00, plus interest, costs, punitive damages upon a proper showing, and any and all other relief as this Court deems just and proper.

COUNT VI – VIOLATION OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE
PRACTICES ACT

83.   Plaintiff, ClearPlay realleges and incorporates herein by reference the allegations contained in paragraphs 1 through 49 above as though fully set forth herein.

84.   The Defendant, Nissim, by the following acts, has engaged in unfair and deceptive business practices, contrary to Florida law and in violation of Fla. Stat. § 501.204:

a.   Nissim entered into the November 2005 License Agreement in bad faith and never had any intention to create a standard in the industry for offensive content specifications. This is evidenced by the fact that Nissim, shortly after entering into the License Agreement, amended the offensive content specifications and did so with the express intent to make it impossible for ClearPlay to comply with the offensive content specifications and/or to make ClearPlay's product obsolete,

b.   Nissim never had any intent to create a "standard" for offensive content specifications, as evidenced by version 5.5 as set forth in the Agreement that was quickly changed to version 5.6 and, to ClearPlay's knowledge, Nissim has created at least a version 8.0 of such offensive content specifications.

c.   Nissim has refused to submit any mapping disputes to the Special Master for resolution according to the mechanism set forth in the License Agreement,

d.   Nissim has acted intentionally and unreasonably to interfere with, harass, or otherwise disrupt the business operations, business development activity, or customer relationships maintained by the Plaintiff, ClearPlay, with Target, BestBuy and other potential business partners,

e.   Nissim has threatened Target and BestBuy with litigation in the nature of patent infringement when Nissim was aware of and knew that the ClearPlay DVD players sold at BestBuy and at Target were not sold in breach of the parties' License Agreement,

f.   Nissim has threatened Target and Best Buy with litigation in the nature of patent infringement when Nissim was aware, at all times, that ClearPlay had a valid license to sell ClearPlay DVD Players and filters under the License Agreement and that the motion to enforce the settlement agreement brought by Nissim in Case No. 04-21140-CIV-HUCK, did not seek to void or terminate said License, and

g.   Nissim threatened Best Buy with patent litigation when it knew that one of the patent claims specifically set forth as a count in a draft Complaint sent to BestBuy had previously been ordered to reexamination by the United States Patent and Trademark Office.

85.     As evidenced by the intentional content as set forth immediately above, Nissim has engaged in unfair and deceptive business practices to the detriment and damage to the Plaintiff, ClearPlay.

86.     As a result of Nissim's unfair and deceptive practices, the Plaintiff, ClearPlay has been damaged.

WHEREFORE, Plaintiff demands judgment against Nissim for damages in excess of $5,000,000.00, plus interest, costs, attorney's fees and punitive damages upon a proper showing, and any and all other relief as this Court deems just and proper.

## COUNT VII - INJUNCTIVE RELIEF

87.     ClearPlay realleges and incorporates herein by reference the allegations contained in paragraphs 1 through 49 above as though fully set forth herein.

88.     Economically advantageous business relationships, capable of ascertainment, existed between ClearPlay and numerous clients, including but not limited to Target and Best Buy, in which ClearPlay had existing and/or prospective legal rights.

89.     ClearPlay has performed its obligations under the economically advantageous business relationships with its clients, including but not limited to Target and BestBuy.

90.     Nissim was not a party to any of the contractual or advantageous business relationships between ClearPlay and its clients and had, in fact, granted a license to ClearPlay to use the technology covered by the Nissim patents and thus had no right, justification or privilege to interfere with these relationships.

91.     Nissim at all times material to this action had knowledge of relationships between ClearPlay and its clients, including but not limited to Target and BestBuy.

92.     Nissim intentionally, unjustifiably and in bad faith has interfered with the advantageous business relationships existing between ClearPlay and its clients by, *inter alia*, falsely stating to Target and BestBuy and to other clients through publication of a press release on Nissim's website that the ClearPlay DVD players and related filtering technology are not covered by a Nissim license and by stating that ClearPlay is engaged in the sale and distribution of DVD players and/or related filtering technology which are not covered by a Nissim license.

93.     As a direct result of Nissim's intentional, unjustified and bad faith interference with the advantageous business relationships existing between ClearPlay and its clients, including but not limited to Target and BestBuy, ClearPlay's business relationships have been disrupted, and ClearPlay has suffered and continues to sustain damages that are not capable of ascertainment.

94.     ClearPlay has sustained irreparable harm or injury as a result of Nissim's intentional, unjustifiable and bad faith conduct.  ClearPlay continues to suffer irreparable harm from loss of its customer goodwill and competitive standing in the marketplace as a result of Nissim's conduct.

95.     Pursuant to the License Agreement between ClearPlay and Nissim, Nissim is paid handsome royalties for the sale of any ClearPlay DVD players in the marketplace.   Thus, the issuance of permanent injunctive relief would not be detrimental to the interests of the Defendant, Nissim, who continues to demand, receive, and accept payment of royalties from ClearPlay resulting from the sale of the licensed DVD players and ClearPlay movie indexes or filters.

96.     The issuance of a permanent injunction preventing and enjoining Nissim from directly or indirectly interfering with ClearPlay's advantageous business relationships would clearly serve the public interest.

WHEREFORE, Plaintiff, ClearPlay, demands that the Court issue a permanent injunction enjoining Nissim from directly or indirectly contacting Target and BestBuy and ClearPlay's other business partners or prospective business partners and from stating or suggesting that the ClearPlay DVD players offered for sale are not duly licensed and/or infringe on Nissim's patents and enjoining Nissim from issuing press releases stating that the ClearPlay DVD players are not duly licensed and/or infringe on Nissim's patents, together with interest, costs and such other and further relief as this Court deems just and proper.

<u>DEMAND FOR JURY TRIAL</u>

The Plaintiff, ClearPlay, Inc., demands a jury trial for all issues so triable as a matter of right.

Respectfully submitted,

/s David S. Wood_____
David S. Wood
Florida Bar. No. 289515
Christa C. Werder
Florida Bar No. 76627
BAKER & HOSTETLER LLP

200 South Orange Avenue, Suite 2300
Orlando, Florida  32802-0112
Telephone:  (407) 649-4000
Telecopier:  (407) 841-0168
Attorneys for Plaintiff ClearPlay, Inc.


**CERTIFICATE OF SERVICE**

I hereby certify that on April 15th, 2008, I electronically filed the foregoing with the

Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to:

John C. Carey, Esq.
Carey Rodriguez Greenberg & Paul, LLP
1395 Brickell Avenue, Suite 700
Miami, Florida 33131

/s David S. Wood_____
David S. Wood


090916, 000002, 501834065.3

28