UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-81170-CIV-HUCK/O'SULLIVAN

CLEARPLAY, INC.,

    Plaintiff,
v.

NISSIM CORP. and
MAX ABECASSIS,

    Defendants.
_____/

## ORDER GRANTING CLEARPLAY'S MOTION TO DISMISS

This matter is before the Court on ClearPlay, Inc.'s Motion to Dismiss Counts I and II of Nissim Corp. and Max Abecassis's Counterclaim (Doc. #215), filed December 7, 2009. The Court held a hearing on the motion on May 19, 2010. For the reasons stated in open court and below, the Court grants ClearPlay's motion and dismisses Counts I and II of the counterclaims.

**I.**    **Background**

Nissim and ClearPlay have been engaged in litigation before this Court for several years. Nissim owns several patents relating to systems for filtering objectionable content from certain video media, such as DVDs. ClearPlay produces and sells DVD players, software, and filters that allow consumers to filter objectionable content from movies. Nissim first sued ClearPlay in 2004, accusing ClearPlay of, among other things, infringing several of its patents. *See Nissim v. ClearPlay*, No. 04-CV-21140 (S.D. Fla. filed May 13, 2004). The parties settled on the eve of trial in November 2005. As part of their settlement, the parties entered into a settlement and license agreement that granted ClearPlay a limited license to Nissim's patents in return for payment of royalties to Nissim.

This particular case relates to a dispute stemming from the settlement and license agreement. After the parties entered into the agreement, Nissim claimed that ClearPlay was violating the terms of the agreement. In June 2007, Nissim filed a motion to enforce the settlement and license agreement. While that motion was pending, Nissim contacted Target,

which was selling ClearPlay DVD players, and claimed that ClearPlay's products were not covered by the license agreement and therefore infringed Nissim's patents. As a result, Target stopped selling the ClearPlay DVD players. In response, ClearPlay brought this lawsuit against Nissim in December 2007. ClearPlay's Third Amended Complaint (Doc. #185) accuses Nissim of tortious interference with contractual relationships, tortious interference with potential advantageous business relationships, breach of the license agreement, and violation of Florida's Deceptive and Unfair Trade Practices Act.[1]

Nissim and Max Abecassis[2] filed their Answer and Counterclaims (Doc. #206) in November 2009. According to the counterclaims, Nissim intends to enter the objectionable-content-control market with products of its own, and is seeking a declaratory judgment of noninfringement and invalidity with respect to two patents owned by ClearPlay—U.S. Patent No. 6,889,383 (Count I) and U.S. Patent No. 6,898,799 (Count II). In support of its request for declaratory relief, Nissim makes the following allegations:

> 11.  Directly and/or through CustomPlay, Nissim and Abecassis have been engaged in the business of commercializing aspects of Abecassis' inventions including the development of hardware and software for the customized playback of video as well as numerous content maps to be used with such hardware and software.
> 12.  Directly and/or through CustomPlay, Nissim and Abecassis are prepared to commercially release and are offering products and associated licenses to strategic partners, manufacturers, and distributors.
> 13.  Nissim promotes and intends to sell CustomPlay's products through Nissim's website.
> . . . .
> 20.  In or around the fall of 2008, the parties discussed and negotiated a written global settlement agreement of all pending litigation . . . . During those negotiations, the parties reached agreement in principle as to substantially all previously disputed terms with one major exception: ClearPlay refused to provide Nissim or its officers, affiliates or their customers a covenant not to sue regarding the ClearPlay patents, nor would ClearPlay alternatively agree that Nissim could have a right to terminate the licenses granted to ClearPlay, including the new licenses offered by Nissim, in the event that ClearPlay sued or threatened to sue

---

[1] ClearPlay's original Complaint was based on Nissim's communications to Target. The Third Amended Complaint is updated to include similar infringement allegations that Nissim made to Best Buy and Samsung in 2008.

[2] Max Abecassis is the President and CEO of Nissim and the inventor of Nissim's patents. For the sake of simplicity, this Order refers to both Nissim and Max Abecassis simply as Nissim.

>Nissim or its officers, affiliates or their customers for patent infringement. . . . Upon information and belief, because of ClearPlay's desire to assert the ClearPlay patents against Nissim and its officers, affiliates, or their customers, no global settlement agreement between the parties was reached.
>    21.   Since the issuance of the ClearPlay patents, ClearPlay has on multiple occasions represented to others involved in the industry for parental control technologies that ClearPlay will accuse CustomPlay's products of infringement and file suit.
>    22.   As a result of ClearPlay's conduct during negotiations over a global settlement agreement and based on ClearPlay's representations to others in the industry that it intends to assert its patents upon the release of CustomPlay's products, Nissim and Abecassis believe that they will be sued and/or subject to threats of suit for patent infringement by ClearPlay as soon as CustomPlay's products are commercially released and offered for sale by Nissim.

Counterclaims ¶¶ 11-13, 20-22.

## II.   Discussion

ClearPlay has moved to dismiss Nissim's patent counterclaims for the following three reasons. First, Nissim's allegations fail to establish declaratory judgment jurisdiction. Second, even if the Court has jurisdiction over Nissim's counterclaims, the Court should decline to exercise its jurisdiction. Third, Nissim's counterclaims fail to state a claim because they lack the specificity required by Rule 8 of the Federal Rules of Civil Procedure. The Court agrees that it should decline to exercise jurisdiction, and that Nissim's allegations fail to establish declaratory judgment jurisdiction. As a result, the Court does not reach the issue of whether Nissim has stated sufficient claims for noninfringement and invalidity.

### A.   Discretion to Decline to Exercise Jurisdiction

The Declaratory Judgment Act permits the Court to declare the rights and legal relations of a party "[i]n a case of actual controversy within its jurisdiction." 28 U.S.C. § 2201(a). A court has broad discretion, however, in deciding whether to exercise jurisdiction over claims for declaratory relief. "The Declaratory Judgment Act provides that a court *may* declare the rights and other legal relations of any interested party, not that it *must* do so." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 136 (2007) (emphasis in original, internal quotations omitted). Thus, a court has "unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286-88 (1995). "In the declaratory judgment

3

context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Id.*

Defendants in patent cases often seek a declaratory judgment of noninfringement and invalidity with respect to patents they have been accused of infringing. Such claims are proper because they are clearly related to the plaintiff's claims. The situation is different, however, where the defendant seeks declaratory relief with respect to patents not at issue in the plaintiff's claims. In that situation, considerations of practicality and judicial economy may weigh against allowing such claims to proceed. For example, in the patent case *BriteSmile, Inc. v. Discus Dental, Inc.*, No. C 02-03220, 2005 WL 3096275 (N.D. Cal. Nov. 18, 2005), the court declined to exercise jurisdiction over counterclaims for declaratory relief with respect to unrelated patents, citing reasons of judicial economy: the case was more than three years old, and the court had already construed the disputed terms of the patents at issue. *See id.* at *4 ("[E]xercising jurisdiction over these declaratory judgment counterclaims would unduly delay and complicate this patent litigation case.").

Even assuming Nissim can establish jurisdiction over its patent counterclaims,[3] the Court declines to exercise jurisdiction. For one thing, Nissim's counterclaims are wholly unrelated to ClearPlay's claims. ClearPlay has brought state law claims arising from the parties' settlement agreement. ClearPlay's claims relate only to ClearPlay's products and (potentially) to Nissim's patents. They have nothing to do with ClearPlay's patents or Nissim's yet-to-be-released product—the subjects of Nissim's counterclaims. In addition, allowing Nissim to inject claims regarding entirely new patents and products would substantially complicate this case. In fact, it would make a patent case out of a case that the Federal Circuit recently recognized may not require the resolution of any issues of patent law. *See ClearPlay, Inc. v. Abecassis*, 602 F.3d 1364, 1366-69 (Fed. Cir. 2010) (finding that the Eleventh Circuit—not the Federal Circuit—has jurisdiction over Nissim's appeal of a preliminary injunction in this case, because ClearPlay's claims do not arise under patent laws). Nissim's patent counterclaims could also cause substantial delay, as the Court would need to construe any disputed terms in ClearPlay's patents.[4]

---

[3]   *See infra* Part II.B for a discussion of the deficiencies in Nissim's counterclaims.

[4]   Unlike ClearPlay's patents, the Court has already construed Nissim's patents in three separate claim construction orders. *See Nissim Corp. v. ClearPlay, Inc.*, No. 08-CV-80535, 2010 WL 1038511 (S.D. Fla. Mar. 19, 2010); *Nissim Corp. v. ClearPlay, Inc.*, No. 04-CV-21140,

4

Finally, as a practical matter, Nissim's declaratory judgment claims would be better off being brought in a separate lawsuit, because any appeals from this suit will go to the Eleventh Circuit instead of to the Federal Circuit.  *See id.*

In urging the Court to exercise jurisdiction, Nissim relies on ClearPlay's alleged statements to third parties that it will accuse CustomPlay's products of infringement and file suit. Nissim argues that dismissal of its counterclaims would leave ClearPlay free to continue making "baseless infringement threats to third parties" and would deny Nissim a forum to challenge ClearPlay's conduct.  Doc. #226, Response at 11.  Nissim cites *Capo Inc. v. Dioptics Medical Products, Inc.*, 387 F.3d 1352 (Fed. Cir. 2004), in which the Federal Circuit accepted a similar argument and reversed a district court's decision to decline declaratory judgment jurisdiction. *See id.* at 1355 ("[I]f the dismissal is sustained, Dioptics' president can continue his threats, inhibit Capo's commercial marketing, and escape resolution of the infringement issue."). However, the claims in *Capo* were brought by the plaintiff; they were not counterclaims. Declining to exercise jurisdiction over Nissim's counterclaims in this case does not prevent Nissim from filing a new lawsuit in the future (or even now) if it believes it can demonstrate the existence of an actual controversy.

Nissim also argues that ClearPlay's communication of infringement allegations will be at issue regardless of whether the Court hears its counterclaims.  According to Nissim:

> Each party has accused the other of false infringement allegations.  If Counter-Plaintiffs' counterclaims are denied a forum here, the fact remains that ClearPlay has communicated infringement accusations with far less foundation . . . than Nissim's warnings which ClearPlay challenges under its Third Amended Complaint.  Nissim will make use of that duplicity in defending itself against ClearPlay's tortious interference claims that Nissim's warnings were objectively baseless and in subjective bad faith.  Considering that ClearPlay's accusations will therefore be explored in Counter-Plaintiffs' *defense* of ClearPlay's complaint as a way of testing whether Counter-Plaintiffs acted "unjustifiably," it makes little sense to require that the formal evaluation of infringement and validity be undertaken later in a separately filed case.

Response at 11 (emphasis in original).  Nissim seems to be arguing—without citing any authority—that a defendant accused of tortious interference can use the plaintiff's bad faith

---

2005 WL 6225199 (S.D. Fla. Apr. 14, 2005); *Nissim Corp. v. ClearPlay, Inc.*, No. 04-CV-21140, 2005 WL 6220714 (S.D. Fla. Mar. 7, 2005).

conduct in another context as a defense. The Court does not see how ClearPlay's alleged bad faith conduct has any bearing on whether Nissim's alleged bad faith conduct was justifiable. This is not a barroom brawl in which ClearPlay threw the first punch.

Because Nissim's declaratory judgment counterclaims are wholly unrelated to ClearPlay's claims and would unnecessarily complicate and delay the resolution of this case, the Court declines to exercise jurisdiction over them.

### B. Lack of Declaratory Judgment Jurisdiction

In order for this Court to have jurisdiction over claims for declaratory relief, there must be a case or controversy within the meaning of Article III. *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). Before *MedImmune*, the Federal Circuit[5] applied a two-prong test in patent cases to determine the existence of declaratory judgment jurisdiction. The first prong examined "whether conduct by the patentee creates a reasonable apprehension on the part of the declaratory judgment plaintiff that it will face an infringement suit." *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1379 (Fed. Cir. 2007). The second prong examined "whether conduct by the declaratory judgment plaintiff amounts to infringing activity or demonstrates concrete steps taken with the intent to conduct such activity." *Id.*

In *MedImmune*, the Supreme Court rejected the first prong of the Federal Circuit's test as a strict requirement, and thus relaxed the test for declaratory judgment jurisdiction in patent cases. *See MedImmune*, 549 U.S. at 132 n.11. The Supreme Court also restated its totality-of-the-circumstances test: the parties' dispute must be "definite and concrete, touching the legal relations of parties having adverse legal interests," "real and substantial," and "admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Id.* at 127. "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.*

In the wake of *MedImmune*, the Federal Circuit has issued several opinions helping to define the scope of declaratory judgment jurisdiction in patent cases. Although the Supreme

---

[5] Even though the Eleventh Circuit would have jurisdiction over any appeals from this case, the Court looks to Federal Circuit cases for guidance because of its considerable experience and expertise in patent cases.

Court rejected the requirement that a patentee's conduct create a "reasonable apprehension" of suit, the Federal Circuit has reiterated that a party seeking declaratory relief generally must be able to point to some affirmative acts by the patentee to assert rights under a patent. *See SanDisk*, 480 F.3d at 1380-81 ("In the context of conduct prior to the existence of a license, declaratory judgment jurisdiction generally will not arise merely on the basis that a party learns of the existence of a patent owned by another or even perceives such a patent to pose a risk of infringement, without some affirmative act by the patentee."). In addition, the second prong— "whether there has been meaningful preparation to conduct potentially infringing activity[—] remains an important element in the totality of the circumstances which must be considered in determining whether a declaratory judgment is appropriate." *Cat Tech LLC v. TubeMaster, Inc.*, 528 F.3d 871, 880 (Fed. Cir. 2008).

As the party seeking declaratory relief, Nissim bears the burden of establishing that declaratory judgment jurisdiction exists. *See Benitec Australia, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1344 (Fed. Cir. 2007). ClearPlay argues that Nissim has not met its burden because it has failed to allege acts by either party sufficient to show that there is an actual case or controversy. More specifically, ClearPlay argues that Nissim has failed to allege sufficient (1) affirmative acts by ClearPlay to enforce its patent rights or (2) preparations by Nissim to conduct potentially infringing activity.

### 1. Lack of Allegations Regarding Affirmative Acts by ClearPlay

Nissim alleges that ClearPlay has expressed an intent to bring patent claims against it in two separate ways: (1) by refusing to grant Nissim a covenant not to sue during their settlement negotiations; and (2) by representing to third parties in the objectionable-content-control industry that it will accuse CustomPlay's products of infringement and file suit.

#### a. ClearPlay's Refusal to Grant Nissim a Covenant Not to Sue

Nissim and ClearPlay engaged in settlement negotiations in the fall of 2008 in an effort to settle all pending litigation. Nissim alleges that during the negotiations ClearPlay refused to provide Nissim a covenant not to sue regarding the ClearPlay patents, nor would it alternatively agree that Nissim could have a right to terminate the licenses granted to ClearPlay in the event ClearPlay sued or threatened to sue Nissim. According to Nissim, ClearPlay's refusal scuttled the parties' settlement negotiations and helps to demonstrate the existence of an actual controversy.

ClearPlay's refusal to grant Nissim a covenant not to sue may be considered among the totality of the circumstances in determining where there is declaratory judgment jurisdiction. Standing alone, however, it is insufficient. *See Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1341 (Fed. Cir. 2008) ("[T]hough a defendant's failure to sign a covenant not to sue is one circumstance to consider in evaluating the totality of the circumstances, it is not sufficient to create an actual controversy—some affirmative actions by the defendant will also generally be necessary."). There must be some other affirmative act by ClearPlay that would support declaratory judgment jurisdiction.

### b. ClearPlay's Statements to Third Parties

Nissim also points to ClearPlay's alleged communications of baseless infringement allegations to third parties in the objective-content-control industry. Statements by a patentee, including to third parties, that it will sue a potential infringer certainly can give rise to declaratory judgment jurisdiction. Indeed, the Declaratory Judgment Act is meant to provide a cause of action in this type of situation, where, "[g]uerrilla-like, the patent owner attempts extra-judicial patent enforcement with scare-the-customer-and-run tactics that infect the competitive environment of the business community with uncertainty and insecurity." *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 735 (Fed. Cir. 1988). But not all statements that a patentee will sue a potential infringer give rise to declaratory judgment jurisdiction. For example, in *Innovative Therapies, Inc. v. Kinetic Concepts, Inc.*, 599 F.3d 1377, (Fed. Cir. 2010), the Federal Circuit found a lack of declaratory judgment jurisdiction even though a patentee's employees told a competitor's employees that if the competitor launched a certain new product the odds the patentee would sue were "100%." *Id.* at 1381. The statements were made during conversations initiated by the competitor's employees at a time when the patentee's employees had not seen the product or evaluated it for infringement. The district court determined the conversations to be "a 'sub rosa' effort to create jurisdiction 'by initiating telephone conversations to employees of the patentee who were not in decision-making positions and who were not informed of the real purpose behind the conversations.'" *Id.* The district court dismissed the declaratory judgment claims, and the Federal Circuit affirmed.

Nissim alleges that "ClearPlay has on multiple occasions represented to others involved in the industry for parental control technologies that ClearPlay will accuse CustomPlay's products of infringement and file suit." Counterclaims ¶ 21. But as ClearPlay points out,

Nissim's allegations lack reference to any date, fail to identify the third parties with whom ClearPlay allegedly communicated, and fail to specify the CustomPlay product that was allegedly being discussed. In fact, Nissim's allegations lack any factual details. They do not show any of the circumstances surrounding ClearPlay's communications, such as whether the ClearPlay employees who allegedly made the statements were in decision-making positions, when the statements were made, or the purpose of the conversations. ClearPlay's alleged statements could be like those in *Innovative Therapies* or they could be true threats to Nissim. It is impossible to tell from Nissim's allegations. In short, there are not enough details about ClearPlay's actions to show a controversy of sufficient "immediacy and reality" to find declaratory judgment jurisdiction.

### 2. Lack of Allegations Regarding Nissim's Preparation to Conduct Potentially Infringing Activity

ClearPlay also argues that Nissim fails to show an actual case or controversy because the allegations fail to show that it has undertaken meaningful preparation to conduct potentially infringing activity. Significantly, Nissim is not seeking a declaratory judgment as to products it currently makes or sells. Rather, it is seeking a declaratory judgment as to products it plans to sell in the future.

"If a declaratory judgment plaintiff has not taken significant, concrete steps to conduct infringing activity, the dispute is neither 'immediate' nor 'real' and the requirements for justiciability have not been met." *Cat Tech*, 528 F.3d at 881. "[A]lthough a party need not have engaged in the actual manufacture or sale of a potentially infringing product to obtain a declaratory judgment of noninfringement, there must be a showing of 'meaningful preparation' for making or using that product." *Id.* "In general, the greater the length of time before potentially infringing activity is expected to occur, the more likely the case lacks the requisite immediacy." *Cat Tech*, 528 F.3d at 881 (internal quotations omitted). Similarly, the greater the variability of the potentially infringing product, particularly as to its potentially infringing characteristics, the more likely the case lacks the requisite reality, and that the Court's judgment would be purely advisory. *See Sierra Applied Scis., Inc. v. Advanced Energy Industries, Inc.*, 363 F.3d 1361, 1379 (Fed. Cir. 2004).

Courts have dismissed claims for declaratory judgment where the party seeking relief has not shown that it will begin its potentially infringing activity soon after filing its claims. Likewise, courts have dismissed claims where the design for a potentially infringing product is

not yet finalized. For example, in *Sierra*, there was no declaratory judgment jurisdiction where the party seeking declaratory relief did not build a prototype of its product until a year after filing its complaint, and the design was "fluid and indeterminate" when it filed the complaint. *Id.*; *see also Lang v. Pac. Marine & Supply Co.*, 895 F.2d 761, 764 (Fed. Cir. 1990) (finding lack of jurisdiction where the "accused infringing ship's hull would not be finished until at least 9 months after the complaint was filed"). In *Mega Lift Sys., LLC v. MGM Well Servs., Inc.*, No. 08-CV-420, 2009 WL 1851919 (E.D. Tex. June 29, 2009), the court held that there was no declaratory judgment jurisdiction where the plaintiff intended to sell new designs of its product but gave no indication of when it would manufacture or sell the new designs or whether the designs were final. *See id.* at *4 ("[T]he Court cannot determine whether Mega Lift is ready to infringe tomorrow or next year. . . . It would [be] unfair to subject MGM to a declaratory judgment action where Mega Lift may completely redesign its products mid-litigation in response to an adverse claim construction ruling.").

Nissim's allegations lack sufficient factual detail about its preparations to show that the Court has declaratory judgment jurisdiction. In its counterclaims, Nissim simply states: "Directly and/or through CustomPlay, Nissim and Abecassis are prepared to commercially release and are offering products and associated licenses to strategic partners, manufacturers, and distributors." Counterclaims ¶ 12. As in *Mega Lift*, Nissim does not say when it plans to manufacture or sell the products. Nissim argues that it is already "offering products and associated licenses to strategic partners, manufacturers, and distributors," but Nissim's counsel acknowledged during the May 19, 2010 hearing—several months after filing its counterclaims—that it does not have any contracts with potential strategic partners or manufacturers. *See* Doc. #249, Motion to Dismiss Hr'g Tr. 3-5. Nor is Nissim selling the products through its website. *See id.* at 5. There is little indication that any potentially infringing products will be ready to sell in the near future. In addition, although Nissim's statement implies that its product design may be final, it is not clear. Without more details, it is impossible to tell whether Nissim has taken sufficient steps to engage in potentially infringing activity. Considering the deficiencies in Nissim's allegations regarding the conduct of either party, Nissim has failed to show that the Court has jurisdiction over its patent counterclaims.[6]

---

[6] The Court notes that ordinarily it would grant a claimant seeking a declaratory judgment leave to amend so that it could try to establish jurisdiction. However, that is not appropriate

### III. Conclusion

Accordingly, ClearPlay's motion to dismiss is GRANTED, and Counts I and II of Nissim's counterclaims are dismissed without prejudice.

DONE and ORDERED in Chambers, Miami, Florida, May 27, 2010.

_____
Paul C. Huck
United States District Judge

**Copies furnished to:**
All Counsel of Record

---

here. That is because the Court has determined that it would decline to exercise its jurisdiction even if Nissim had adequately pled a claim establishing declaratory judgment jurisdiction.