UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 07-81170-CIV-HUCK/BANDSTRA

CLEARPLAY, INC.,

    Plaintiff,

v.

NISSIM CORPORATION and
MAX ABECASSIS,

    Defendants.

_____/

## ORDER GRANTING IN PART MOTION FOR SUMMARY JUDGMENT

This matter is currently before the Court on Defendants' Nissim Corporation and Max Abecassis' ("Nissim"[1]) Motion for Summary Judgment, (D.E. # 332, filed March 12, 2011). The Court held hearings on discrete issues raised by this Motion on August, 22, 2011 (in person) and on August 30, 2011 (by telephone). Nissim's principal argument in support of summary judgment is that its warnings of patent infringement were not, as a matter of law, made in bad faith and, therefore, the doctrines of patent law preemption and *Noerr-Pennington* immunity bar ClearPlay's state law claims premised on these warnings. For the reasons discussed below, the Court finds that federal patent law preempts ClearPlay's state tortious interference claims and preempts in part its state unfair competition claim and grants Nissim summary judgment on this issue. The Court also denies without prejudice Nissim's request for summary judgment as to ClearPlay's claim for breach of contract to allow for further development of the factual record.

## I. BACKGROUND[2]

Defendant Nissim Corporation, founded and owned by co-Defendant Max Abecassis, holds patents in the area of video technology. At issue in this case and related cases before the

---

[1] Abecassis is the founder, President and CEO of Nissim and inventor of its patents. For the sake of simplicity and unless otherwise indicated, this Order refers to both Nissim and Abecassis as "Nissim."

[2] For further background see the Court of Appeals for the Federal Circuit and Court of Appeals for the Eleventh Circuit opinions and this Court's rulings in this and related cases. *See ClearPlay Inc. v. Max Abecassis & Nissim Corp.*, 602 F.3d 1364 (Fed. Cir. 2010); *Nissim Corp. v. ClearPlay, Inc.*, 374 Fed. Appx. 987 (Fed. Cir. 2010); *ClearPlay Inc. v. Nissim Corp.*, No. 10-13469, 2011 U.S. App. LEXIS 14072 (11th Cir. July 7, 2011); and this Court's prior orders from case numbers 04-CV-21140 and 08-CV-80535.

1

Court are two forms of such technology: 1) objectionable content control, and 2) industry-standard digital video disc ("DVD") specifications ("DVD Specifications").  ClearPlay produces and sells DVD players, software and objectionable content filters for DVD Players.

      A.  The 2004 Case and Enforcement Litigation

The tortured history of the parties' litigation begins in 2004 when Nissim sued ClearPlay for patent infringement alleging that ClearPlay had violated certain Nissim patents relating to technology for editing video programs based on content (Case No. 04-CV-21140 or the "2004 Case").  ClearPlay counterclaimed for a declaratory judgment of non-infringement and patent invalidity.  On the eve of trial, the parties settled and entered into a Settlement and License Agreement.  In this agreement Nissim granted ClearPlay a limited, non-exclusive license under the patents in suit to, among other things, make and sell, certain DVD Players provided that the Players' objectionable content filters "substantially complied" with Nissim's specifications for coding such content, which are called the CustomPlay[3] OC (Objectionable Content) Specifications.  Based on the settlement, on November 30, 2005, the Court dismissed the case and retained jurisdiction solely to enforce the terms of the Settlement and License Agreement. The Court's dismissal was with prejudice.  Unfortunately, rather than amicably resolving the parties' dispute, the settlement unleashed the torrent of litigation summarized here.

In 2007, ClearPlay began releasing products subject to the Settlement and License Agreement and soon thereafter Nissim asserted that these products did not comply with the agreement's terms.  On June 11, 2007, Nissim filed a Motion to Enforce the Settlement and License Agreement ("Motion to Enforce"), spawning what has been deemed the "Enforcement Litigation."  Nissim alleged that ClearPlay filters released for use with ClearPlay's CP-007-USB Players ("007 Players") did not comply with the terms of the Settlement and License Agreement, that the 007 Players also did not comply with the agreement, and that ClearPlay's royalty reports were deficient.  The first issue, upon the parties' consent, was referred to the Special Master, and regarding the last two issues, the Court found that ClearPlay had not materially breached the Settlement and License Agreement.

The Special Master determined that ClearPlay's filters substantially complied with Nissim's OC Specifications as required by the Settlement and License Agreement because an "artistic judgment" clause in the relevant portion of the agreement allowed ClearPlay to depart from the OC Specifications if in ClearPlay's judgment the material's relevance to the movie

---

[3] CustomPlay is a Nissim subsidiary.

2

outweighed its objectionableness.[4] On March 31, 2009, this Court "ratified and affirmed" the Special Master's report and recommendation and denied Nissim's Motion to Enforce. Nissim appealed all of the Court's rulings. On appeal, the Federal Circuit reversed with regard to the issue of ClearPlay's filters, holding that the "artistic judgment exception would swallow the . . . rule" and remanded to determine, consistent with its opinion, whether ClearPlay's filters substantially comply with the OC Specifications as required by the Settlement and License Agreement. *Nissim Corp. v. Clearplay, Inc.*, 374 Fed. Appx. 987, 992 (Fed. Cir. 2010). Nissim filed, and this Court denied, various motions to circumvent the process of returning the filter dispute to the Special Master. Therefore, the issue of the filters' compliance with the Settlement and License Agreement in light of the Federal Circuit's mandate is presently ripe and will proceed before the Special Master.

    B. This Action

At the same time as the Motion to Enforce, Nissim began the communications with third-party retailers and potential manufacturers of ClearPlay products that led to the instant case, 07-CV-81170. Nissim sent letters to Target, which was selling ClearPlay 007 Players, indicating that these players were not licensed under the Settlement and License Agreement and warning of an infringement action and posted a press release to the same effect. Target stopped selling the 007 Players. One of Nissim's letters to Target also warned of a different form of patent infringement. On December 10, 2007, ClearPlay filed the initial two-count complaint alleging tortious interference with its relationship with Target. The Court dismissed ClearPlay's complaint without prejudice, finding federal patent law preempted its claims.

In subsequent amended complaints, ClearPlay added claims based on Nissim's communications with other third parties. In early 2008 Nissim contacted Best Buy, which had agreed to carry another ClearPlay DVD player, CP-427-USB ("427 Player"), claiming that the 427 Players did not comply with the Settlement and License Agreement and infringed Nissim's patents and warning of an infringement action. In March of that year, BestBuy stopped selling 427 Players. In August 2008, Nissim contacted Samsung Electronics and repeated its allegation regarding ClearPlay's products' non-compliance with the Settlement and License Agreement, and ClearPlay alleges that as a result, Samsung discontinued business negotiations with

---

[4] Section 1.4 of the License Agreement requires, *inter alia*, that ClearPlay's filters be "in substantial compliance with the CustomPlay Specifications, it being recognized by the parties that application of the CustomPlay OC Specifications requires flexibility of artistic judgment within the overall goal of maintaining consistency."

3

ClearPlay. Subsequent amended complaints also added a breach of contract claim based on allegations of breach of various provisions of the Settlement and License Agreement and a claim for violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA").

Pursuant to Nissim's motion to dismiss ClearPlay's Second and Third Amended Complaints, the Court analyzed whether, in light of the federal pleading standard, ClearPlay's public assertions of patent infringement met the bad faith/objectively baseless standard required to avoid patent preemption. *See e.g. Globetrotter Software Inc. v. Elan Computer Group, Inc.*, 362 F.3d 1367, 1374 (Fed. Cir. 2004) ("State [tort] law claims . . . can survive federal [patent law] preemption only to the extent that those claims are based on a showing of 'bad faith' action in asserting infringement.") As Nissim repeatedly highlights in its current motion, the Court observed that the issue of the ClearPlay filters' compliance with the Settlement and License Agreement had, as the Enforcement Litigation showed, presented a "fairly close question;" hence, Nissim's notifications of ClearPlay's products' infringement were not "objectively baseless."[5] (D.E. # 190-1, Aug. 7, 2009, Hrg. Tr. at 22.) Nonetheless, the Court, confined to the four-corners of the Third Amended Complaint, found ClearPlay's allegations sufficient to avoid patent preemption.

While the parties litigated the motions to dismiss, ClearPlay filed a motion for preliminary injunction.[6] The Court granted the injunction, and on interlocutory appeal, the Federal Circuit found it lacked subject-matter jurisdiction because the case did not arise under patent law. *See ClearPlay Inc. v. Max Abecassis & Nissim Corp.*, 602 F.3d 1364, 1366 (Fed. Cir. 2010); 28 U.S.C. § 1295(a) (granting the Federal Circuit exclusive jurisdiction over district courts' final decisions under 28 U.S.C. § 1338, which grants district courts "original jurisdiction of any civil action arising under any Act of Congress relating to patents . . . .")

The Federal Circuit explained that section 1338 jurisdiction is conferred when either (1) federal patent law creates the cause of action—not the case here with purely state law claims—or (2) plaintiff's right to relief depends on resolution of a substantial question of federal law, which means that resolution of at least one of plaintiff's claims requires deciding an issue of federal patent law. *See* 602 F.3d at 1367 (citing and discussing *Christianson v. Colt Indus. Operating*

---

[5] At the time of this and the Court's other observations regarding the sufficiency of ClearPlay's bad faith allegations, the Federal Circuit had not yet issued its ruling. The Federal Circuit opinion, *Nissim Corp. v. Clearplay, Inc.*, 374 Fed. Appx. 987 (Fed. Cir. 2010), only strengthens this Court's prior pronouncements regarding Nissim's statements' lack of "objective baselessness."

[6] The grounds for ClearPlay's injunctive relief are not relevant to this order.

*Corp.*, 486 U.S. 800, 808-09 (1988)).  The Federal Circuit found that this case did not satisfy the second basis for section 1338 jurisdiction.  With regard to the tortious interference claims, each claim asserted a theory of relief that would not require the Court to address patent law.  *Id.* at 1368.  The Federal Circuit explained,

> For example, in each of those [tortious interference] claims ClearPlay asserts that Nissim falsely stated that the ClearPlay DVD players and related filtering technology were not covered by the license agreement.  Resolution of that issue would not require the court to address any patent law question; it would require only that the court consider the provisions of the license agreement in light of the DVD Players and filters sold by ClearPlay. . . . ClearPlay could prevail on its claims by showing that the assertions that ClearPlay's products are unlicensed were false, without regard to whether sale of the products, if unlicensed, would infringe Nissim's patents.  If ClearPlay could prove that its devices, even absent a license, did not infringe, that would be another arrow in its quiver, but even assuming the devices would infringe if unlicensed, ClearPlay would still have viable theories of liability under its complaint.

*Id.* at 1368–69.  The Federal Circuit transferred the case to the Eleventh Circuit, which affirmed the injunction.  *ClearPlay Inc. v. Nissim Corp.*, No. 10-13469, 2011 U.S. App. LEXIS 14072 (11th Cir. July 7, 2011).  The implication of the Federal Circuit's jurisdictional ruling for the application and scope of patent preemption is discussed below.

    C.  <u>The 2008 Case</u>

In 2008 Nissim again sued ClearPlay for patent infringement, alleging that ClearPlay's DVD Players, including the 427 Players, infringe four Nissim patents with regard to the Players' implementation of industry-standard DVD Specifications.  In this action, the 2008 Case, the Court ruled that the Settlement and License Agreement expressly excludes a license to implement the DVD Specifications and otherwise denied ClearPlay's Motion for Summary Judgment on multiple grounds unrelated to patent non-infringement or invalidity.  The Court also held a *Markman* hearing, following which it construed one contested claim term from one of the patents at issue.  Both the 2008 case and this case have been partially stayed, since November 24, 2009, pending the Federal Circuit's ruling in the Enforcement Litigation.

    D.  <u>Nissim's Present Motion for Summary Judgment</u>

Nissim has moved for summary judgment on all of ClearPlay's claims against it. ClearPlay's Third Amended Complaint asserts the following five counts: (1) Tortious Interference with Contractual Relationship (Target), (2) Tortious Interference with Contractual Relationship (Best Buy), (3) Tortious Interference with Potential Advantageous Business Relationships, (4) Breach of Contract (breach of various provisions of the Settlement and

5

License Agreement), and (5) Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") violation. In response, Nissim asserts that the Federal Circuit's patent preemption doctrine and *Noerr-Pennington* immunity bar all counts because the undisputed facts show that Nissim's warnings of patent infringement contained in letters to ClearPlay business partners as well as in press releases were not objectively baseless. ClearPlay's tortious interference claims are based exclusively on Nissim's public notifications of infringement, whereas the breach of contract and FDUTPA claim assert multiple theories of relief, some based on the warnings of patent infringement and others based on Nissim's conduct and legal positions related to the Settlement and License Agreement. Nissim also argues that it should be granted summary judgment on ClearPlay's FDUTPA and breach of contract claim for additional reasons.

## II.    FACTS[7]

On June 11, 2007, the same day it filed its motion launching the Enforcement Litigation, Nissim sent Target a letter "Re: Unlicensed ClearPlay DVD Players Infringement of Nissim U.S. Patents ['678]; ['945]; ['472]; ['013]; ['401]." These are the patents covered by the Settlement and License Agreement. The letter indicated that Target was currently selling the 007 Players and that

> As part of a settlement of prior patent infringement litigation, Nissim had previously granted ClearPlay a conditional license to sell certain DVD players that adopt the "CustomPlay Specifications" . . . . However, the CP007-USB DVD players and the ClearPlay filters used by the players <u>do not comply</u> with the required standards and therefore are not covered by the license.

(D.E. # 185-7, June 11, 2007 Letter.)[8] The letter goes on to specify that the 007 Player "does not operate as advertised" because it does not filter entire categories and levels of explicitness, which the menu indicates can be filtered. The letter provides formal notice to Target that the 007 Player "<u>is not licensed</u> by Nissim, and therefore that Target's sales and offers to sell the ClearPlay CP007-USB DVD Player constitute <u>infringements</u> of the above-identified Nissim patents" and requests that Target discontinue sale of the infringing 007 Players. Also that day, Nissim issued a press release announcing the filing of its Motion to Enforce and "providing formal notice to all retailers and other third parties that the ClearPlay DVD Player [007 Player] is not licensed [for failure to comply with the Settlement and License Agreement]" and warning

---

[7] ClearPlay disputes the veracity and implications of the statements made in the below-summarized Nissim communications but it does not dispute the communications' content.

[8] Nissim's Statement of Undisputed Facts (D.E. # 332-1) at times miscites the docket entries for Nissim's communications. The Court uses the current docket entry numbers for the communications, which are all attached to ClearPlay's Third Amended Complaint (D.E. # 185).

that sales of the 007 Player "constitute infringements of the Nissim patents." (D.E. # 185-10, June 11, 2007 Press Release.) On July 6, 2007, ClearPlay responded to Nissim's allegations in a letter to Target, stating that the 007 Player is "in full compliance with the settlement and license agreement." (D.E. # 185-12, July 6, 2007 Letter.)

On October 19, 2007, Nissim sent Target another letter Re: "Unlicensed DVD Devices Infringement of Nissim Patents ['678]; ['945]; ['013]; ['444]; ['805]; ['207]."[9] This letter differs significantly from the June 11th letter because it takes issue with Target's sale of DVD devices by manufacturers allegedly without a license from Nissim under its patents to implement the industry-wide DVD Specifications. It states that Target's private brand and certain identified third-party brands, all detailed in a list attached to the letter, are unlicensed because they do not hold a license for the DVD Specifications from Nissim. The October 19, 2007, letter also,

> demands that Target discontinue selling the unlicensed DVD players from ClearPlay model CP-007 USB unless and until those players are found by the court presiding over Nissim's current enforcement proceeding to be in compliance with the terms of the . . . Settlement and License Agreement. . . . The ClearPlay products are unlicensed and infringing products and should be removed from Target's shelves.

(D.E. # 185-13, Oct. 19, 2007 Letter.) Nissim's October letter explicitly threatens patent infringement litigation. It states that if Target does not provide certain written assurances within 14 days, then Nissim will file the attached complaint for patent infringement.

On November 1, 2007, ClearPlay sent Target a letter regarding Nissim's claims. The letter states that "ClearPlay believes that it is in compliance with all the material terms and conditions of the [Settlement and] License Agreement and has responded in kind to the Court [in the Enforcement Litigation]." (D.E. # 185-14, Nov. 1, 2007 Letter.) ClearPlay also informs Target that the 007 Player was designed and manufactured "to avoid the Nissim patents delineated in the DVD License and any of the essential claims in such patents."[10] One day later, on November 2, 2007, Target sent Nissim a letter, copying ClearPlay, indicating that pending the outcome of the Enforcement Litigation, it will cease sales of the ClearPlay players. (D.E. # 185-15, Nov. 2, 2007 Letter.) Nissim posted this news on its website. (D.E. # 185-17, Nov. 2, 2007 Press Release.)

---

[9] These are the patents covered by Nissim's DVD Specifications license.

[10] As indicated subsequently in this opinion, ClearPlay takes the position that both a) its products designed around Nissim's patents with regard to the DVD Specifications and b) Nissim's patents are not necessary for implementation of the DVD Specifications.

7

On January 14, 2008, Nissim sent ClearPlay a letter (copying Best Buy and entitled "Unlicensed and Infringing ClearPlay DVD Players and Filters") regarding ClearPlay's 427 Player, then offered for sale at Best Buy. The letter states,

> Regrettably, for the same reasons as in the case of the CP007 player, the new CP427 players and the ClearPlay filters used by the CPP427 players also <u>do not comply</u> with the requirements of the Settlement Agreement between Nissim and ClearPlay. . . . Nissim hereby provides ClearPlay formal notice that the CP427 Player is also <u>not covered by</u> Nissim's license, and therefore that ClearPlay's and Best Buy's sales and offers to sell the CP427 player constitute infringements of Nissim's patents. . . .

(D.E. # 185-19, Jan. 14, 2008 Letter.) On February 22, 2008, Nissim sent a letter directly to Best Buy referencing the January 14 letter, which "gave ClearPlay formal notice that the CP427 player is not in compliance with the terms of the Settlement [and License] Agreement . . . . and that continued sale of the CP427 player constitutes an unlicensed infringement of the Nissim patents." (D.E. # 185-20, February 22, 2008 Letter.) The letter goes on to state that Best Buy's own license for the DVD Specifications excludes from its scope devices sold by third-parties and, moreover, excludes devices that infringe U.S. patent ['401] (not one of the DVD Specifications patents). Nissim sent Best Buy a follow-up letter shortly thereafter, on March 19, 2008, entitled "Best Buy Sales of ClearPlay Players – Infringement of Nissim U.S. Patents ['678], ['945], ['013], ['401], ['444], ['805], and ['207]." (D.E. # 185-21, March 19, 2008 Letter.) This letter explicitly threatened infringement litigation and attached a draft complaint against Best Buy. On March 31, 2008, BestBuy agreed to suspend ClearPlay sales, and Nissim publicized this decision with a press release. (D.E. # 185-22, March 31, 2008 Press Release.)

Finally, later that year, Nissim approached Samsung, with whom ClearPlay was discussing manufacture of a DVD device using ClearPlay objectionable content software and filters. On August 11, 2008, Nissim sent Samsung a letter re: "Unlicensed and Infringing Products from ClearPlay Inc." (D.E. # 185-30 *filed under seal*, August 11, 2008 Letter.) The letter notes that Samsung's DVD Specifications license "expressly excludes the field of use under the Nissim Patent Portfolio known as 'CustomPlay' and excludes U.S. Patent ['401], which are infringed by use of ClearPlay enabled software and filters." On this basis, Nissim warns that Samsung would be liable for patent infringement were it to offer products utilizing ClearPlay's software and filters. ClearPlay's complaint alleges that as a result of Nissim's communication, Samsung discontinued negotiations with ClearPlay.

8

**III.   ANALYSIS**

   A. Patent Law Preemption

Nissim's principal argument in support of summary judgment is that its communications to third parties and the public at large contained warnings of patent infringement that were not objectively baseless and, therefore, ClearPlay's state law claims predicated on these warnings are barred by patent preemption and *Noerr-Pennington* immunity. In response, ClearPlay argues that Nissim's communications do not make statements related to Nissim patents, but, rather, statements regarding ClearPlay products' lack of compliance with the objectionable content specifications "OC Specifications" and Settlement and License Agreement, matters of contract interpretation. Thus, patent preemption and *Noerr-Pennington* immunity do not apply. In the alternative, ClearPlay claims, patent law only possibly preempts the communications' select statements regarding Nissim's patents. Before analyzing the patent law preemption of ClearPlay's claims, the Court will dispose of some preliminary issues.

   *1. Applicability of Noerr-Pennington Immunity*

Nissim argues that both the Federal Circuit's patent preemption doctrine and the doctrine of *Noerr-Pennington* immunity bar ClearPlay's claims. The Court questions whether *Noerr-Pennington* immunity provides protection separate or distinct from the doctrine of patent preemption for pre-litigation communications alleging patent infringement, such as Nissim's communications here. Under the *Noerr-Pennington* doctrine, those who petition the government, including adjudicatory bodies such as the courts, for redress are generally immune from antitrust liability. *See Professional Real Estate Investors, Inc. v. Columbia Pictures Indus. Inc.,* 508 U.S. 49, 56-57 (1993). The Eleventh Circuit and other Circuits have extended *Noerr-Pennington* immunity beyond actual litigation to pre-litigation communications. *See e.g. McGuire Oil Co. v. Mapco, Inc.,* 958 F.2d 1552, 1560 (11th Cir. 1992). In one of its seminal cases on patent preemption, the Federal Circuit explained that the higher bad faith standard for patent infringement allegations is rooted not only in the *Supremacy Clause* but also the *First Amendment* underpinnings of the *Noerr-Pennington* doctrine, which had been extended to pre-litigation communications.

> Our decision to permit state tort liability for only objectively baseless allegations of infringement rests on both federal preemption and the *First Amendment*. The federal patent laws preempt state laws that impose tort liability for a patentholder's good faith conduct in communications asserting infringement of its patent and warning about potential litigation. In addition, the same *First Amendment* policy reasons that justify the extension of *Noerr* immunity to pre-

9

> litigation conduct in the context of federal antitrust law apply equally in the context of state-law tort claims.

*Globetrotter Software, Inc., v. Elan Computer Group, Inc.*, 362 F.3d 1367, 1377 (Fed. Cir. 2004) (internal citation omitted). Moreover, the "objectively baseless" bad faith standard adopted by the Federal Circuit in *Globetrotter* is the same standard developed by the Supreme Court under the *Noerr-Pennington* doctrine. *See Professional Real Estate Investors, Inc.*, 508 U.S. at 60 (stating that in order to be the type of sham litigation required to escape *Noerr-Pennington* immunity, the litigation must be, first, "objectively baseless."); *Globetrotter*, 362 F.3d at 1377 ("Accordingly, the objectively baseless standard of *Professional Real Estate* applies to state-law claims based on communications alleging patent infringement.") Therefore, the Court concludes that a *Noerr-Pennington* immunity analysis is not needed here because that immunity would not provide any protection to Nissim's allegations of patent infringement beyond the protection already afforded by the Federal Circuit's patent preemption doctrine.[11] As such, the Court will only apply the Federal Circuit's patent preemption standard and case law in this opinion to determine whether ClearPlay's claims premised on Nissim's infringement warnings survive summary judgment.

### 2. *Scope of the Federal Circuit's Ruling*

ClearPlay's position that patent law does not preempt its claims is rooted in large part in the Federal Circuit's jurisdictional ruling in this case, discussed above. *See ClearPlay Inc. v. Max Abecassis & Nissim Corp.*, 602 F.3d 1364 (Fed. Cir. 2010). ClearPlay argues that patent law does not preempt its claims because the Federal Circuit held that this case does not arise under patent law. ClearPlay's argument impermissibly conflates jurisdiction with the defense of

---

[11] The Court also notes that while other Circuits have applied *Noerr-Pennington* immunity to bar not only anti-trust claims but also state tort claims, the Eleventh Circuit has done so only in a very specific context. *See McGuire Oil Co. v. Mapco, Inc.,* 958 F.2d 1552, 1560 (11th Cir. 1992) (holding that *First Amendment* underpinnings of the *Noerr Pennington* doctrine bar not only anti-trust claims but also a state unfair trade practices claim, which in that case was identical to the anti-trust claim); *Atico Int'l USA, Inc. v. Luv N' Care, Ltd.*, Case No. 09-60397-CIV, 2009 U.S. Dist. LEXIS 73540, at *11 (S.D. Fla. Aug. 19, 2009) (citing "many circuit courts" that have used the *Noerr-Pennington* doctrine to bar state law claims and finding that *Noerr-Pennington* immunity bars state law claims for tortious interference and FDUTPA violation); *but see Slip-n-Slide Records, Inc. v. TVT Records, LLC*, No. 05-21113-CIV, 2007 U.S. Dist. LEXIS 9014, at * 21–22 (S.D. Fla. Feb. 8, 2007) (declining to extent *Noerr-Pennington* immunity to bar state tort claims wholly unrelated to an anti-trust claim). Therefore, judicial restraint also motivates the Court's decision to apply only the Federal Circuit's patent preemption doctrine, not *Noerr Pennington* immunity, to ClearPlay's state law claims, which are unrelated to anti-trust law.

preemption. Even though the Court does not have subject matter jurisdiction under 28 U.S.C. § 1338, federal patent law may, nonetheless, preempt some or all of the state claims at issue. A footnote in the Federal Circuit's opinion confirms:

> [T]o the extent that the principles of federal patent law apply to this case and conflict with relevant state tort law, those principles would provide the rules of decision as a matter of conflict preemption, regardless of the forum.

602 F.3d at 1367 n.1. Moreover, while appellate jurisdiction rests with the Eleventh Circuit, the Court will apply the Federal Circuit's substantial body of case law regarding patent preemption to this case. *See Fisher Tool Co. v. Gillet Outillage*, 530 F.3d 1063, 1068 (9th Cir. 2008) (finding plaintiff's state tort and Lanham Act claims based on patent infringement warnings barred under Federal Circuit precedent).

### 3. Patent Preemption of ClearPlay's Tortious Interference and FDUTPA Claims

#### a) Application to Communications of Patent Infringement Involving Settlement and License Agreement Non-Compliance

The Court now turns to the key question of federal patent law preemption of ClearPlay's state tortious interference and statutory unfair competition claims based on Nissim's communications. As noted above, the facts alleged in support of the FDUTPA claim, unlike those underlying the tortious interference claims, extend beyond Nissim's communications of patent infringement. Therefore, the Court finds that if patent law protects Nissim's communications, then ClearPlay's tortious interference claims are preempted in whole and the the FDUTPA claim is preempted in part, that is, preempted as to the theory of relief based on Nissim's communications.[12]

Federal law may preempt state law in three ways—explicit preemption, field preemption, and conflict preemption—and the Federal Circuit has held that patent law "conflict preempts" state torts in the area of unfair competition that are based on conduct protected or governed by federal patent law. *Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318, 1332–35 (Fed. Cir. 1998). Federal patent law protects publicizing a patent in the marketplace and, related, communicating allegations of patent infringement. *Hunter Douglas, Inc.*, 153 F.3d at 1336;

---

[12] Nissim also argues that patent preemption should apply to ClearPlay's breach of contract claim. The Court acknowledges that certain theories of breach (breach of Sections 4.2 and 4.7, specifically) allege that Nissim violated the Settlement and License Agreement by making its communications of infringement. Because the Court presently reserves ruling on summary judgment as to ClearPlay's breach of contract claim to allow for further development of the record as to the facts supporting the contractual issues, the Court also declines to rule at present on the issue of patent preemption of certain theories of breach of contract.

11

*Mikohn Gaming Corp. v. Acres Gaming, Inc.,* 165 F.3d 891, 897 (Fed. Cir. 1998); *see also Dominant Semiconductors Sdn. Bhd. v. OSRAM GmbH*, 524 F.3d 1254, 1258 (Fed. Cir. 2008) (finding that federal patent law preempted unfair competition claims as well as tortious interference claims all based on competitor's third-party letters asserting patent infringement). However, patent law protects this conduct only if undertaken not in bad faith. Bad faith must be alleged and ultimately proven, even if bad faith is not an element of the state law claim, in order to escape preemption by federal patent law. *Dominant Semiconductors*, 524 F.3d at 1260.

ClearPlay argues that patent law does not protect Nissim's communications to its business partners because these communications asserted non-compliance with the Settlement and License Agreement, a contractual issue unrelated to Nissim's patent rights and ClearPlay's business partners' alleged infringement.[13] The Court disagrees. The issues of ClearPlay's products' (specifically, its filters') non-compliance with the Settlement and License Agreement and these same products' infringement of Nissim's patents are closely intertwined. Nissim's theory in its third-party communications and press releases summarized above was that ClearPlay's products do not comply with the terms of the Settlement and License Agreement, and therefore, are unlicensed and infringe Nissim's patents. The Court finds that this theory makes perfect sense. The Court dismissed Nissim's claims for infringement and ClearPlay's counterclaims for non-infringement and patent invalidity in the 2004 case with prejudice. Therefore, if ClearPlay's products were found to be outside the scope of the Settlement and License Agreement, Nissim could also reasonably argue that the products infringe the patents covered by the Agreement.

The Court acknowledges that the application of the Federal Circuit's patent preemption doctrine to a patent holder's communications alleging infringement based on a licensee's products' non-compliance with a settlement and license agreement seems to be an issue of first impression. None of the Federal Circuit's decisions in this area concerns allegations of patent infringement based on non-compliance with a license agreement, particularly a settlement and license agreement. Nonetheless, the Court thinks that the rationale behind patent preemption applies with equal force in such situations. The purpose of the doctrine is protection of a patent-

---

[13] ClearPlay also argues that Nissim's communications made statements "disparaging ClearPlay's products" and "mischaracterizing" the parties' litigation before this Court. The Court finds that the statements to which ClearPlay is referring, such as statements regarding the operation of ClearPlay's filters and the course of the 2004 case, are part and parcel of Nissim's allegations that ClearPlay's products do not comply with the Settlement and License Agreement and, hence, are infringing.

12

holder's good faith assertion of its statutory rights. *See Hunter Douglas, Inc.*, 153 F.3d at 1336 (citing and quoting, *inter alia*, *Virginia Panel Corp. v. MAC Panel Co.*, 133 F.3d 860, 869 (Fed. Cir. 1997) ("[A] patentee must be allowed to make its rights known to a potential infringer so that the latter can determine whether to cease its allegedly infringing activities, negotiate a license if one is offered or decide to run the risk of liability and/or the imposition of an injunction."); *Virtue v. Creamery Package Mfg. Co.*, 227 U.S. 8, 37–38 (1913) ("Patents would be of little value if infringers of them could not be notified of the consequences of infringement or proceeded against in the courts. Such action considered by itself cannot be said to be illegal.")); *see also Zenith Elecs. Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1353 (Fed. Cir. 1999). Nissim, like any other patent holder, was allowed to pursue its rights in good faith without fear of liability under state tort law. *See Fisher Tool Co. v. Gillet Outillage,* 530 F.3d 1063, 1068 (9th Cir. 2008) ("The purpose of the bad-faith requirement is to permit the patent-holder to assert his rights without fear that he might thereby violate . . . state tort laws.") In this case, Nissim could not have realistically warned of or alleged patent infringement by Target, Best Buy and/or Samsung without addressing ClearPlay's non-compliance with the Settlement and License Agreement. Therefore, the Court finds that federal patent law bars imposing liability on Nissim for communicating its warnings of license non-compliance and patent infringement[14] so long as these warnings were not made in bad faith.

The Court reiterates that its decision finding ClearPlay's claims predicated on Nissim's notifications of license non-compliance and infringement potentially preempted does not conflict with the Federal Circuit's opinion in this case. There, the court found, for purposes of determining subject matter jurisdiction and based solely on the complaint's allegations, that each of ClearPlay's claims could theoretically be resolved without addressing patent law questions.

---

[14] The Court notes that the majority of these communications were made in Nissim's letters— that is, its letter to ClearPlay (the January 14, 2008 letter copying Best Buy) and its letters to ClearPlay retailers and manufacturers (June 11, 2007 letter to Target, October 19, 2007 letter to Target, February 22, 2008 letter to Best Buy, March 19, 2008 letter to Best Buy, and August 11, 2008 letter to Samsung). However, Nissim also communicated its patent rights and allegations of license non-compliance and infringement in press releases, which are also protected under patent law. Even Nissim's broad statement in its June 11, 2007 press release "providing formal notice to all retailers and other third parties" that the 007 Player was not compliant with the Settlement and License Agreement and warning that sales of this Player constitute infringement is protected so long as it was not made in bad faith. *See Globetrotter Software, Inc. v. Elan Computer Group*, 362 F. 3d 1367, 1377 (Fed. Cir. 2004) (stating federal patent law preempts state law that punishes merely "publicizing a patent in the marketplace[,] unless the plaintiff can show that the patentholder acted in bad faith.")(internal citation omitted).

13

*See ClearPlay, Inc. v. Nissim Corp.*, 602 F.3d 1364, 1367–69 (Fed. Cir. 2010). Under the exacting test for § 1338 jurisdiction "resolution of a patent law issue must be necessary to every theory of relief under at least one claim," *id.* at 1369; whereas, under the test for patent preemption, the inquiry is whether federal patent law protects the conduct for which plaintiff seeks relief under state law.

### b) Bad Faith in Communicating Patent Infringement Involving Settlement and License Agreement Non-Compliance

The bad faith required to avoid patent preemption encompasses both objective and subjective considerations. *Mikohn Gaming Corp. v. Acres Gaming, Inc.,* 165 F.3d 891, 897 (Fed. Cir. 1998). However, the bad faith standard cannot be satisfied unless the infringement allegations and/or publicization of the patent were "objectively baseless." *Globetrotter Software, Inc. v. Elan Computer Group*, 362 F. 3d 1367, 1375 (Fed. Cir. 2004); *Dominant Semiconductors Sdn. Bhd. v. OSRAM GmbH*, 524 F.3d 1254, 1260 n.5 (Fed. Cir. 2008); *see also 800 Adept, Inc. v. Murex Securities Ltd.*, 539 F.3d 1354, 1370 (Fed. Cir. 2008) ("Absent a showing that the infringement allegations are objectively baseless, it is unnecessary to reach the question of the patentee's intent.") Objectively baseless allegations are ones for which "no reasonable litigant could realistically expect success on the merits." *800 Adept, Inc.*, 539 F.3d at 1370 (quoting *Professional Real Estate Investors, Inc. v. Columbia Pictures Indus. Inc.,* 508 U.S. 49, 60 (1993)). The Federal Circuit has stated that the party seeking to establish objective baselessness must offer "clear and convincing evidence" that the patentee had "no reasonable basis to believe that its patent claims were valid or that they were infringed." *800 Adept*, 539 F.3d at 1370. The Federal Circuit has also indicated that a successful outcome in an underlying suit for infringement obviates a finding of objective baselessness; although, an unsuccessful outcome does not necessarily support objective baselessness. *See Dominant Semiconductors*, 524 F.3d at 1261.

The Court finds that the record before it, including the proceedings to date in the Enforcement Litigation, establishes that Nissim's communications regarding license non-compliance and patent infringement were not objectively baseless. The Federal Circuit reversed this Court's and the Special Master's determination that ClearPlay's filters did not violate the Settlement and License Agreement's requirement of substantial compliance with Nissim's objectionable content specifications. The Federal Circuit's ruling lends support to Nissim's position that it had a reasonable basis to believe that ClearPlay's filters, and hence its products, did not comply with the Settlement and License Agreement. Even before the Federal Circuit

ruled, the Court concluded that the history and course of the Enforcement Litigation demonstrated that the filter compliance issue presented a close question, and, hence, Nissim's position could not be "objectively baseless." The Court also finds that it was not objectively baseless for Nissim to assert that ClearPlay's business partners would infringe Nissim's patents if they sold or manufactured the ClearPlay products not in compliance with the Settlement and License Agreement's requirements. The Settlement and License Agreement was an agreement to settle the 2004 infringement case, which the Court dismissed with prejudice. Therefore, Nissim had a reasonable basis to assert that ClearPlay products that do not comply with the Settlement and License Agreement would infringe the patents covered by said agreement.

ClearPlay's argument to the contrary is without merit. ClearPlay argues that it was objectively baseless for Nissim to state that ClearPlay's products were "unlicensed" because the Settlement and License Agreement was still in effect between them, and, hence, its products were "licensed." ClearPlay's argument and interpretation of "unlicensed" not only misses the point of Nissim's communications but is also belied by the language of these communications. Nissim's communications notify of its belief that ClearPlay's products are unlicensed because they "<u>do not comply</u> with the required standards [of the Settlement and License Agreement]" (D.E. 185-7, June 11, 2007 Letter); "<u>do not comply</u> with the requirements of the Settlement [and License] Agreement between Nissim and ClearPlay" and "[are] <u>not covered by</u> Nissim's license" (D.E. # 185-19, January 14, 2008 Letter.). Nissim does not deny the existence of the Settlement and License Agreement, only that the products fall outside the license granted in that agreement.

Based on the foregoing, the Court concludes that Nissim's communications that ClearPlay's products do not comply with the Settlement and License Agreement and hence ClearPlay and those who sold or manufactured these products would infringe its patents were not objectively baseless as a matter of law. Therefore, patent law preempts ClearPlay's tortious interference claims, which are premised in whole on these communications (Counts I, II and III of the Third Amended Complaint), and preempts the portion of ClearPlay's FDUTPA claim (Count V) premised on the same.

            c)  Allegations of Infringement re: Implementation of DVD Specifications

Nissim also asserts that its communications warned of another form of patent infringement. In addition to alleging that ClearPlay's products infringed for failure to comply with the Settlement and License Agreement, Nissim says that its communications also alleged that ClearPlay's products infringed because they use industry-standard digital video disc ("DVD") specifications ("DVD Specifications"), for which Nissim's patents are necessary,

15

without a license from Nissim. Nissim asserts that these allegations of DVD Specifications infringement were also not objectively baseless and hence, patent preemption should bar ClearPlay's claims based on these allegations. By way of background, the Court notes that approximately ninety DVD player manufacturers have non-exclusive DVD Specifications licenses from Nissim.[15] Nissim's DVD-Device License Agreement (DVD Specifications) covers its U.S. Patents ['678], ['945], ['013], ['444], ['805] and ['207]. *See* Nissim's DVD Device License Agreement, D.E. # 185-14 at 8-21. The first three patents in this list, ['678], ['945] and ['013], were also covered by the Settlement and License Agreement, which granted a limited license for products implementing Nissim's objectionable-content specifications. Also, as indicated above, Nissim sued ClearPlay in the 2008 case alleging that ClearPlay's DVD Players, including the '427 Player, infringe Nissim's patents by implementing the DVD Specifications. The patents at issue in the 2008 case are all patents that were at issue in the 2004 case and under which ClearPlay has the limited license under the Settlement and License Agreement.

ClearPlay disagrees with Nissim's contention that the communications all allege infringement for implementation of the DVD Specifications, asserting that these communications only alleged non-compliance with the OC Specifications. However, ClearPlay also, in the alternative, takes the position that to the extent the letters warned of infringement regarding DVD Specifications implementation, these warnings were objectively baseless. The Court has carefully reviewed Nissim's letters to Target, Best Buy and Samsung as well as its related press releases and determines that all but two communications asserted ClearPlay's products' infringement based solely on non-compliance with the Settlement and License Agreement. The October 19, 2007 Target letter and March 19, 2008 Best Buy letter also assert that ClearPlay's products infringed due to their unlicensed implementation of the DVD Specifications. In the October letter Nissim asserted that Target would infringe Nissim's patents by selling DVD players manufactured by companies that did not have DVD Specifications licenses, including ClearPlay. In its response to this letter, ClearPlay denies such infringement because its players were specifically designed around the DVD Specifications. *See* D.E. # 185-14, Nov. 1, 2007 Letter. The March letter to Best Buy was "Re: . . . Infringement of Nissim U.S. Patents ['678], ['945], ['013], ['401], ['444], ['805], and ['207]," all six patents allegedly necessary to the DVD Specifications, and the draft complaint for infringement attached to this letter includes counts under all six patents.

---

[15] ClearPlay does not dispute this fact; although, as discussed below, ClearPlay disputes that Nissim's patents are necessary for implementation of the DVD Specifications.

16

Therefore, the Court must also determine whether these two letters alleging ClearPlay's products' infringement due to unlicensed implementation of the DVD Specifications support ClearPlay's claims. The Court finds they do not. Though admittedly not directly on point, Federal Circuit authorities suggest that a finding that one of two infringement allegations was not made in bad faith precludes finding that the infringement allegations as a whole were asserted in bad faith. In *Dominant Semiconductors Sdn. Bhd. v. OSRAM GmbH*, 524 F.3d 1254, 1261 (Fed. Cir. 2008), a patentee's public warnings of infringement were found not objectively baseless when, in the underlying patent infringement suit, the adjudicator had found infringement of one of the patentee's patents yet also found non-infringement and invalidity with regard to other patents. *See also Globetrotter Software, Inc.*, 362 F.3d at 1375, 1377 (Fed. Cir. 2004) (finding no bad faith for patentee's communications of infringement of three patents when only evidence of objective baselessness was that summary judgment was granted, but then reversed, for non-infringement of one patent at issue). The rationale underlying these authorities suggests that the Court's finding that Nissim's infringement warnings regarding ClearPlay's license non-compliance were not objectively baseless is sufficient to preempt claims based on warnings, contained in the very same communications, also alerting of ClearPlay's products' infringement regarding the DVD Specifications. This conclusion seems reasonable. As a practical matter, if ClearPlay's products were infringing with regard to one technology or one patent or series of patents, they were infringing regardless of whether they infringed with regard to another technology or patent(s). In other words, if Nissim has one good faith reason to assert ClearPlay's products' infringement, it does not matter from a retailer's or manufacturer's perspective whether the products infringe in other ways: these retailers and manufacturers would still be concerned about selling or manufacturing the allegedly infringing products.

In addition, the record establishes that Nissim's allegations of infringement for implementation of the DVD Specifications were independently not objectively baseless as a matter of law. Nissim points to various portions of the record to support its position that its communications of infringement for DVD Specifications implementation were not objectively baseless. One, it is undisputed that approximately ninety DVD player manufacturers are licensed under Nissim patents to implement the DVD Specifications. Two, Nissim's expert opined that Nissim's patents cover and that ClearPlay's '427 Player implements a DVD Specifications function known as "seamless branching." Nissim's expert declaration was submitted in the 2008 case. (D.E. #32 in 08-CV-80535, Expert Decl., *filed under seal*). In this declaration Nissim's expert attaches his earlier report regarding ClearPlay's player at issue in the 2004 case, and on

17

the basis of this earlier report and an examination of the ClearPlay '427 Player, the expert concludes that the '427 Player has the ability to play DVDs that use the seamless branching function of the DVD Specifications and, hence, infringes claims of certain of Nissim's patents. Three, Nissim's counsel testifies that he personally tested both the '427 and '007 ClearPlay players and that these devices perform features, seamless branching as well as other features, that are encompassed by the DVD Specifications. (D.E. # 332-2, Carey Decl. at ¶ 19-20). ClearPlay has submitted evidence to the contrary. ClearPlay's expert opines that the "patents asserted by . . . [Nissim] to be necessary to implement the DVD Specifications . . . are not, in fact, necessary for or infringed by the implementation of the DVD Specifications." (D.E. # 345-2, LaBarge Decl. at ¶ 6.)  Also, ClearPlay's co-founder testifies that following the Settlement and License Agreement, ClearPlay has designed all its players, including the 007 and 427 Players, to not implement the DVD Specifications features that Nissim claims are covered by Nissim's patents. (D.E. # 345-2, Jarman Decl. at ¶ 18-23).

This record unquestionably presents genuine issues of material fact as to ClearPlay's players' infringement of Nissim's patents based on implementation of the DVD Specifications. However, the matter before the Court is very different. The Court must determine whether Nissim's allegations of infringement based on ClearPlay's products implementation of the DVD Specifications were objectively baseless. The Court finds that these allegations were not objectively baseless as a matter of law. To establish that Nissim's actions were objectively baseless, ClearPlay "was required to offer clear and convincing evidence that [Nissim] . . . had no reasonable basis to believe that its patent claims were valid or that they were infringed." *800 Adept, Inc. v. Murex Securities Ltd.*, 539 F.3d 1354, 1370 (Fed. Cir. 2008) (reversing judgment on a jury verdict because there was no clear and convincing evidence such that a reasonable jury could find that defendant had no reasonable basis to believe that its patents were valid or infringed); *see also Dominant Semiconductors Sdn. Bhd. v. OSRAM GmbH*, 524 F.3d 1254, 1260 (Fed. Cir. 2008) (indicating that the party challenging pre-litigation infringement communications must present affirmative evidence of bad faith under a clear and convincing standard to survive summary judgment).[16]  Here, Nissim must have had no reasonable basis to

---

[16] In *Breckenridge Pharmaceutical, Inc. v. Metabolite Laboratories, Inc.*, 444 F.3d 1356, 1369 (Fed. Cir. 2006), the Federal Circuit reversed summary judgment on state tortious interference and unfair competition claims based on patentee's letters publicizing its patents because the "question of whether any statements in the letters were 'objectively baseless' is genuinely disputed." The court in *Breckenridge* provided no indication of the facts that the patentee asserted to support no objective baselenessness, thus providing little guidance here, and also did

18

assert that ClearPlay's '007 and '427 Players infringed its patents for implementation of the DVD Specifications as claimed in its letters. The opinions of Nissim's expert and counsel as well as the prevalence of Nissim's DVD Specifications licenses to DVD manufacturers and others establish that Nissim had a reasonable basis to believe that ClearPlay's products infringe its patents due to their implementation of the DVD Specifications, and the Court finds that the opinions of ClearPlay's expert and witness are not clear and convincing evidence to the contrary. *See 800 Adept, Inc.*, 539 F.3d 1354 (finding no objective baselessness as a matter of law when patentee's assertion of validity was supported by patent examiner and expert opinion and assertion of infringement was supported by, among other things, a legal opinion from counsel); *Globetrotter Software Inc. v. Elan Computer Group, Inc.*, 362 F.3d 1367 (Fed. Cir. 2004) (affirming summary judgment finding allegations of infringement were not objectively baseless when summary judgment on non-infringement was reversed due to, in part, genuine issues of material fact regarding infringement).

Therefore, Nissim's communications alleging infringement for implementation of the DVD Specifications were not made in bad faith, and, accordingly, federal patent law also bars ClearPlay's state law claims based on these communications.

B. Florida Deceptive and Unfair Trade Practices Act Claim

Nissim asserts that summary judgment on ClearPlay's FDUTPA claim is warranted because Nissim's infringement warnings to third-parties are not "trade or commerce" under the meaning of this statute. The Court has already found that patent law preempts the portion of ClearPlay's FDUTPA claim alleging that Nissim's third-party communications violated FDUTPA. As such, the Court need not further address this argument.

ClearPlay's FDUTPA claim also alleges that Nissim violated this statute by entering into the Settlement and License Agreement in bad faith and breaching this agreement. Without commenting on the viability on this claim, the Court notes that Nissim does not address this portion of the FDUTPA claim in its summary judgment motion and, hence, it remains viable following issuance of this instant order.

C. Breach of Contract Claim

ClearPlay's Third Amended Complaint alleges that Nissim breached multiple provisions of the Settlement and License Agreement, and Nissim has moved for judgment as a matter of law

---

not cite the clear and convincing standard followed by the Federal Circuit in *800 Adept, Inc. v. Murex Securities Ltd.*, 539 F.3d 1354, 1370 (Fed. Cir. 2008) and reiterated in *Dominant Semiconductors Sdn. Bhd. v. OSRAM GmbH*, 524 F.3d 1254, 1260 (Fed. Cir. 2008).

on all of these elements of ClearPlay's breach of contract claim. As indicated at the August 30, 2011, telephonic hearing in this matter, the Court believes that further development of the record is needed with regard to the facts underlying at least some elements of ClearPlay's claim. Accordingly, Nissim's request for judgment as a matter of law on ClearPlay's claim for breach of contract is denied without prejudice to allow Nissim to file a renewed motion for summary judgment, which will permit the parties to submit evidence and briefing as discussed at the August 30, 2011, telephonic hearing.

## IV. CONCLUSION

For the foregoing reasons, Nissim's motion for summary judgment is GRANTED IN PART and DENIED WITHOUT PREJUDICE IN PART. Federal patent law preempts Counts I, II and III for tortious interference with contractual or potential advantageous business relationships. Federal patent law also preempts in part Count V for violation of FDUTPA as indicated above. Following the submission of another motion for summary judgment and further evidence, the Court will examine whether Nissim is entitled to judgment as a matter of law with regard to ClearPlay's claim for breach of contract.

DONE and ORDERED in Chambers, Miami, Florida, September 2, 2011.

_____
PAUL C. HUCK
United States District Judge

Copies furnished to:
Counsel of record