UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 07-81170-CIV-HUCK/BANDSTRA

CLEARPLAY, INC.,
    Plaintiff,
v.
NISSIM CORP. and
MAX ABECASSIS
    Defendants.
_____/

## ORDER GRANTING DEFENDANTS SUMMARY JUDGMENT ON REMAINING CLAIMS

On September 2, 2011, this Court granted in part Defendants' Nissim Corporation's and Max Abecassis' ("Nissim"[1]) motion for summary judgment on ClearPlay's tortious interference claims and the portion of ClearPlay's Florida Deceptive and Unfair Trade Practices ("FDUPTA") claim alleging that Nissim's third-party communications violated FDUPTA. *See ClearPlay, Inc. v. Nissim Corp.*, 2011 U.S. Dist. LEXIS 99154 *47 (S.D. Fla. Sept. 2, 2011). This Court denied without prejudice ClearPlay's breach of contract claim allowing Nissim to file a renewed motion and declined to address the portion of Clearplay's FDUPTA claim relating to Nissim's entering into the Settlement and License Agreement[2] in bad faith and breaching the agreement. *Id.* As a result, Nissim filed a renewed motion for summary judgment on these remaining claims. D.E. #401. Responses and replies to Nissim's motion have been filed, D.E. #408, 412, 415-417, and the motion is ripe for adjudication.[3] For the reasons discussed below,

---

[1] Abecassis is the founder, President and CEO of Nissim and inventor of its patents. For the sake of simplicity and unless otherwise indicated, this Order refers to both Nissim and Abecassis as "Nissim."

[2] The Settlement and License Agreement means the agreement made as of November 23, 2005, among Nissim Corp., CustomPlay LLC, ClearPlay Inc., Matthew Jarman and William Aho.

[3] For background *see* this Court's opinion in *ClearPlay, Inc. v. Nissim Corp.*, 2011 U.S. Dist. LEXIS 99154 (S.D. Fla. Sept. 2, 2011). *See also* the Federal Circuit Court of Appeals and Court of Appeals for the Eleventh Circuit opinions and this Court's rulings in this and related cases.

the Court GRANTS summary judgment in favor of Nissim with respect to all of the remaining claims.

### A. Summary Judgment Standard

Summary judgment is proper only where the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The purpose of summary judgment is "to pierce the pleadings and assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587(1986) (quoting Fed. R. Civ. P. 56 advisory committee's note). In *Celotex Corp.*, the Court held that summary judgment should be entered only against

> a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the non-moving party has failed to make a sufficient showing on an essential element of the case with respect to which she has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

To prevail, the moving party must do one of two things: (1) show that the non-moving party has no evidence to support its case, or (2) present "affirmative evidence demonstrating that the non-moving party will be unable to prove its case at trial." *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437-38 (11th Cir. 1991) (en banc); *Young v. City of Augusta. Ga.*, 59 F.3d 1160, 1170 (11th Cir. 1995). In making this determination, the court must view the evidence and all reasonable inferences therefrom in the light most favorable to the non-moving party. *Witter v. Delta Air Lines, Inc.*, 138 F.3d 1366, 1369 (11th Cir.1998) (citations and quotations omitted).

If the moving party successfully discharges this initial burden, the burden shifts to the non-moving party to establish, by going beyond the pleadings, that there is a genuine dispute as

---

*See ClearPlay Inc. v. Max Abecassis & Nissim Corp.*, 602 F.3d 1364 (Fed. Cir. 2010); *Nissim Corp. v. ClearPlay, Inc.*, 374 Fed. Appx. 987 (Fed. Cir. 2010); *ClearPlay Inc. v. Nissim Corp.*, No. 10-13469, 2011 U.S. App. LEXIS 14072 (11th Cir. July 7, 2011); and this Court's prior orders from case numbers 04-CV-21140 and 08-CV-80535.

to facts material to the non-moving party's case. *Young*, 59 F.3d at 1170. The non-moving party must do more than rely solely on its pleadings, and simply show that there is some metaphysical doubt as to the material facts. *Matsushita*, 475 U.S. at 586-87. A genuine dispute of material fact does not exist unless there is sufficient evidence favoring the non-moving party for a reasonable jury to return a verdict in its favor. *Anderson v. Liberty Lobby. Inc.*, 477 U.S. 242, 249 (1986); *Ritch v. Robinson-Humphrey Co.*, 142 F.3d 1391, 1393 (11th Cir. 1998); *EEOC v. Amego*, 110 F.3d 135, 143(1st Cir. 1997); *Thornton v. E.I. Du Pont De Nemours and Co., Inc.*, 22 F.3d 284, 288 (11th Cir. 1994). A dispute is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party. *Allen v. Tyson Foods*, 121 F.3d 642, 646 (11th Cir. 1997). A dispute is "material" if it is a legal element of the claim under applicable substantive law which might affect the outcome of the case. *Anderson*, 477 U.S. at 248; *Allen*, 121 F.3d at 646.

A mere "scintilla" of evidence in favor of the non-moving party, or evidence that is merely colorable or not significantly probative is not enough to meet this burden. *Anderson*, 477 U.S. at 252. *See also Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir. 1996) (conclusory allegations and conjecture cannot be the basis for denying summary judgment). Where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a general issue of material fact, then the court should refuse to grant summary judgment." *Barfield v. Brierton*, 883 F.2d 923, 933-34 (11th Cir. 1989).

### B. Breach of Contract Claim[4] – Applicable Law

In interpreting the Settlement and License Agreement, the parties have stipulated that Florida law governs (*see* Section 12.4). Since there is no strong public policy preventing this Court from respecting Florida as the chosen forum, this Court must enforce this choice-of-law provision. *See Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1341 (11th Cir. 2005) (quoting *Mazzoni Farms, Inc. v. E.I. DuPont de Nemours & Co.*, 761 So. 2d 306, 311 (Fla. 2000) ("[C]ourts will enforce 'choice-of-law provisions unless the law of the chosen forum contravenes strong public policy.'"). Under Florida law, "[t]he interpretation of a contract is a question of

---

[4] ClearPlay's Third Amended Complaint asserts that multiple provisions of the Settlement and License Agreement were breached but contains only one claim for breach of contract. For the sake of convenience the Court will refer to each alleged breach as a "claim," although, in reality, there is only one claim for breach of contract.

law to be decided by the court." *Hartford Ins. Co. v. BellSouth Telecomms., Inc.*, 206 Fed. App'x 952, 954 (11th Cir. 2006) (citing *Barone v. Rogers*, 930 So. 2d 761, 764 (Fla. 4th Dist. Ct. App. 2006)). "As such, it is particularly susceptible to determination as a matter of law." *Diversified Servs., Inc. v. Simkins Indus., Inc.*, 974 F. Supp. 1448, 1451 (S.D. Fla. 1997).

"Contract interpretation principles under Florida law require us to look first at the words used on the face of the contract to determine whether that contract is ambiguous." *Rose. v. M/V "Gulf Stream Falcon*," 186 F.3d 1345, 1350 (11th Cir. 1999). "It is well settled that the actual language used in the contract is the best evidence of the intent of the parties and, thus, the plain meaning of that language controls." *Id.* The Florida Supreme Court has "long held that under contract law principles, contract language that is unambiguous on its face must be given its plain meaning." *Green v. Life & Health of Am.*, 704 So. 2d 1386, 1391 (Fla. 1998). Thus, "[a] party is bound by, and a court is powerless to rewrite, the clear and unambiguous terms of a voluntary contract." *Med. Ctr. Health Plan v. Brick*, 572 So. 2d 548, 551 (Fla. Dist. Ct. App. 1990) (citations omitted).

Accordingly, "it is settled in Florida that a court may resort to the process of interpretation only when the words used in a contract are unclear." *Boat Town U.S.A., Inc. v. Mercury Marine Div. of Brunswick Corp.*, 364 So. 2d 15, 17 (Fla. Dist. Ct. App. 1978). "The ambiguity must exist on the face of the document itself before extrinsic matters may be considered by the court." *Id.*

### C. ClearPlay's Asserted Breaches

In its Third Amended Complaint, ClearPlay asserts that Nissim breached the following sections of the Settlement and License Agreement: 4.6., 4.7, 5.4, 4.2, 12.3 and 12.5. ClearPlay also asserts that Nissim breached the implied covenant of good faith and fair dealing. Each will be considered in turn.

#### 1. *Section 4.6*[5]

First, ClearPlay asserts that Nissim breached Section 4.6 of the Settlement and License Agreement by "[f]iling a motion to enforce with this Court to address filter disputes and not

---

[5] Unless stated otherwise, all section references cited in this order relate to the Settlement and License Agreement.

submitting its filter disputes to a special master for expeditious and economical resolution in violation of Section 4.6." D.E. # 185, Third Amended Complaint at ¶ 123(a).

Section 4.6 is a dispute resolution provision relating specifically to disputes over the "ClearPlay CustomPlay OC Maps." This term means "Customplay OC Maps" generated by ClearPlay (*see* Section 1.4). CustomPlay OC Maps are video segments that comprise a beginning frame and an ending frame and are coded with the following filters: an objectionable content category (there are 12 such categories),[6] a level of explicitness (there are 4 such levels)[7] and an action (skip or mute) (*see* Sections 1.7, 1.8 and 1.14). Section 4.6 provides the following in pertinent part:

> Mapping Dispute Resolution: During the term of this Agreement, in the event Nissim determines that a ClearPlay CustomPlay OC Map has not been created in good faith compliance with this Agreement, Nissim will provide ClearPlay with email or written notice of the same. If the parties are unable to amicably resolve the issue raised in the email or written notice, the matter **may be submitted by either party to a Special Master jointly appointed by the parties** to determine if Clearplay was compliant with the terms of this Agreement related to creation of ClearPlay CustomPlay OC Maps. **If the parties are unable to agree upon the selection of a Special Master, they may submit the matter to the American Arbitration Association for such selection** (emphasis added).

The agreement also contains, in Section 10.2, the following general dispute resolution provision, in pertinent part:

> Dispute Resolution: Any dispute arising under or relating to this Agreement or in any dispute arising with respect to or related to the subject matter of the Patents-In-Suits [i.e., the 5 patents licensed under the Agreement], which cannot be resolved by negotiation in good faith between the parties hereto, shall be resolved by an action brought in . . . a court in the State of Florida."

The issue raised by ClearPlay is whether, as a result of ClearPlay's demands to resolve this dispute through a Special Master proceeding, Nissim was required by the terms of Section 4.6 to submit its mapping (or filter) disputes to a Special Master and thus breached Section 4.6 by instead seeking to resolve this dispute through a motion to enforce the agreement filed with

---

[6] The 12 categories of objectionable content are "Bigotry, Blasphemy, Bloodshed, Dishonor Flag, Dishonor Parent, Disturbing, Mushiness, Nudity, Sex, Substance Abuse, Violence, and Vulgarity). *See* Section 1.7.

[7] The 4 levels of explicitness are "None, Implied, Explicit and Graphic." *See* Section 1.14. *Cf.* Section 1.8 where only 3 levels are identified ("Implied, Explicit and Graphic.").

5

this Court. Nissim asserts that summary judgment is warranted on this claim because (1) arbitration by a Special Master was optional and the failure to exercise an option is not a breach, (2) ClearPlay waived its right to arbitrate under Section 4.6; and (3) ClearPlay's theory of damages is not cognizable.

With respect to the first issue raised by Nissim, it is unambiguous that Section 4.6 provides an optional arbitration mechanism: either party "may" exercise this option by submitting a filter dispute to a "Special Master jointly appointed by the parties." If one party exercises its option to arbitrate, it is also plain that arbitration would then be binding on both parties. The question presented then is whether ClearPlay exercised its option to arbitrate before a Special Master.

Nissim asserts that ClearPlay could have, but did not, exercise its option to arbitrate before a Special Master: "ClearPlay could have submitted the matter to arbitration, but did not." D.E. #416. By contrast, ClearPlay asserts that it exercised this option on two separate occasions: First, "on May 25, 2007, ClearPlay's counsel *demanded that Nissim proceed under Section 4.6* regarding its allegations of ClearPlay's non-compliance with the OC Specifications and proposed four possible Special Masters (emphasis added)." D.E. #408 referencing the Wood Decl. ¶¶4-6; Ex. A. Second, in its Response to the Motion to Enforce, ClearPlay stated "[i]f . . . Nissim believes that a movie index has not been created in good faith compliance with the Agreement a mechanism [i.e., a Special Master proceeding] does exist for Nissim to obtain resolution for such shortcoming . . . Nissim has failed to follow [Section 4.6]." *Id.* quoting 04-CIV-21140, D.E. 456; Wood Decl. ¶8. ClearPlay also asserts that it "invoke[d] Section 4.6 before the Court through pleadings, hearings, and motions." D.E. #408. ClearPlay does not assert that it submitted this matter to a Special Master.

For either party to exercise its option to arbitrate before a Special Master, the Settlement and License Agreement clearly provides that the exercising party must submit the matter to a Special Master that both parties appoint. Here, ClearPlay does not allege nor offer evidence that it submitted this matter to a jointly appointed Special Master. While ClearPlay implies that Nissim refused to cooperate in jointly appointing a Special Master after it proposed four possible Special Masters, ClearPlay does not allege nor offer any evidence that it sought to have a Special Master appointed through the contract's built-in mechanism for disagreements about the

appointment of a Special Master: the contract explicitly allows the parties to "submit the matter to the American Arbitration Association for such selection."

In any event, ClearPlay's alleged breach of contract claim is not premised on a failure to cooperate in a joint appointment. It is premised on Nissim's refusal to exercise its own option to arbitrate and to instead pursue litigation. Nissim, however, had no such obligation to arbitrate under the plain terms of Section 4.6 of the Settlement and License Agreement in the absence of ClearPlay's submission of the dispute to a Special Master. None of the case law that ClearPlay cites would suggest otherwise.

*Avant Petroleum, Inc. v. Pecten Arabian Limited*, 696 F. Supp. 42 (S.D.N.Y. 1988) simply involved a petition to compel arbitration, not an independent claim for damages caused by a breach of contract for failure to utilize a contracted-for claims resolution procedure. The district court granted the plaintiff's petition to compel arbitration. It involved three back-to-back contract breaches after the first oil supplier in a chain of four failed to deliver oil to the second in the chain, and so on, a confirming telex in one such transaction stated that "any differences and disputes of whatsoever nature shall be put to arbitration in the City of New York, N.Y." *Id.* at 43. In that case, the party seeking arbitration brought a motion to compel arbitration in the district court after its supplier refused its initial demand to arbitrate. Their agreement, unlike the agreement in the instant case, involved no special mechanics for exercising the option to arbitrate so a simple demand coupled with a motion to compel arbitration complied with their agreement. Although years had passed from the date of alleged breach, the facts in *Avant* do not suggest that the parties pursued any other form of dispute resolution, such as litigation, prior to the arbitration demand. ClearPlay, by contrast, failed to follow the agreement's specific mechanics for initiating arbitration and acquiesced in litigation, even though it opposed it. While the two parties dispute whether ClearPlay brought a motion to compel arbitration in the district court, and while the record does not appear to reflect a motion to compel, this fact is not material to this particular dispute given the agreement's specific mechanics for initiating arbitration. *Cf.* D.E. #401-2, ¶15 and D.E. #408-7, ¶15.

Likewise, in *Richardson v. Virgin Islands Port. Auth.*, No. 2009-139, 2010 WL 1641154 at *4 (D. Virgin Islands April 21, 2010), the issue was simply whether the plaintiff's claim had to be arbitrated pursuant to an arbitration agreement. It was not an independent action for damages resulting from a defendant's breach of her obligation to arbitrate. The case involved wrongful

7

discharge and other employment-related claims. There, each party, like those in the instant case, had the option to submit their "dispute to binding arbitration." Unlike the instant case, however, the defendants sought to exercise their option by seeking to stay the district court proceeding and to compel arbitration as an alternative. Since the record does not show that ClearPlay sought to employ these maneuvers or otherwise exercise the plain terms of its option, it is distinguishable.

ClearPlay also cites two other cases whose facts are clearly distinguishable from those in the instant case: *Conax Florida Corp. Astrium Ltd.*, 499 F. Supp.2d 1287, 1297 (M.D. Fla. 2007) and *Brockie v. American General Financial Services, Inc.*, 2007 WL 3379757 at *3 (S.D. Fla. 2007). In *Conax*, unlike the instant case, one of the parties sought to compel arbitration in light of a provision that included no mechanics for its invocation. *See Conax,* 499 F. Supp.2d at 1296 ("this Subcontract may be finally settled by arbitration."). In *Brockie,* 2007 WL 3379757 at *1, the defendant exercised its option by complying with the plain terms of the agreement: "either you or Creditor may choose that any claim or dispute . . . shall be resolved by binding arbitration."

Since ClearPlay did not follow the clear mechanics set forth in the Settlement and License Agreement for compelling arbitration, this Court is "powerless to rewrite, the [contract's] clear and unambiguous terms." *Med. Ctr. Health Plan,* 572 So. 2d at 551. Mandating arbitration before a special master was within ClearPlay's control, but ClearPlay failed to exercise its option. As a result, Nissim was free to proceed under Section 10.2, which allowed "any dispute" to be resolved by litigation. In any event, ClearPlay's recourse, under Section 4.6, was to seek to compel arbitration, not seek monetary damages pursuant to a breach of contract claim. Accordingly, Nissim did not breach Section 4.6 as a matter of law. It is therefore unnecessary to reach Nissim's other arguments regarding waiver of arbitration and damages.

    2.  *Section 4.7*

ClearPlay next alleges that Nissim violated Section 4.7 by "sending multiple letters to ClearPlay's existing and prospective business partners claiming that ClearPlay's filters do not comply with the License Agreement and using that filter dispute 'to unreasonably interfere with, harass, or otherwise disrupt [ClearPlay's] business operations, business development activity, [and] customer relationships.'" D.E. # 185, Third Amended Complaint at ¶ 123(b). Nissim asserts that it did not breach Section 4.7 as a matter of law because (a) Section 4.7 is limited to

8

the "use of the provisions of Section 4.6" and Nissim did not use the provisions of Section 4.6; and (b) Section 4.7 applies only to unreasonable interference, and the Court has already held Nissim's infringement warnings were reasonable."

As Nissim points out, Section 4.7 only becomes actionable to the extent that the parties "use the provisions of Section 4.6" to unreasonably interfere with, harass or otherwise disrupt the other's business. It is unambiguous that the phrase "the provisions of section 4.6" refers to the provisions contained therein. These provisions, as discussed above, all relate specifically to a dispute resolution procedure before a Special Master that either party was permitted to invoke as an alternative to litigation. ClearPlay argues, nonetheless, that the phrase "provisions of Section 4.6" should instead be interpreted to mean "the specific disputes that Section 4.6 addresses, mapping disputes [D.E. #408]." This interpretation, however, would disregard the parties' option to resolve mapping (or filtering) disputes through litigation under Section 10.2. While the parties could have agreed to generally prohibit interfering with each other's businesses, they instead chose to qualify this provision by the "use of the provisions of Section 4.6." Since neither party exercised its option to arbitrate under the provisions of Section 4.6, such provisions were not used in this case. Although a Special Master was later appointed by the Court in July 2008 to determine "whether or not the ClearPlay filters released for use with ClearPlay's CP-007 USB Player satisfy the requirements of the parties' Settlement and License Agreement," this appointment was pursuant to Rule 53 of the Federal Rules of Civil Procedure and not Section 4.6 [D.E. #67, ¶1-2]. ClearPlay's argument that Nissim should have used Section 4.6 does not change the fact that ClearPlay never exercised its option to proceed under Section 4.6. It is inconsistent to claim that Nissim breached Section 4.7 <u>by</u> proceeding under Section 4.6 and breached Section 4.6 <u>by not</u> proceeding under it. Accordingly, the Court finds that Nissim did not use the provisions of Section 4.6 and therefore did not breach Section 4.7 as a matter of law. It is therefore unnecessary to reach Nissim's other arguments regarding the reasonableness of any such interference with ClearPlay's business.

### 3. *Section 5.4*

Next, ClearPlay asserts that Nissim violated Section 5.4 of the Settlement and License Agreement by "[r]efusing to provide copies of Nissim's license agreements with third

parties so that ClearPlay could exercise its right to license those patents on the same terms and conditions on which Nissim has licensed those patents to third parties." D.E. # 185, Third Amended Complaint at ¶ 123(c).

>Section 5.4 provides the following, in pertinent part:
>
>Other Patents. Any license grant or other authorization that may be provided by Nissim to ClearPlay under this Agreement or to a third party does not provide, directly, by implication, or otherwise, any license grant under any patent other than the Patents-in-Suit. Nissim agrees that in the event that ClearPlay seeks a license of any other Nissim Patent, and Nissim has licensed such patent to a third party on a non-exclusive basis, **Nissim will make such license available on the same terms and conditions** (emphasis added).

Section 5.4 does not explicitly require Nissim to provide ClearPlay with copies of its license agreements with third parties. This section implies, however, that Nissim must make available at least one copy of any such license to a non-Patent-In-Suit patent that ClearPlay seeks and that Nissim has licensed on a non-exclusive basis to one or more third parties. This is because any license "on the same terms and conditions" as another license would necessarily be a copy by virtue of being the "same." Such a copy, however, would be limited only to the "terms and conditions" of such license and would not extend to non-terms, such as the identity of the parties, which may be confidential. Therefore, at a minimum, in order for Nissim to make a "license available on the same terms and conditions," it would have to provide one such copy of an existing license agreement with any non-term redactions or a standard form that replicates the terms and conditions of an existing license. To find that Nissim has no obligation to provide ClearPlay with the terms and conditions of one such existing license agreement would undermine the purpose of the provision. *See Seabreeze Restaurant, Inc. v. Paumgardhen*, 639 So.2d 69, 71 (Fla. Dist. Ct. 1994) ("An interpretation of a contract that gives a reasonable, lawful and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful or of no effect."). Such an implicit obligation is the only way Nissim could fulfill the explicit requirement that Nissim make available to ClearPlay "terms and conditions" that are the "same" as those given to a third party. Similarly, another district court found an implicit obligation to provide information in order to prevent negating the purpose of a "most favored nations clause" in a license agreement. *Cf. Epic Systems, Corp. v. AllCare Health Management System,* 2002 WL 31051023 at *6 (N.D. Texas Sept. 11, 2002).

10

ClearPlay recognizes the fact that Nissim is not explicitly required to provide copies of its third-party license agreements by the terms of Section 5.4, but claims "it is implicit that ClearPlay has the right to review Nissim's third-party licenses to determine the **best** terms and conditions among all of the licenses (emphasis added)." D.E. #408, citing Aho Decl. ¶10. As noted above, this Court agrees that ClearPlay has an implied right to review the terms and conditions of one existing third-party license agreement or the equivalent thereof with respect to each existing third party non-Patent-In-Suit patent it seeks, though this Court disagrees that this right to review extends to all of Nissim's third-party license agreements.

As Nissim points out, "same" does not mean "best." It is unambiguous that this provision is not a "most favored nations" clause that would allow ClearPlay the right to determine, on its own, the best terms and conditions among all such outstanding license agreements with third parties. *Cf. Studiengesellschaft Kohle, M.B.H. v. Hercules, Inc.*, 105 F.3d 629, 633 (Fed. Cir. 1997) (finding that, in the context of a "most favored nations" clause, the licensee, not the licensor, has the right to determine, on its own, the best terms and conditions). The parties clearly knew how to confer a "most favored nations" right since they did so with respect to the Patents-in-Suit in Section 6.4 of the Agreement.[8] This distinct difference in drafting between the two provisions must be deemed purposeful. *See Andrx Therapeutics, Inc. v. Mallinckrodt, Inc.,* 2007 WL 1362778, at *4 (S.D. Fla. May 9, 2007) (finding that the inclusion of a 60 day notice period in three of the five termination clauses revealed that the parties knew how to express and require such notice and opportunity but chose not to do so in all cases). *See also Leisure Resorts, Inc. v. City of W. Palm Beach*, 864 So. 2d 1163, 1166 (Fla. Dist. Ct. App. 2003) (finding that the inclusion of a phrase in only one place and not other places must be deemed purposeful). Since Section 5.4, unlike Section 6.4, only requires Nissim to offer ClearPlay the "same" terms and conditions that another party has been given, Nissim, not ClearPlay, has the right to determine, on its own, which license it wishes to offer among its outstanding third-party licenses. The undisputed facts demonstrate that Nissim offered ClearPlay

---

[8] Section 6.4 provides in pertinent part the following: "If any other entity is granted a license of equivalent scope under any of the Patents-In-Suit under a more favorable royalty rate than that provided under this Agreement, then Nissim shall disclose, in writing, to ClearPlay the terms and provisions of each such license within thirty (30) Days of its execution, and ClearPlay shall have the right, within ninety (90) days of receipt of such disclosure, to substitute the royalty rate provided in this Agreement with the royalty rate of the subsequent license."

11

a standard DVD-Device License for implementation of the DVD Specifications, but did not respond to ClearPlay's request for copies of such licenses Nissim entered into with all third parties. *See* D.E. # 401-2, ¶¶ 22,28 citing D.E. 118-2 ¶ 82; and D.E. # 408-7 ¶ 22 and ¶¶75-76 citing TAC Ex. 9; Wood Decl. ¶¶10-11. The undisputed facts also show that ClearPlay, rather than accept Nissim's offer, instead requested a complete listing of all parties who had entered into a DVD-Device license with Nissim, as well as the terms and conditions of those licenses in accordance with Section 5.4. *See* D.E. # 408-7 citing Wood Decl. ¶¶9-10. To the extent that Nissim was willing to make available to ClearPlay a standard form replicating an existing third-party license agreement, such an action would undermine ClearPlay's claim for breach of Section 5.4. The record, however, does not indicate what terms and conditions would have been included in the standard DVD-Device License. ClearPlay has thus provided no evidence to support a case that Nissim's offer violated Section 5.4. *See United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437-38 (11th Cir. 1991) (en banc); *Young v. City of Augusta. Ga.*, 59 F.3d 1160, 1170 (11th Cir. 1995) (To prevail, the moving party must . . . show that the non-moving party has no evidence to support its case). In addition, ClearPlay's allegation that Nissim refused to otherwise provide copies of Nissim's license agreements with third parties has no merit since we find that Nissim was not required by Section 5.4 to provide copies of its other third-party license agreements as a general matter since such clause was not a "most favored nations" clause. Accordingly, Nissim is entitled to judgment as a matter of law that it did not breach Section 5.4. As a result the Court need not consider whether ClearPlay met the condition in Section 5.4 that it sought a license or whether it has a right at all to a DVD-Device License under Section 5.4.[9]

---

[9] This Court already found in a prior order that, "[u]nder the plain language of Section 5.4, ClearPlay is not entitled to obtain a license to implement the DVD Specifications from Nissim because the DVD Specifications are not covered by patents 'other than the Patents-In-Suit.'" *See* 08-CV-80535-HUCK/O'SULLIVAN, D.E. #79 ¶ 6. There are, however, three patents that are not part of the Patents-In-Suit but are licensed in Nissim's DVD-Device License Agreement. *See* D.E. #401-2 ¶30 citing D.E. 185-13, at p. 9, ¶ 1.7. Moreover, the license, in this case, that ClearPlay purportedly sought is the DVD-Device License that Nissim offered. *See* D.E. #408, footnote 9. At a hearing in this matter on August 30, 2011, D.E. #397, the Court observed the anomaly that Section 5.4 allows ClearPlay to seek and obtain licenses for those patents relating to the DVD Specifications that <u>are not</u> part of the Patents-In-Suit, but that Section 5.6 prevents ClearPlay from obtaining any license for patents relating to the DVD Specifications that <u>are</u> part of the Patents-In-Suit. This would appear to suggest that even if ClearPlay was able to obtain a

4.  *Section 4.2*

Next, ClearPlay asserts that Nissim breached Section 4.2 of the Settlement and License Agreement by "[d]enying that ClearPlay's products were licensed and threatening patent infringement suits against ClearPlay's business partners."  D.E. # 185, Third Amended Complaint at ¶ 123(d).  Nissim asserts that summary judgment is appropriate on ClearPlay's claim on four grounds:  (a) that patent preemption bars this claim; (b) that Section 4.2 contains no covenant not to sue; (c) that even if Section 4.2 were a covenant not to sue, Nissim did not breach it, because Nissim alleged conduct outside the limited-scope license; and (d) that even if Section 4.2 were a covenant not to sue, it would not support a claim for damages.  *See* D.E. #401. ClearPlay disputes each point.

Section 4.2 of the Settlement and License Agreement provides the following in its entirety:

> 4.2 <u>Limited License for Modified ClearPlay Players</u>.  Subject to the terms and provisions of this Agreement, including but not limited to the license exclusions contained in Section 5 and the royalty payments required under Section 6, Nissim grants to ClearPlay a royalty bearing, non-exclusive, personal, non-transferable, worldwide right and license under the Patents-In-Suit to make, have made, use, offer for sale, sell, lease, and/or otherwise dispose of Modified ClearPlay Players Sold, Modified ClearPlay Software Sold ClearPlay CustomPlay OC Maps Sold [sic].

a)  <u>Patent Preemption in Breach of Contract Context</u>

First, Nissim argues that the patent preemption doctrine bars ClearPlay's claim for breach of Section 4.2 based on Nissim's warnings of license non-compliance and patent infringement. In this Court's previous summary judgment order in this case, the Court declined to rule on this issue in the context of a breach of contract to allow for further development of the record as to the facts supporting the contractual issues.  *See ClearPlay, Inc.,* 2011 U.S. Dist. LEXIS 99154 at *26, FN 12.  By contrast, the Court previously analyzed the patent preemption doctrine in the context of Clearplay's tortious interference and FDUPTA claims and found that "federal patent law bars imposing liability on Nissim for communicating its warnings of license non-compliance and patent infringement so long as these warnings were not made in bad faith."  *Id.* at *31. The

---

license under Section 5.4 to the three patents that are not part of the Patents-In-Suit, ClearPlay would still be prevented by Section 5.6 from implementing the DVD Specifications since it would have to be licensed with respect to all of the necessary patents.

Court went on to find that Nissim's warnings were not in bad faith since "the bad faith standard cannot be satisfied unless the infringement allegations and/or publication of the patent were 'objectively baseless'" and "Nissim's communications regarding license non-compliance and patent infringement were not objectively baseless." *Id.* at *33-34. The Court reasoned as follows:

> The purpose of the [patent preemption] doctrine is protection of a patent-holder's good faith assertion of its statutory rights. *See id.* at *29 (*quoting Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318, 1336 (Fed. Cir. 1998) (*citing and quoting, inter alia*, *Virginia Panel Corp. v. MAC Panel Co.*, 133 F.3d 860, 869 (Fed. Cir. 1997) ("[A] patentee must be allowed to make its rights known to a potential infringer so that the latter can determine whether to cease its allegedly infringing activities, negotiate a license if one is offered or decide to run the risk of liability and/or the imposition of an injunction."); *Virtue v. Creamery Package Mfg. Co.*, 227 U.S. 8, 37-38, 33 S. Ct. 202, 57 L. Ed. 393, 1913 Dec. Comm'r Pat. 519 (1913) ("Patents would be of little value if infringers of them could not be notified of the consequences of infringement or proceeded against in the courts. Such action considered by itself cannot be said to be illegal.")); *see also Zenith Elecs. Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1353 (Fed. Cir. 1999). Nissim, like any other patent holder, was allowed to pursue its rights in good faith without fear of liability under state tort law. See *Fisher Tool Co. v. Gillet Outillage*, 530 F.3d 1063, 1068 (9th Cir. 2008) ("The purpose of the bad-faith requirement is to permit the patent-holder to assert his rights without fear that he might thereby violate . . . state tort laws.") In this case, Nissim could not have realistically warned of or alleged patent infringement by Target, Best Buy and/or Samsung without addressing ClearPlay's non-compliance with the Settlement and License Agreement.

While the case law clearly protects Nissim, as a patent holder, from tort liability in exercising its patent rights, Nissim cites no case law suggesting that Nissim, as a patent holder, would be protected from contract liability to the extent Nissim waived its patent rights within a contract and then sought to exercise such rights in breach of such contract.[10] In fact, Nissim acknowledges that contractual provisions, as long as they are explicit, can waive patent rights. D.E. #401 at 17. Although this Court observed, but did not explicitly hold, that "the principle and the public policy behind [the patent preemption doctrine] is the same whether it's a contract

---

[10] Nissim cites one case, *Gen-Probe, Inc. v. Amoco Corp.*, 926 F. Supp. 948 (S.D. Cal. 1996), for the principle that the *Noerr-Pennington* doctrine (which this Court found afforded the same protections as the Federal Circuit's patent preemption doctrine, *see ClearPlay, Inc.,* 2011 U.S. Dist. LEXIS 99154 at *23) must apply to contract claims no less than tort claims. This case, however, did not specifically address the doctrine's application to a breach of contract claim. It only stated generally that "[t]his Court . . . holds that Noerr immunity bars any claim, federal or state, common law or statutory, that has as its gravamen constitutionally-protected petitioning activity." *Id.* at 956.

14

or a tort claim" (D.E. #401, Carey Decl., Ex. B (08/22/11) at 50), the ability of a contracting party to waive its patent rights, which is an ability that the several states cannot impose upon individuals in the tort context, is evidence that the principle and public policy may not always be the same. As ClearPlay puts it, "holding Nissim to its promises does not interfere in any way with federal patent law." D.E. 408 at 26. Thus, Nissim had the power to grant ClearPlay contractual rights that Nissim would not deny that ClearPlay's products are licensed or threaten any patent infringement suit against ClearPlay's business partners and such contractual rights would not be preempted by patent law. This <u>does not</u> imply, however, that Nissim granted such rights to ClearPlay. Since this determination, which will be addressed in the next sub-section, is separate and distinct from patent preemption, this Court finds that the patent preemption doctrine does not independently and in all instances bar ClearPlay's claim for breach of Section 4.2 based on Nissim's warnings of license non-compliance and patent infringement.

b) <u>Breach Based on Implied Covenant Not To Sue</u>

Next, Nissim argues that its warnings of license non-compliance and patent infringement did not breach Section 4.2 because such provision is not a "covenant not to sue" and thus no such covenant was breached by its warnings. ClearPlay argues that "a non-exclusive license is nothing more than a covenant not [to] sue." D.E. #408 at 13. It thus claims that "express covenant not to sue language would be redundant." *Id.* at 7. This presents the question of whether Nissim, through its grant to ClearPlay of a non-exclusive license in Section 4.2, thereby implicitly granted ClearPlay a covenant not to sue, or, more specifically, a covenant not to deny ClearPlay's products are licensed or threaten any patent infringement suit against ClearPlay's business partners.

It is undisputed that the plain language of Section 4.2 includes no explicit covenant on the part of Nissim to refrain from lawsuits or warnings of license non-compliance and patent infringement. ClearPlay, moreover, cites no case law to suggest that such a covenant should be implied by Nissim's grant of a non-exclusive license. ClearPlay's only support comes from *dicta* in two readily distinguishable cases: *De Forest Radio Tel. Co. v. United States*, 273 U.S. 236 (1927) and *U.S. Phillips Corp. v. Int'l Trade Comm'n*, 424 F.3d 1179 (Fed. Cir. 2005).

ClearPlay cites *De Forest Radio Tel. Co.* for the proposition that "a license . . . has been described as a mere waiver of the right to sue by the patentee." *De Forest*, however, did not concern a breach of an implied covenant not to sue. The issue was whether a private patent

15

holder had given an implied license to the United States to make and use certain patented items. In finding that there was an implied license, the Court held that such license provided "a complete defense" to an infringement claim. *Id.* at 242. There was no affirmative breach of contract claim nor suggestion that the finding of a license would subject the patent holder to a breach of contract for having brought its infringement claim. In fact, the two sentences that precede the *dicta* cited by ClearPlay suggest not only that a licensee may be sued by a licensor, but that the defense would be "of no avail" if the licensee's "use be one prohibited by the license."[11] *Id.* at 242. Similarly, ClearPlay cites *U.S. Phillips Corp.* for the proposition that "a nonexclusive patent license is simply a promise not to sue for infringement." *U.S. Phillips Corp.,* 424 F.3d at 1189. This citation is also *dicta* and it appears in a patent misuse case in the context of distinguishing "an obligation to purchase a product and the extension of a nonexclusive license to practice a patent." *Id.* In any event, belying its description is an assumption that such patent is being used in accordance with the license agreement. As *De Forest* reveals, compliance with such license provides a defense to a claim of infringement; however, non-compliance would not provide such a defense. Since Nissim's theory is that ClearPlay's products are outside the scope of the license, the grant of the license itself cannot be interpreted to either bar a lawsuit or any warnings of license non-compliance or patent infringement.

Nissim's argument, moreover, is further strengthened by the fact that the agreement contains an explicit covenant not to sue in a parallel provision.[12] As noted above, such distinct differences in drafting between two provisions must be deemed purposeful. *See Andrx Therapeutics, Inc.,* 2007 WL 1362778, at *4; *Leisure Resorts, Inc.,* 864 So. 2d 1163, 1166. If the parties had intended a covenant not to sue, they could have easily included such a provision in the Settlement and License Agreement. *See Dows v. Nike, Inc.,* 846 So.2d 595, 602 (Fla. Dist.

---

[11] The following is the full quote from *De Forest* in context: "If a licensee be sued, he can escape liability to the patentee for the use of his invention by showing that the use is within his license. But if his use be one prohibited by the license, the latter is of no avail as a defense. As a license passes no interest in the monopoly, it has been described as a mere waiver of the right to sue by the patentee." *De Forest Radio Tel. Co.,* 273 U.S. at 242 (citing Robinson on Patents, §§ 806 and 808).

[12] Section 3.2 of the Settlement and License Agreement states, "Nissim covenants not to sue ClearPlay and/or its distributors or customers for infringements of the Patents-In-Suit relating to the manufacture, sale, or use of Current ClearPlay Players and Current ClearPlay Filters prior to the Effective Date of this Agreement."

Ct. App. 2003) ("if such limitation were meant, the parties could have specifically inserted the limiting words . . . ").

Accordingly, Nissim is entitled to judgment as a matter of law that it did not breach Section 4.2 since this provision does not prohibit warnings of license non-compliance and patent infringement. It is therefore unnecessary to reach Nissim's other arguments with respect to this claim.

### 5. *Section 12.3 and 12.5*

Next, ClearPlay claims that Nissim breached the Settlement and License Agreement by notifying ClearPlay of Nissim's belief that the Court had held Section 12.3 of the agreement unenforceable and seeking to terminate the agreement under Section 12.5. ClearPlay also asserts that Nissim breached the agreement by refusing to negotiate in good faith for an amendment under Section 12.5. *See* D.E. # 185, Third Amended Complaint at ¶ 123(e) and (f). Nissim seeks summary judgment on these claims on the ground that ClearPlay failed to oppose Nissim's motion for summary judgment on them. "In opposing a motion for summary judgment, a party may not rely on her pleadings to avoid judgment against her." *Edmondson v. Bd. of Trs. Of Univ. of Ala.*, 258 Fed. App'x. 250, 253 (11th Cir. 2007). "[T]he onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned. Here, ClearPlay did not respond to Nissim's motion for summary judgment on the Section 12.3 and 12.5 claims. Therefore, ClearPlay has abandoned them. The Court grants Nissim summary judgment on these claims.

### 6. *Implied Covenant of Good Faith and Fair Dealing*

Finally Nissim argues that it is entitled to judgment as a matter of law on ClearPlay's claim that it breached the Settlement and License Agreement's implied covenant of good faith and fair dealing. The Court agrees. Under Florida law, a claim for breach of the implied covenant of good faith and fair dealing does not stand apart from a claim for breach of the contract's express terms. *Burger King Corp. v. C.R. Weaver*, 169 F.3d 1310, 1317-18 (11th Cir. 1999) ("failure to identify an express contractual term that has been breached dooms [a] claim for breach of the implied covenant of good faith and fair dealing."). Rather, the implied covenant of good faith and fair dealing is simply a part of every contract and is treated as such

17

here in connection with ClearPlay's claim that Nissim breached specified express contract terms. Since the Court has found that Nissim has not breached any of the express terms of the Settlement and License Agreement, the Court accordingly finds no breach of the implied covenant of good faith and fair dealing.

For the reasons discussed above, the Court GRANTS summary judgment in favor of Nissim[13] with respect to ClearPlay's claim for breach of contract.

### D. FDUPTA Claim

As noted in this Court's September 2, 2011 order, the only portion of ClearPlay's FDUTPA claim that this Court has not addressed relates to ClearPlay's allegations that Nissim violated FDUPTA by entering into the Settlement and License Agreement in bad faith and breaching the agreement. *See ClearPlay, Inc.,* 2011U.S. Dist. LEXIS 99154 *47. Since this Court has determined that Nissim did not breach the Settlement and License Agreement, ClearPlay's remaining FDUPTA claims, *see* D.E. # 185, Third Amended Complaint at ¶ 132.a and b., which are both premised on lawful actions under the Settlement and License Agreement, must also fail as a matter of law.

ClearPlay asserts that Nissim violated FDUPTA, Fla. Stat. § 501.204, by entering into the Settlement and License Agreement "in bad faith and with the intention of interfering with ClearPlay's business." ClearPlay claims "[t]his is evidenced by the fact that the Nissim Defendants, shortly after entering into the License Agreement, amended the OC Specifications and did so with the express intent to make ClearPlay's product obsolete." *Id.* ClearPlay's evidence for this claim is the declaration of Younes A. Kabbaj, who testified that "these offensive content specifications were intentionally changed in an attempt to make ClearPlay's DVD-Player obsolete and outdated." See D.E. 191-1, ¶5. The Settlement and License Agreement, however, specifically contemplates amendments to the OC Specifications. *See* Section 4.3 ("Nissim agrees to consider any input or comments that ClearPlay may have concerning the CustomPlay OC Specifications or **any future modifications** thereto" (emphasis added)); *see also* Section 6.4 ("if those CustomPlay OC Specifications are later **modified** by

---

[13] Since the Court has found that both Nissim Corporation and Mr. Abecassis are entitled to summary judgment on ClearPlay's breach of contract claim, it is not necessary to address Nissim's other arguments regarding why Mr. Abecassis is entitled to summary judgment.

18

Nissim or CustomPlay, then ClearPlay may implement those same **modifications**." (emphasis added)). Since ClearPlay was on notice at the time the Settlement and License Agreement was executed that such OC Specifications might be amended, Kabbaj's conclusory allegations regarding Nissim's intent is not enough to create a genuine issue of material fact. *See Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir. 1996) (conclusory allegations and conjecture cannot be the basis for denying summary judgment). Nissim had the right under the contract to make such amendments. As a result, Nissim's subjective intent, whether or not correctly identified by Kabbaj, cannot deem such acts unlawful under FDUPTA.[14]

ClearPlay also cites other evidence to establish the proposition that Max Abecassis sought to put ClearPlay out of business. *See, e.g.*, D.E. #185-1, Adams Decl, D.E. #412-1, Jarman Decl., Ex. C. and D.E. #412-3, Crowther Decl. Ex. B. ClearPlay cites such evidence on the premise that Nissim "entered into the Agreement in bad faith, with no intention to perform its contractual obligations." D.E. #408. Since this Court finds that Nissim breached no contractual obligations under the Settlement and License Agreement, no claim of bad faith premised on Nissim's intentions can be sustained. For this reason, ClearPlay's reliance on *Ecological Fibers, Inc. v. Kappa Graphic Bd.*, 345 F. Supp. 2d 13 (D. Mass. 2004), which concerns a contract breached in bad faith, does not support a finding of a FDUPTA violation. Likewise, this Court's prior finding that Nissim did not breach the contract forecloses ClearPlay's remaining allegations of FDUPTA violations based on a breach of contract.

For the reasons discussed above, the Court GRANTS summary judgment in favor of Nissim with respect to the balance of ClearPlay's claim for violation of FDUPTA.

Conclusion

For all of the foregoing reasons, the Court GRANTS summary judgment in favor of Nissim with respect to all of the remaining claims.

---

[14] FDUPTA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1).

DONE in Chambers, Miami, Florida this 21st day of December, 2011.

Paul C. Huck
United States District Judge

Copies furnished to:
Counsel of Record